| State of Alabama<br>Unified Judicial System<br><br>Form C-34    Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number<br><br>Cv-06-834 |
|---|---|---|

**IN THE** _____ Circuit _____ **COURT OF** _____ Montgomery _____ **COUNTY**

**Plaintiff**    Goff Group, Inc., and John W. Goff    **v. Defendant**    Phoenix-Durango, LLC

**NOTICE TO** _____ Phoenix-Durango, LLC _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ Thomas T. Gallion, III _____ WHOSE

ADDRESS IS _____ Haskell, Slaughter, Young & Gallion, P.O. Box 4660, Montgomery, AL 36103-4660 _____

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN    30    DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☒ Service by certified mail of this summons is initiated upon the written request of _____ Plaintiffs _____ pursuant to the Alabama Rules of Civil Procedure.

Date    03/24/06    _M̲e̲l̲i̲s̲s̲a̲ ̲R̲i̲t̲t̲e̲n̲o̲u̲r̲_    By: _____
                    **Clerk/Register**

☒ Certified Mail is hereby requested.    _T̲.̲ ̲T̲.̲ ̲G̲a̲l̲l̲i̲o̲n̲_
                    **Plaintiff's/Attorney's Signature**

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____ .
                                                            (Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____ .
                    (Date)

_____                         _____
**Date**                                **Server's Signature**

_____                         _____
**Address of Server**                   **Type of Process Server**

# EXHIBIT A

## IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

GOFF GROUP, INC., and )
JOHN W. GOFF, )
      )
     **Plaintiffs,** )
      )
**v.** )     CASE NO. Cu-06-834
      )
**PHOENIX-DURANGO, LLC, a limited** )
**liability company;No. 1, whether singular** )
**or plural, that entity or person or those** )
**entities or persons whose breaches of duty** )
proximately caused the Plaintiffs' damages pursuant to said breaches; No. 2, whether singular or plural, that entity or person or those entities or persons whose statements or suppressions of material fact or other conduct proximately caused the plaintiff damages in or arising from the occurrences made the basis of Plaintiff's complaint; No.3, whether singular or plural, that entity or person or those entities or persons who were unjustly enriched by reason of the wrongdoing or occurrences made the basis of Plaintiff's complaint; No. 4, whether singular or plural, that person or entity or those persons or entities, other than those entities described above, which is or are the predecessor(s) or successor(s) in interest of any of the defendants named herein or any other persons or entities described above; No. 5, whether singular or plural, that entity or person or those entities or persons who were controlling persons of the defendants named herein or any other persons or entities described above; No. 6, whether singular or plural, that entity or person or those entities or persons who were co-conspirators of, or joint actors with, or who materially participated with or aided and abetted, the defendants named herein or any other persons or entities described above in the wrongdoing or occurrences made the basis of Plaintiff's complaint.  Plaintiff avers that the identifies of the fictitious party Defendants herein is otherwise unknown to the Plaintiff at this time, or if their names are known to the Plaintiff their identities as proper party Defendants are not known to the Plaintiff at this time and their true names will be substituted by amendment when ascertained.
      )
     **Defendants.** )



## COMPLAINT FOR TEMPORARY RESTRAINING ORDER
## AND OTHER RELIEF

     COME NOW the Plaintiffs John W. Goff and Goff Group, Inc. (hereinafter referred to as "Goff"), pursuant to Rule 65 of the Alabama Rules of Civil Procedure, and brings the following Complaint for a temporary restraining order, a preliminary



injunction, fraud, outrage, negligent misrepresentation and other injunctive relief against Defendant Phoenix-Durango, LLC, and other fictitious Defendants.  In support thereof, the Plaintiffs offer the following:

## A.    Parties

1.    Plaintiff Goff Group, Inc. is a corporation doing business in Montgomery, Alabama.

2.    Plaintiff John W. Goff is a natural resident over the age of nineteen (19) years of age who maintains a residence in Montgomery County, Alabama. The Plaintiffs own property located at 80 TechnaCenter Drive, Montgomery, Alabama (hereinafter referred to as "Subject Property").

3.    Phoenix-Durango, LLC ("Phoenix") is a _____ limited liability company doing business in Montgomery, Alabama.  Phoenix purports to hold a second mortgage on the Subject Property.  At all relevant times hereto, by reason of financial ties, financial services, business relationships, business dealings, communications, willing joinder in a common enterprise, scheme, plan and/or combine with the other defendants, whether named or unnamed, its officers, its affiliates, and its employees was a co-conspirator with the other named Defendants, their agents, representatives, and those unknown parties who were also material participants, under the common law of Alabama.  At all times relevant hereto, by reason of business and financial services rendered, contracts, meetings, communications, business and financial ties and relationships, and willing joinder in a common enterprise, scheme, plan and/or combine, Phoenix acted jointly in concert with, and in a concert of action with, the other defendants, named or unknown, their officers, affiliates, representatives and agents.  Without limiting the scope of the

2

foregoing, at all times relevant to this Complaint, Phoenix connection with the transaction, events and dealings herein alleged, and the alleged violations and tortious conduct set forth herein, the persons and entities:

    (a)    Acted in concert with the other Defendants;

    (b)    Knew that the conduct of the other Defendants described herein (including omissions to act in the face of the situation then obtaining) constituted a breach of duty to the Plaintiff and gave substantial assistance or encouragement to each such Defendant to so conduct himself or itself;

    (c)    Gave substantial assistance to each such other Defendant in accomplishing the tortious or wrongful conduct and such Defendant's own conduct, separately considered, constituted a breach of duties the Defendants owed to the Plaintiff as set forth herein;

    (d)    Induced the wrongful or tortious conduct, and such Defendant knew or should have known of the circumstances, that would make the conduct tortious if it were such Defendant's own conduct;

    (e)    Conducted its activities with the aid of other Defendants, who were likely to do harm if not supervised and/or controlled, and failed to exercise care in the control; and/or

    (f)    Had a duty to provide protection for, or to have care used for the protection of the Plaintiff and confided the performance of such duty to other Defendants, and such Defendant caused, or failed to avert, the tortious or wrongful conduct as set forth herein by failing to perform such duty.

3

4.      Phoenix is a corporation purporting to be doing business in Montgomery, Alabama. Phoenix purports to hold a second mortgage on the subject property. Based on information and belief, Phoenix assumed the second mortgage on or about March 16, 2006 and at or near March 20, 2006 Phoenix, without any, much less the requisite notification to Goff, began foreclosure proceedings on the subject property. In fact, Goff did not learn of the foreclosure proceeding until the same was printed in the Montgomery Advertiser. These Defendants, in connection with the transaction, events and dealings herein alleged, and the alleged violations and tortious conduct set forth herein, the persons and entities:

(a)     Acted in concert with the other Defendants;

(b)     Knew that the conduct of the other Defendants described herein (including omissions to act in the face of the situation then obtaining) constituted a breach of duty to the Plaintiff and gave substantial assistance or encouragement to each such Defendant to so conduct himself or itself;

(c)     Gave substantial assistance to each such other Defendant in accomplishing the tortious or wrongful conduct and such Defendant's own conduct, separately considered, constituted a breach of duties the Defendants owed to the Plaintiff as set forth herein;

(d)     Induced the wrongful or tortious conduct, and such Defendant knew or should have known of the circumstances, that would make the conduct tortious if it were such Defendant's own conduct;

(e)     Conducted its activities with the aid of other Defendants, who were likely to do harm if not supervised and/or controlled, and failed to exercise care

4

in the control; and/or

(f)     Had a duty to provide protection for, or to have care used for the protection of the Plaintiff and confided the performance of such duty to other Defendants, and such Defendant caused, or failed to avert, the tortious or wrongful conduct as set forth herein by failing to perform such duty.

**B.      Fictitious Defendants.**

5.      The Plaintiffs aver that the identities of the fictitious defendants identified in the caption of this Complaint are unknown to Plaintiffs at this time, and their true names will be substituted by amendment when their identities are ascertained.

**C.      Jurisdiction and Venue**

6.      This Court has jurisdiction over the subject matter of this action pursuant to Alabama common law. Without limiting the generality of the foregoing, this Court has jurisdiction over these Defendants whose actions were directed at and into this State and County. Further, the subject property is located within Montgomery County, Alabama.

7.      Venue is proper in this County pursuant to Alabama Code § 6-3-7(a). Venue is further proper because the fraudulent omissions or suppressions were disseminated by Defendants or their controlled persons or their co-conspirators to Plaintiffs in this County, where the Plaintiffs received them; the corporate defendants all do business in this County and have done business in this County during the relevant time; and the Plaintiffs' damages occurred in this County. Many of the acts comprising the violations of law complained of herein, including the dissemination of documents, reports, and fraudulent correspondence, occurred in this County. Therefore, under the

5

"co-conspirator" theory of venue and service of process provisions, this Court has proper venue and personal jurisdiction over all the Defendants by reason of the conduct of the named Defendants.

**D.    Factual Background**

8.    Up and until approximately March 16, 2006, Community Bank & Trust held a second mortgage on the subject property. Based on information and belief, Community Bank & Trust sold the second mortgage to Phoenix and Phoenix immediately began foreclosure proceedings on the subject property. Phoenix did not provide the requisite notice to Goff prior to instituting foreclosure proceedings (See Mortgage Agreement, attached hereto as "Exhibit A").

9.    **Goff has never received any correspondence from Phoenix on this loan much less notification of the institution of foreclosure proceedings.** Based on information and belief, the Defendant(s) have instituted foreclosure because of a previously arranged sell of the property.

**E.    Causes of Action**

**a.    Count One – Temporary and Preliminary Injunctive Relief**

10.    According to the Alabama Supreme Court, a mortgagee cannot foreclose against a mortgagor for any reason other than to secure debt owed on the mortgage:

> A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor. *Johnson v. Shirley,* 539 So.2d 165, 168 (Ala.1989); *Paint Rock Properties v. Shewmake,* 393 So.2d 982, 984 (Ala.1981).

*Reeves Cedarhurst Development Corp. v. First American,* 607 So.2d 180, 182 (Ala.,1992). Any other reason for foreclosure is viewed as fraudulent:

6

> ... the mortgagee cannot use the power of sale for purposes
> other than to secure the debt owed by the mortgagor. Any
> improper use of the power for such purposes as oppressing the
> debtor, or serving the purposes of other individuals, will be
> considered by the court as a fraud in the exercise of the power.
> See, *Shewmake, supra,* at 983-84, quoting *Abel v. Fricks,* 219
> Ala. 619, 123 So. 17 (1929).

*Johnson v. Shirley,* 539 So.2d 165, 168 (Ala. 1988). In *Johnson,* the court held that

summary judgment was precluded for the mortgagee on a wrongful foreclosure cause of

action where the mortgagee used the excess funds from one foreclosure sale to pay off

the indebtedness from another mortgage:

> The law in Alabama is clear that a mortgage for a specific debt
> cannot be used to secure any subsequent advances in the
> absence of an express provision securing future indebtedness.
> *First State Bank of Franklin County v. Ford,* 484 So.2d 407,
> 408 (Ala.1986); *Cooper v. Elba Exchange Bank,* 496 So.2d 41,
> 43 (Ala.1986). Moreover, "[w]hen property is sold at a
> foreclosure sale, conducted under the power of sale contained
> in a mortgage, at an amount greater than the indebtedness
> secured by the mortgage, the mortgagee is liable to the
> mortgagor for the surplus." *Davis v. Huntsville Production
> Credit Ass'n,* 481 So.2d 1103, 1106 (Ala.1985).

*Id.*

11.    Defendant Phoenix is attempting to wrongfully foreclose against the

Plaintiff in order sell the property out from under the Plaintiff. Also, Defendant Phoenix

has never provided any notice of the foreclosure proceedings as required under the

Mortgage Agreement. The Defendant has failed to comply with the terms of the mortgage

agreement regarding foreclosure proceedings. The mortgage agreement requires ten (10)

days of notice prior to the implementation of any foreclosure proceeding. Defendant

Phoenix's failure to comply with the mortgage terms supports the imposition of the

restraining order.

7

12.    Further, even if Phoenix had complied with the terms of the mortgage agreement, the Alabama Supreme Court has held that the wrongful conduct of a mortgagee can alter the terms of the mortgage agreement and the mere inclusion of a nonwaiver of acceleration clause in the mortgage does not automatically preclude equitable estoppel of a foreclosure sale:

> On the one hand, the inclusion in the security instrument of a nonwaiver of the acceleration clause does not, of itself and under all circumstances, preclude, as a matter of law, the operative effect of the equitable principles inherent in the doctrine of estoppel. By virtue of its very definition, equitable estoppel may be invoked to vary the express terms of a contract where, because of certain subsequent conduct of the parties, enforcement of its literal provisions would work an injustice. Bank of Huntsville v. Witcher, 336 So.2d 1384 (Ala.Civ.App.1976). On the other hand, the mere making of late payments by the debtor and their acceptance by the creditor does not alter, as a matter of law, the express terms of either the acceleration or the nonwaiver of acceleration clauses of the security agreement. Putman Realty & Auction, Inc. v. Bailes, 371 So.2d 658 (Ala.1979).

*Id* at 9.

13.    By virtue of the foregoing, Plaintiff has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of a temporary restraining order against Defendant Phoenix.

14.    The Plaintiffs by the virture of the Defendants above described acts and the publication of same, have been financially harmed and continue to be harmed on a daily basis.

15.    Unless the Defendant is temporarily and preliminarily enjoined from the foregoing conduct, Plaintiff will be irreparably harmed by economic loss, loss of

8

confidence and trust of clients and business associates, loss of goodwill, and loss of business reputation.

16.    The foreclosure sale is set for April 11, 2006. The Plaintiffs seek to have the foreclosure sale stopped until a full evidentiary hearing can be conducted.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiffs respectfully request that this Honorable Court issue a temporary restraining order, providing for the following relief for a period of ten (10) days and further requests a hearing be set for a Preliminary Injunction prior to the expiration of said ten (10) days and/or any other relief to which the Plaintiffs may be entitled.

**b.    Count Two – Fraud**

17.    The preceding paragraphs of this Complaint, and any additional factual averments set forth in any subsequent sections of this Complaint, are deemed to be repeated and incorporated by referenced in this Count. This Count involves the same transactions and conduct as is involved and alleged in the preceding paragraphs.

18.    Defendants omitted material facts willfully to deceive or recklessly without knowledge and acted upon by Plaintiffs, or by mistake and innocently and acted upon by Plaintiff, and committed fraud upon Plaintiff, within the meaning of Alabama Code 6-5-100 though 6-5-104, et seq.

19.    The Defendants were each under an obligation and affirmative duty under the special circumstances of this case, and under statutory requirements of the Alabama Act and other laws, which governed their conduct, respectively, to communicate all material facts to Plaintiffs. The Defendants suppressed, concealed and omitted to disclose material facts, which, under the special circumstances of this case and under

9

statutorily imposed disclosure obligations, the Defendants were under a duty to communicate truthfully and fully to Plaintiff, which constitutes fraud.

20. Defendants have knowingly, willfully and/or recklessly deceived the Plaintiff through such secretive, misleading and emissive activity. The Defendants knew, or recklessly disregarded, or were reckless in not knowing, of the misrepresentations of material fact and the omissions of material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, that occurred in their communications with Plaintiffs, and the Defendants acted knowing of, or recklessly disregarding the severe risk of, loss to the Plaintiffs that would be proximately caused by Defendants' acts and omissions described herein.

21. The Defendants, who were in possession of the material undisclosed facts and willfully or knowingly or recklessly concealed them, engaged in the aforesaid emissive, and therefore deceptive and manipulative and fraudulent, acts, practices and courses of business with the intent to take advantage of the position of inferior knowledge and ignorance of the true facts on the part of the Plaintiffs, and in order to take advantage of the Plaintiffs' trust and confidence in the Defendants, and with the intent to defraud the Plaintiffs, and with a profit seeking motive on the Defendants' part.

22. Plaintiffs did not know until less than two years before this suit was filed, about the material misrepresentations and undisclosed facts described in this Complaint, because no such disclosure was anywhere ever made, and thus the Plaintiffs justifiably and reasonably relied on such representations and on Plaintiff's absence of knowledge of such undisclosed facts.

23. Plaintiffs has incurred damages in the approximate amount, as of the

present date (and not including prejudgment interest which continues to accrue) which was proximately caused by Defendants' misconduct and breaches of duty described herein. Such malicious, intentional, reckless, wanton and/or outrageous conduct that an award of exemplary damages is necessary and appropriate to punish the Defendants for such conduct and to make an example of them and to deter repetitions of such conduct attended the conduct of the Defendants. Accordingly, Plaintiffs are entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiffs seek compensatory and punitive damages in an amount to be determined by a jury, attorneys' fees and any other relief to which it may be entitled.

    c.    **Count Three – Tort of Outrage**

24.    The preceding paragraphs of this Complaint, and any additional factual averments set forth in any subsequent sections of this Complaint, are deemed to be repeated and incorporated by referenced in this Count. This Count involves the same transactions and conduct as is involved and alleged in the preceding paragraphs.

25.    As indicated in the above stated factual background, the Defendants engaged in the herein detailed fraudulent and outrageous conduct with the intent to cause the Plaintiff to suffer severe financial harm. The activities of the Defendants were so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and are atrocious and utterly intolerable in a civilized society.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiffs seek compensatory and punitive damages in an amount to be determined by a jury, attorneys' fees and any other relief to which it may be entitled.

11

d.    **Count Four – Negligence**

26.    Plaintiffs reassert all preceding paragraphs of this Complaint as if fully set forth herein.

27.    The Defendants negligently handled the acceleration of the load process and instituted foreclosure proceedings without providing the requisite notice. The negligent handling of this process has caused the Plaintiffs to suffer damages to their reputation, financial harm and mental anguish.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiffs seek compensatory and punitive damages in an amount to be determined by a jury, attorneys' fees and any other relief to which it may be entitled.

e.    **Count Five – Conspiracy**

28.    Plaintiffs reassert all preceding paragraphs of this Complaint as if fully set forth herein.

29.    Defendant Phoenix, along with the fictitious defendants, whose names are unknown at this time, conspired among themselves to do the acts hereinbefore described. The Defendants are liable for the damage done to the Plaintiffs because of the actions committed as described herein.

30.    Plaintiffs has incurred damages in the approximate amount, as of the present date (and not including prejudgment interest which continues to accrue) which was proximately caused by Defendants' misconduct and breaches of duty described herein. Such malicious, intentional, reckless, wanton and/or outrageous conduct that an award of exemplary damages is necessary and appropriate to punish the Defendants for such conduct and to make an example of them and to deter repetitions of such conduct

attended the conduct of the Defendants. Accordingly, Plaintiffs are entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiffs seek compensatory and punitive damages in an amount to be determined by a jury, attorneys' fees and any other relief to which it may be entitled.

Respectfully submitted,


THOMAS T. GALLION, III  (GAL010)


OF COUNSEL:

Haskell Slaughter Young & Gallion, LLC
305 South Lawrence Street
P.O. Box 4660
Montgomery, Alabama 36103-4660
(334) 265-8573    Telephone
(334) 264-7945    Facsimile


**PLAINTIFFS REQUEST TRIAL BY JURY**


OF COUNSEL

13

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL**

Phoenix-Durango, LLC
c/o Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the above and foregoing document has been served upon the following listed persons by facsimile to the numbers listed below and by placing a copy of the same in the United States mail, postage prepaid and property addressed, on this the _____ day of March 2006.

Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
Attorney for Defendant Phoenix-Durango, LLC
1819 Fifth Avenue North
Birmingham, Alabama 35203

OF COUNSEL

#19743
26934-008

14



## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (hereinafter sometimes referred to as the "Agreement") is hereby made and entered into as of the Effective Date (as hereinafter defined) by and between **GOFF GROUP, INC.**, an Alabama corporation (hereinafter sometimes referred to as the "Seller") and **JOHN W. GOFF**, (hereinafter sometimes referred to as the "Purchaser").

### WITNESSETH THAT:

**WHEREAS**, Seller owns 80 Technacenter Drive also known as Lot 1-A of the Technacenter Plat as the same is more fully described on Exhibit "A" (hereinafter referred to as the "Property");

**WHEREAS**, Seller owes a first mortgage loan to StanCorp, and a number of other loans secured by the Property as shown on the following table:

| CREDITOR POSITION | CREDITOR | APPROXIMATE AMOUNT |
|---|---|---|
| First Mortgage | Stancorp Mortgage | $ 1,787,594.46 |
| Second Mortgage | Community Bank | $ 391,416.99 |
| Third Mortgage | Dooley Culbertson | $ 200,000.00 |
| Fourth Mortgage | SouthTrust Bank | $ 71,000.00 |
| Fifth Mortgage | Art Leadingham | $ 75,000.00 |
| Sixth Mortgage | Tommy Gallion | $ 75,000.00 |
| Seventh Mortgage | Bobby Bowick | $ 69,575.50 |
| Eighth Mortgage | Jody Duncan | $ 118,000.00 |
| **TOTAL** | | $ 2,787,586.95 |

; and

**WHEREAS**, the following are costs associated with a third party sale which would have to be paid at the closing of an outright sale to a party other than Purchaser:

| FACTOR | APPROXIMATE COST |
|---|---|
| First Mortgage Prepayment Penalty | $245,000 |
| 6-10 % Real Estate Commission | $180,000 to $300,000 |
| TOTAL | $425,000 to $545,000 |

; and



WHEREAS, there is deferred maintenance on the building of $200,000 to $300,000 which is a factor is assessing the value of the building and has the effect of de-valuing the bottom line of the appraised value of the building; and

WHEREAS, the current appraised value of the property is in the range of $3,200,000 to $3,400,000 without consideration of sales commission, the prepayment penalty or deferred maintenance; and

WHEREAS, John W. Goff has already loaned to Goff Group, Inc. $90,000 by paying that sum on behalf of Goff Group, Inc. in order to reinstate the first mortgage with StanCorp; and

WHEREAS, the assumption by John W. Goff of all of the liabilities on the Property plus credit for the $90,000 reinstatement payment and a $1000 binder results in an assumption price of approximately $2,878,586.95;

WHEREAS, an assumption price of $2,878,586.95 paid by John W. Goff is equivalent to a free and clear sale through a realtor to any other party in the price range of $3,303,586.95 to $3,423,586.95 because of the absence of the aforementioned prepayment penalty and real estate commission; and

WHEREAS, Seller desires to sell and Purchaser desires to purchase, upon the terms and conditions hereinafter set forth, the Property, together with (a) all right, title and interest of Seller in and to any and all improvements situated upon the Property, (b) all rights, easements, licenses, privileges and appurtenances pertaining thereto, and (c) all trees, bushes, landscaping and foliage thereon with said sale and purchase being subject only to the Permitted Title Exceptions as defined in Paragraph 5 hereof.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are all hereby acknowledged by each of the parties hereto, the parties hereto agree as follows:

1.    **Purchase and Sale; Purchase Price and Method of Payment.** At the Closing on the Closing Date (as hereinafter defined), and upon all of the terms and subject to all of the conditions of this Agreement, Seller shall sell, assign, convey, transfer and deliver to Purchaser, and Purchaser shall purchase and take possession of, the Property. The purchase price for the Property shall be approximately TWO MILLION EIGHT HUNDRED EIGHTY-SEVEN THOUSAND FIVE HUNDRED EIGHTY-SIX and 95/100 Dollars ($2,887,586.95) (hereinafter sometimes referred to as the "Purchase Price"). The Purchase Price shall be adjusted as set forth in this Agreement and shall be paid by Purchaser to Seller at Closing in the manner set forth herein.

A.   **Reinstatement Payment.** Purchaser shall receive a credit against the Purchase Price for $90,000.00 representing a reinstatement payment paid on December 1, 2005 which payment was funded by a loan obtained by purchaser from Dooley Culbertson and Bobby Bowick.

B.   **Assumption of Existing Loans.** Purchaser shall assume Seller's existing mortgage loans listed above and receive a credit against the Purchase Price in the amount of $2,787,586.95.

C.   **Binder/Assumption Fee.** The Seller has agreed to pay the Assumption Fee in Paragraph 2 below. Purchaser herewith tenders to Seller $1000.00 as an earnest money binder which Seller shall in turn use to pay the Assumption Fee. Said binder shall be credited to the Purchase Price at closing.

D.   **Cash to Seller at Closing.** At Closing, no cash is to be paid to Seller in that the entire purchase price is financed by the assumption credit, the reinstatement credit, and the binder credit.

2.   **Closing Costs.** Seller shall pay the Assumption Fee of StanCorp in the amount of $1000.00. Purchaser shall be responsible for the other closing costs including recording fees on recordable documents.

3.   **Closing Prorations.** The following items are to be prorated or adjusted (as appropriate) as of the Closing Date, it being understood that for purposes of prorations and adjustments, Purchaser shall be deemed the owner of the Property on the Closing Date and shall receive the benefits and burdens of ownership on and after the Closing Date:

(i)   All real estate and other ad valorem, personal property, use and other taxes shall be prorated (employing a 365-day year) between Purchaser and Seller as of closing based upon the most recently available property assessment and based on 100% of the amount payable, regardless of whether any appeal is pending. If such assessment is not available for the year in question, such proration shall be made on the best available information, and taxes shall be reprorated when the amount thereof can be ascertained and the provisions hereof shall survive the Closing and the delivery of Seller's limited warranty deed. If any taxes or assessments against the Property are not paid in full by Seller on or before Closing the same shall be paid at bond closing.

(ii)   All such other charges and expenses of the Property.

4.   **Closing.** The consummation of the purchase and sale of the Property contemplated under this Agreement (the "Closing") shall be held at a time mutually agreed upon in writing but not later than _____, 2005 (the "Closing Date") by Purchaser and Seller at the offices of Kaufman & Rothfeder, P. C., or such other office designated by Purchaser.

5.   **Conveyance of Title.** At Closing, Seller shall convey fee simple title to the Property to Purchaser pursuant to a recordable limited warranty deed, subject only to such exceptions to title

as are set forth on Exhibit "B" attached hereto (the "Permitted Title Exceptions") . Seller will convey marketable title to the Property to Purchaser, insurable (at Purchaser's expense) by a title insurance company under its standard ALTA Owner's Policy of Title Insurance at standard rates, free and clear of all liens (except the assumed mortgages listed in the recitals above), encumbrances, and other exceptions to title, except those which do not materially affect the current use of the property in an adverse manner.

6.    **Damage or Destruction, Condemnation and Code Violations.**

A.    **Damage or Destruction.** If, prior to Closing, the Property, or any part thereof, is damaged or destroyed by any casualty and the Property, or any part thereof, so damaged or destroyed are not repaired or replaced to a condition at least as good as that immediately preceding the damage or destruction (the parties agreeing that the inability of Seller to restore occupancy and revenue to levels reasonably comparable to those existing immediately prior to such casualty shall constitute a condition not as good as that immediately preceding the casualty) by Seller at Seller's expense prior to Closing, then Purchaser shall have the option to (i) if the damage exceeds $100,000.00, terminate this Agreement by giving written notice of such termination to Seller; or (ii) close the transaction contemplated by this Agreement according to the terms hereof without reduction in the Purchase Price, in which event at the Closing Seller shall (x) allow as a credit against the Purchase Price a sum equal to any insurance proceeds previously paid to Seller on account of such damage or destruction which have not been applied to the restoration of the Property, or any part thereof, prior to Closing and (y) assign to Purchaser all of Seller's rights to receive the proceeds of any insurance policy otherwise payable to and not previously paid to Seller on account of such damage or destruction. If the damage is less than $100,000.00, then Seller may elect not to repair such damage or destruction, but instead may pay over to Purchaser at Closing all insurance proceeds which it has received in connection with such damage or destruction and/or assign to Purchaser at Closing all of Seller's rights, title and interest to any insurance proceeds not then received by Seller and pay to Purchaser the amount of any deductible involved with such damage or destruction and, in such event, Purchaser shall close hereunder with no reduction in the Purchaser Price. Purchaser shall exercise its election provided in this Section by giving Seller written notice of Purchaser's election within ten (10) days after receipt of the notice of damage or destruction. If Purchaser fails to timely elect to terminate as provided in this Section, Purchaser shall be deemed to have elected to close as provided in this Section. If Purchaser timely elects to terminate, then all other rights and obligations of the parties under this Agreement shall terminate.

B.    **Condemnation.** If, prior to Closing, the Property or any portion thereof which, in the judgment of Purchaser, would have a material adverse effect on the operation of the Property as an assisted living facility, is taken, or subject to being taken, under pending condemnation, eminent domain or similar governmental confiscatory proceedings, Purchaser, at its sole option, by notice to Seller within ten (10) days following the date on which Purchaser has actual knowledge of such occurrence, may elect to terminate this Agreement, in which event all other rights and obligations of the parties under this Agreement shall be terminated. If Purchaser elects not to terminate this Agreement, the transaction contemplated herein shall be closed in accordance with the terms hereof

S:\Client-Matters\5254\2016\AssumptionsalePSA version 2 wpd.wpd   4

and Seller shall pay to Purchaser the amount of any proceeds it has received pursuant to such condemnation or eminent domain and assign to Purchaser any rights to future proceeds related thereto.

7.   **Deliveries at Closing**.

A.   **By Seller**. At Closing, and subject to the terms, conditions and provisions hereof and the performance by Purchaser of its obligations as set forth herein, Seller shall deliver possession of the Property to Purchaser and shall deliver or cause to be delivered to Purchaser, at Seller's sole cost and expense, and in addition to the other documents provided for herein, each of the following items:

(i)    A limited warranty deed duly executed and acknowledged by Seller, and in form for recording, conveying fee simple title in the Land and Improvements to Purchaser, subject only to the Permitted Title Exceptions;

(ii)   All keys to all locks on the Property (to the extent that such are available and are not already in Purchaser's possession) and an accounting for keys in possession of others and all on-site books and records pertaining to the Property;

(iii)   An owner's affidavit reasonably acceptable to Purchaser's title insurance company sufficient to remove any exception to title for mechanics' and materialman's liens, broker's liens, or other liens (including without limitation water and sewer, if applicable) and parties in possession;

(iv)   Such documents as are required by StanCorp and the other mortgage holders to evidence the assumption thereof; and

(v)    a lease from Purchaser as landlord to Seller as tenant at no less than $15 per foot with a term of at least one (1) year longer than the loan maturity date of the first mortgage.

B.   **By Purchaser**: At Closing, and subject to the terms, conditions and provisions hereof and the performance by Seller of its obligations as set forth herein, Purchaser shall deliver or cause to be delivered to Seller, at Purchaser's sole cost and expense, and in addition to the other documents provided for herein, each of the following items:

(i)    The balance of the Purchase Price or closing costs, if any.

(ii)   Such other documents including Assumption Agreement as may be required by this Agreement, all in form satisfactory to Purchaser, Seller and Title Company, if applicable.

(iii)   a lease from Purchaser as landlord to Seller as tenant at no less than $15 per foot with a term of at least one (1) year longer than the loan maturity date of the first mortgage.

(iv)     Such documents as are required by StanCorp and the other mortgage holders to evidence the assumption thereof.

8.     **Representations, Warranties and Covenants**.

A.     **Of Seller:**  Seller represents, warrants and covenants to Purchaser that:

(i)     Seller (i) has complete and full authority to execute this Agreement and to convey to Purchaser title to the Property in accordance with Paragraph 5 of this Agreement and (ii) will execute and deliver such other documents, instruments, agreements, including but not limited to affidavits and certificates necessary to effectuate the transaction contemplated herein.

(ii)     Seller will not further sell, encumber, convey, assign or contract to sell, convey, assign, pledge, encumber or lease (except for resident leases for terms not to exceed twelve (12) months entered into in the ordinary course of business and at market rates) all or any part of the Property, nor restrict the use of all or any part of the Property at any time between the Effective Date and (i) Closing, or (ii) the earlier termination of this Agreement pursuant to its terms.  Seller additionally hereby represents and warrants that no rights-of-first refusal or similar agreements exist in connection with the Property which would in any way interfere with Purchaser's ability to purchase the Property as provided herein.

(iii)     Seller is not a "foreign person" as that term is defined in the I.R.C., Section 1445 (F) (3), nor is the sale of the Property subject to any withholding requirements imposed by the Internal Revenue Code, including, but not limited to, Section 1445 thereof.

(iv)     To Seller's knowledge, (i) the Property has not in the past been used and is not presently being used for the handling, storage, manufacturing, refining, transportation or disposal of "toxic material", "hazardous substances" or "hazardous waste" other than small quantities ordinarily used in the operation and maintenance of an assisted living facility; and (ii) there are no buried, semi-buried or otherwise placed tanks, storage vessels, drums or containers of any kind located on the Property used for the storage of hazardous waste, hazardous substances or toxic material. The terms "hazardous waste", "hazardous substances" and toxic material" include, without limitation, any flammable explosives, radioactive materials, hazardous materials, hazardous wastes, hazardous or toxic substances or related materials defined in the Comprehensive Environmental Response Compensation, and Liability Acct of 1980, as amended (42 U.S.C. Sect. 960 et seq.), the Hazardous Materials Transportation Act, as amended (42 U.S.C. Sect. 1801 et seq.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. Sect 9601 et seq.), the regulations adopted and publications promulgated pursuant to the foregoing and any other federal, state or local environmental law, ordinance, rule or regulation. Furthermore, Seller has not received a summons, citation, directive, letter or other communication, written or oral, from any governmental authority as to any of the above environmental concerns.

(v)    That the representations and warranties contained in this Section 8 shall be true and correct as of the date hereof and as of the Closing Date and such representations and warranties and the covenants of Seller contained in this Section 8 shall survive Closing and continue in full force and effect for six (6) months following Closing notwithstanding such Closing and consummation of the sale and purchase contracted for herein. In order for Purchaser to make a claim against Seller for breach of any of the representations, warranties and covenants contained herein, Purchaser shall provide Seller with written notice of same prior to the expiration of said   six (6) month period.  The obligation of Purchaser to close this transaction is expressly conditioned upon said representations and warranties being true and correct on the Closing Date in material respects; and, if requested by Purchaser, Seller shall recertify at Closing as to the continued validity of the representations, warranties and covenants set forth herein.  A breach by Seller of any warranty or representation made by Seller in any material respect or a breach of any covenant made by Seller shall be deemed a default on the part of Seller.

Notwithstanding the provisions of this Paragraph 8 (A), it is expressly acknowledged and agreed that if Purchaser shall actually discover prior to Closing that any of the representations set forth in this Paragraph 8 (A) were untrue when made, or have become untrue prior to the Closing, then, if Purchaser shall proceed with the consummation of the purchase and sale of the Property pursuant to this Agreement, Purchaser shall be deemed to have waived any claim of breach that Purchaser may have against Seller with respect to any such representation set forth herein.

B.    **Of Purchaser:** Purchaser represents, warrants and covenants to Seller that:

(i)    Purchaser has obtained all requisite authorizations, has the capacity and full power to enter into and carry out this Agreement and the transactions contemplated hereby and will execute and deliver such other documents, instruments and agreements necessary to effectuate the transaction contemplated herein.

(ii)    There is no suit, action or arbitration, or legal, administrative or other proceeding or governmental investigation, formal or informal, pending or to Purchaser's knowledge threatened which materially and adversely affects Purchaser's ability to perform hereunder.

9.    **Notices.**  All notices, requests, demands or other communications hereunder shall be in writing and deemed given when delivered personally or by recognized overnight courier delivery service such as Federal Express, when telefaxed or on the day said communication is deposited in the U.S. mail, by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

If to Seller:         Goff Group, Inc.
                      80 Technacenter Drive
                      Montgomery, AL 36117

With a copy to:

If to Purchaser:              John W. Goff
                             80 Technacenter Drive
                             Montgomery, AL 36117

With a copy to:              George W. Thomas
                             Kaufman & Rothfeder, P. C.
                             P. O. Box 4540
                             Montgomery, AL 36103

or to such other address as the parties may from time to time designate by notice in writing to the other parties.

    10.    **Amendment**. Neither this Agreement nor any provision hereof may be changed, amended, modified, waived or discharged orally or by any course of dealing, but only by an instrument in writing signed by the party against which enforcement of the change, amendment, modification, waiver or discharge is sought.

    11.    **Applicable Law**. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Alabama.

    12.    **Waiver**. Failure of either Purchaser or Seller to exercise any right given hereunder or to insist upon strict compliance with regard to any term, condition or covenant specified herein, shall not constitute a waiver of Purchaser's or Seller's right to exercise such right or to demand strict compliance with any term, condition or covenant under this Agreement.

    13.    **Counterparts**. This Agreement may be executed in several counterparts, each of which may be deemed an original, and all of such counterparts together shall constitute one and the same Agreement. This Agreement shall not be recorded and any party recording this Agreement or a memorandum thereof shall be in default hereunder.

    14.    **Captions**. All captions, headings, paragraph and subparagraph numbers and letters are solely for reference purposes and shall not be deemed to be supplementing, limiting, or otherwise varying the text of this Agreement.

    15.    **Severability**. The invalidity or enforceability of a particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

16.    **Entire Agreement**. This Agreement constitutes the sole and entire agreement of the parties and is binding upon Seller and Purchaser, their heirs, successors, legal representatives and assigns.

17.    **Assignment**. Purchaser may freely transfer and assign this Agreement. Purchaser shall notify Seller in writing in the event of such transfer and assignment. Seller shall not transfer or assign its interest hereunder without the prior written consent of Purchaser, which may be withheld by Purchaser in its sole discretion.

18.    **Indemnity**. Seller hereby agrees to indemnify and hold Purchaser harmless for and against any and all losses, damages, costs, expenses, liabilities, obligations and claims of any kind (including, without limitation, reasonable attorneys fees and other legal costs and expenses) which Purchaser may at any time suffer or incur, or become subject to, as a result of or in connection with:

      (i)    any material breach or inaccuracy of any of the representations or warranties made by Seller in or pursuant to this Agreement or any material failure by Seller to carry out, perform or satisfy any of its covenants, agreements or obligations under or pursuant to this Agreement; or

      (ii)    the operation of the Property prior to the Closing Date.

19.    **Effective Date of Agreement**.    In the event this Agreement is not signed simultaneously by both parties, the "Effective Date" of this Agreement shall be the date upon which the last party accepts and executes the Agreement.

[SIGNATURES ON NEXT PAGE]

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers or representatives, under seal, as of the Effective Date set forth in the preceding paragraph.

Seller:

GOFF GROUP, INC.,
an Alabama corporation

By: _____

Its: _____

Date of Execution: Jan. _____, 2005

Purchaser:

By: _____
JOHN W. GOFF

Date of Execution: Jan. _____, 2005

Exhibit "A"

Legal Description of the Property

[to be attached]

**Exhibit "B"**

**Permitted Title Exceptions**

1. Taxes and assessments for the year 2005, and subsequent years.

2. [Add any other permitted title exceptions here]

S:\Client-Matters\5254\2016\AssumptionsalePSA version 2 wpd.wpd

Melissa Rittenour
Circuit Court Clerk
P.O. Box 1667
Montgomery, AL 36102-1667

CERTIFIED MAIL™

7006 0100 0002 0278 7510

MONTGOMERY AL
PB METER 6204182
U.S. POSTAGE

Phoenix-Durango, LLC
c/o Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203

03/27/2006

conducted:

# IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

GOFF GROUP, INC., and )
JOHN W. GOFF, )
 )
    Plaintiffs, )
 )
 )
v. )   CASE NO. _Cv - 06 - 834_
 )
 )
PHOENIX-DURANGO, LLC, a limited )
liability company; No. 1, whether singular)
or plural, that entity or person or those )
entities or persons whose breaches of duty)

proximately caused the Plaintiffs' damages pursuant to said breaches; No. 2, whether
singular or plural, that entity or person or those entities or persons whose statements or
suppressions of material fact or other conduct proximately caused the plaintiff damages in
or arising from the occurrences made the basis of Plaintiff's complaint; No.3, whether
singular or plural, that entity or person or those entities or persons who were unjustly
enriched by reason of the wrongdoing or occurrences made the basis of Plaintiff's
complaint; No. 4, whether singular or plural, that person or entity or those persons or
entities, other than those entities described above, which is or are the predecessor(s) or
successor(s) in interest of any of the defendants named herein or any other persons or
entities described above; No. 5, whether singular or plural, that entity or person or those
entities or persons who were controlling persons of the defendants named herein or any
other persons or entities described above; No. 6, whether singular or plural, that entity or
person or those entities or persons who were co-conspirators of, or joint actors with, or
who materially participated with or aided and abetted, the defendants named herein or any
other persons or entities described above in the wrongdoing or occurrences made the basis
of Plaintiff's complaint.  Plaintiff avers that the identifies of the fictitious party Defendants
herein is otherwise unknown to the Plaintiff at this time, or if their names are known to the
Plaintiff their identities as proper party Defendants are not known to the Plaintiff at this
time and their true names will be substituted by amendment when ascertained.
 )
    Defendants. )

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2006 MAR 24  PM 2:52

## ORDER

    Before this Court is Plaintiffs' Petition for Temporary Restraining Order, this Court

hereby orders the following to remain in effect until a hearing on a permanent restraining order is

conducted:

(a) Defendant Phoenix-Durango, LLC, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them are precluded from foreclosing on the property located at 80 TechnaCenter Drive, Montgomery, Alabama.

Said Order is being issued for the following reasons:

(a)    Unless restrained by this Court, the Defendant will continue to pursue potential illegal and/or improper actions against the Plaintiffs and will continue to cause irreparable harm to the Plaintiffs.

(b)    The issuance of a temporary restraining order will not cause undue inconvenience, injury or loss to Defendant but will prevent irreparable injury to the Plaintiffs.

(c)    Plaintiffs have demonstrated a substantial likelihood that they will succeed on the merits of this action, in that Plaintiffs can show that it is probable they will prevail and be granted permanent injunction relief at a later hearing before this Honorable Court.

(d)    A temporary restraining order will serve the public interest.

A hearing is set for _April 3rd at 8:30_ on Plaintiffs' request that the above conditions be in place permanently.

Done this the _24_ day of March, 2006.

_2:45_
_Bond set at $5,000 ⁰⁰_

_[signature]_
**CIRCUIT COURT JUDGE**

cc:    Thomas T. Gallion, III, Esq.
       Jamie A. Johnston, Esq.

2

#19748 v1 - Goff TRO Order

Kay K. Bains, Esq.
Bradley, Arant, Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama  35203

3

# IN THE CIRCUIT COURT
## OF MONTGOMERY COUNTY, ALABAMA

GOFF GROUP, INC. and     *
JOHN W. GOFF,       *
          *
   Plaintiffs,      *
          *
vs.          *  Case No. _____
          *
PHOENIX-DURANGO, LLC, et al   *
          *
   Defendants.     *

## INTERROGATORIES TO DEFENDANTS

COMES NOW the Plaintiffs, Goff Group, Inc. and John W. Goff ("Plaintiffs

Goff), by and through their attorney of record and request, and serve these interrogatories

upon the Defendants, pursuant to Alabama Rules of Civil Procedure 33. Each

interrogatory is addressed to the personal knowledge of Defendants, as well as to the

knowledge and information of Defendants' attorneys, investigators, agents, employees,

and other representatives. When a question is directed to Defendant, the question is also

directed to the aforementioned persons.

These interrogatories shall be deemed continuing so as to require supplemental

answers if the persons to whom these interrogatories are addressed obtain further

information between the time the answers are served and the time of trial.

   1.    Where is Phoenix-Durango, LLC located?

   2.    Who are the principals and/or owners of Phoenix-Durango, LLC?

   3.    Were the proper documents filed in Alabama to qualify Phoenix-Durango,

LLC to do business in the state?

4.     Was there any legal research done on the title of the property described in the foreclosure notices located in Montgomery County, Alabama?

5.     If so, please give copies of any and all title done on such property to show that Goff Group, Inc. is the rightful and proper owner of said property.

6.     Please list any and all persons that Phoenix-Durango, LLC and/or any of its members and/or agents and/or attorneys have talked with concerning these foreclosure proceedings as described above.

7.     Please explain how the foreclosure proceedings started on March 20, 2006 and Mr. Goff was not notified that the loan had even been transferred until he received a letter on March 21, 2006 from the law firm representing Community Bank & Trust dated March 20, 2006 stating that the loan had been transferred to Phoenix-Durango, LLC and that all future payments should be made to Phoenix-Durango, LLC in care of Kay K. Bains, Esq. At Bradley Arant Rose & White, LLP at One Federal Place, 1819 F5th Avenue North, Birmingham, Alabama 35203-2104.

8.     Please explain how Mr. Goff could have made a payment to Phoenix-Durango, LLC prior to the running of the foreclosure on March 20, 2006 when he never even received notice until one or two days after the foreclosure started to run, tha the loan had been transferred by Community Bank & Trust to Phoenix-Durango, LLC.

Respectfully submitted this 27th day of March 2006.

Thomas T. Gallion, III          (GAL010)

OF COUNSEL:
Haskell Slaughter Young & Gallion, LLC
305 South Lawrence Street
Post Office Box 4660

Montgomery, Alabama  36103-4660
    (334) 265-8573
    fax: (334) 264-7945

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the above and foregoing document has been served upon the following listed persons by either United States mail, facsimile or e-mail to the list below postage prepaid and properly addressed on this the 27th day of March 2006.

Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
1819  5th Avenue North
Birmingham, Alabama 35203
    (205) 521-8000
    fax:  (205) 521-8800

Wendell Cauley, Esq.
Bradley Arant Rose & White, LLP
401 Adams Avenue, Suite 780
Montgomery, Alabama 36104
    (334) 956-7700
    fax: (334) 956-7701

                                 Of Counsel

                                                               x9999-001
                                                              26934-008
                                                                #19,780

# IN THE CIRCUIT COURT
## OF MONTGOMERY COUNTY, ALABAMA

GOFF GROUP, INC. and          *
JOHN W. GOFF,                 *
                              *
     Plaintiffs,        *
                              *
vs.                           *    Case No. _____
                              *
PHOENIX-DURANGO, LLC, et al   *
                              *
     Defendants.        *

## REQUEST FOR PRODUCTION TO DEFENDANTS

COMES NOW the Plaintiffs, Goff Group, Inc. and John W. Goff ("Plaintiffs Goff), by and through their attorney of record and request, pursuant to Alabama Rules of Civil Procedure 34, that Defendant produce for inspection and copying by Plaintiffs at the office of Plaintiffs' attorneys, Thomas T. Gallion, III and the law firm of Haskell Slaughter Young and Gallion, LLC, 305 South Lawrence Street, Montgomery, Alabama 36104, the documents or objects below that are in the possession, custody or control of Defendants or their agents or attorneys.

    1.    Produce any and all legal documents showing the owners and/or incorporators and/or members of Phoenix-Durango, LLC, a limited liability company.

    2.    Produce all documentation showing that Phoenix-Durango, LLC is qualified to do business in the State of Alabama.

    3.    Produce any and all documents pertaining to the transfer of Community Bank & Trust Company to Phoenix-Durango, LLC.

    4.    Produce all documents pertaining to the notice of foreclosure that ran in *The Montgomery Advertiser* beginning on Monday, March 20, 2006.

5.     Please produce any and all notices of foreclosure that were sent to Mr.

John W. Goff at the Goff Group, Inc. 80 TechnaCenter Drive, Montgomery, Alabama

36117, as required by the loan and security documents executed by John W. Goff as

President of The Goff Group, Inc. on March 30, 2005.

Respectfully submitted this 2 7th day of March 2006.

_Thomas T. Gallion, III_     (GAL010)

OF COUNSEL:
Haskell Slaughter Young & Gallion, LLC
305 South Lawrence Street
Post Office Box 4660
Montgomery, Alabama  36103-4660
        (334) 265-8573
        fax: (334) 264-7945


# CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served
upon the following listed persons by either United States mail, facsimile or e-mail to the
list below postage prepaid and properly addressed on this the 27th day of March 2006.

Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
1819  5th Avenue North
Birmingham, Alabama 35203
        (205) 521-8000
        fax:  (205) 521-8800

Wendell Cauley, Esq.
Bradley Arant Rose & White, LLP
401 Adams Avenue, Suite 780
Montgomery, Alabama 36104
        (334) 956-7700
        fax: (334) 956-7701

_Of Counsel_

x9999-001
26934-008
#19,780

# IN THE CIRCUIT COURT
## OF MONTGOMERY COUNTY, ALABAMA

GOFF GROUP, INC. and              *
JOHN W. GOFF,                     *
                                  *
          Plaintiffs,             *
                                  *
vs.                               *    Case No. _____
                                  *
PHOENIX-DURANGO, LLC, et al       *
                                  *
          Defendants.             *

## MOTION TO SHORTEN TIME

COMES NOW the Plaintiffs, Goff Group, Inc. and John W. Goff, by and through

their attorney of record and files this Motion to Shorten Time and as reasons state the

following:

      1.     On March 24, 2006, Plaintiffs filed Complaint for Temporary Restraining

Order and Other Relief.

      2.     The Order was issued on Friday, March 24, 2006 and a hearing was set for

Monday, April 3, 2006 at 8:30 am.

      3.     Plaintiffs need these documents prior to said hearing on April 3, 2006.

Plaintiffs respectfully request the time to answer Interrogatories and Request for

Production to Defendants be shorten from the thirty days to five days.

      Respectfully submitted this 29th day of March 2006.


                                 _____
                              Thomas T. Gallion, III     (GAL010)

OF COUNSEL:
Haskell Slaughter Young & Gallion, LLC

Post Office Box 4660
Montgomery, Alabama 36103-4660
      (334) 265-8573
      fax: (334) 264-7945

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the above and foregoing document has been served upon the following listed persons by either United States mail, facsimile or e-mail to the list below postage prepaid and properly addressed on this the ⎯⎯ day of March 2006.

Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
1819 5th Avenue North
Birmingham, Alabama 35203
      (205) 521-8000
      fax: (205) 521-8800

Wendell Cauley, Esq.
Bradley Arant Rose & White, LLP
401 Adams Avenue, Suite 780
Montgomery, Alabama 36104
      (334) 956-7700
      fax: (334) 956-7701

Of Counsel

x9999-001
26934-008
#19,788



## IN THE CIRCUIT COURT
## OF MONTGOMERY COUNTY, ALABAMA

GOFF GROUP, INC. and      *
JOHN W. GOFF,      *
     *
     Plaintiffs,      *
     *
vs.      *     Case No. CV-06-834
     *
PHOENIX-DURANGO, LLC, et al      *
     *
     Defendants.      *

## MOTION TO INTERPLEAD

COME NOW the Plaintiffs, Goff Group, Inc. and John W. Goff, by and through their attorney of record and herewith interplead with this Honorable Court Five Thousand Two Hundred Dollars ($5,200) in the above styled cause of action. The Plaintiffs also move to interplead for the benefit of the Defendants the bond filed with this Court on March 27, 2006 in the amount of Five Thousand Dollars ($5,000). The monies interplead herein bring any amounts owed to Phoenix-Durango current. Any further foreclosure actions by Phoenix-Durango would be without justification.

Respectfully submitted this ____ day of April 2006.

 

 

Thomas T. Gallion, III    (GAL010)

OF COUNSEL:
Haskell Slaughter Young & Gallion, LLC
305 South Lawrence Street
Post Office Box 4660
Montgomery, Alabama 36103-4660
     (334) 265-8573
     fax: (334) 264-7945

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon the following listed persons by either United States mail, facsimile or e-mail to the list below postage prepaid and properly addressed on this the 7⁴ day of April 2006.

Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
1819  5ᵗʰ Avenue North
Birmingham, Alabama 35203
        (205) 521-8000
        fax:  (205) 521-8800

Wendell Cauley, Esq.
Bradley Arant Rose & White, LLP
401 Adams Avenue, Suite 780
Montgomery, Alabama 36104
        (334) 956-7700
        fax: (334) 956-7701

Of Counsel

x9999-001
26934-008
#19,930

$m_i^c$

# IN THE CIRCUIT COURT OF
# MONTGOMERY COUNTY, ALABAMA

JOHN W. GOFF,                                    )
                                                 )
      Plaintiff,                            )
                                                 )
vs                                               )    Case No.  CV-06-834
                                                 )
PHOENIX-DURANGO, LLC, a limited                  )
liability company; JEREMIAH A.                   )
HENDERSON, II, an individual;                    )    JURY TRIAL DEMAND
JEREMIAH A. HENDERSON, III,                      )
an individual; No. 1, whether singular           )
or plural, that entity or person or those        )
entities or persons whose breaches of duty )
proximately caused the Plaintiff's               )
damages pursuant to said breaches; No. 2, )
whether singular or plural, that entity or )
person or those entities or persons whose )
statements or suppressions of material           )
fact or other conduct proximately                )
caused the plaintiff damages in or arising )
from the occurrences made the basis of           )
Plaintiff's complaint; No.3, whether             )
singular or plural, that entity or               )
person or those entities or persons who          )
were unjustly enriched by reason of the          )
wrongdoing or occurrences made the               )
basis of Plaintiff's complaint; No. 4,           )
whether singular or plural, that person          )
or entity or those persons or entities,          )
other than those entities described above, )
which is or are the predecessor(s) or            )
successor(s) in interest of any of the           )
defendants named herein or any other            )
persons or entities described above;             )
No. 5, whether singular or plural,               )
that entity or person or those entities          )
or persons who were controlling                  )
persons of the Defendants named                  )
herein or any other persons or entities          )
described above; No. 6, whether singular )
or plural, that entity or person or those )
entities or persons who were                     )
co-conspirators of, or joint actors with, )

2006 APR 25  AM 11: 03

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY

or who materially participated with or         )
aided and abetted, the Defendants              )
named herein or any other persons or           )
entities described above in the                )
wrongdoing or occurrences made the             )
basis of Plaintiff's complaint.  Plaintiff     )
aver that the identities of the                )
fictitious party Defendants herein is          )
otherwise unknown to the Plaintiff )
at this time, or if their names are known      )
to the Plaintiff their identities as           )
proper party Defendants are not known          )
to the Plaintiff at this time and their true   )
names will be substituted by amendment )
when ascertained.                              )
                                               )
     Defendants.                           )

## FIRST AMENDED COMPLAINT
## AND REQUEST FOR RESTRAINING ORDER

     COMES NOW the Plaintiff John W. Goff (hereinafter referred to as "Goff"), and

brings the following First Amended Complaint against Defendants Phoenix-Durango,

LLC, Jeremiah A. Henderson, II, Jeremiah A. Henderson, III and other fictitious

Defendants.[1]  In support thereof, the Plaintiff offers the following:

**A.**    **Parties**

     1.    Plaintiff John W. Goff ("Goff") is a natural resident over the age of

nineteen (19) years of age who maintains a residence in Montgomery County, Alabama.

The Plaintiff owns property located at 80 TechnaCenter Drive, Montgomery, Alabama

(hereinafter referred to as "Subject Property").

     2.    **Phoenix-Durango, LLC** ("Phoenix") is a Delaware limited liability

company doing business in Montgomery, Alabama.  Phoenix purports to hold a second

---

[1] The Complaint is amended to reflect the deletion of Goff Group, Inc. as a party Plaintiff, the addition of Defendants Jeremiah A. Henderson, II and Jeremiah A. Henderson, III and the inclusion of certain newly learned facts.

Defendants, named or unknown, their officers, affiliates, representatives and agents.

mortgage on the Subject Property. At all relevant times hereto, by reason of financial ties, financial services, business relationships, business dealings, communications, willing joinder in a common enterprise, scheme, plan and/or combine with the other Defendants, whether named or unnamed, its officers, its affiliates, its members and its employees was a co-conspirator with the other named Defendants, their agents, representatives, and those unknown parties who were also material participants, under the common law of Alabama. At all times relevant hereto, by reason of business and financial services rendered, contracts, meetings, communications, business and financial ties and relationships, and willing joinder in a common enterprise, scheme, plan and/or combine, Phoenix acted jointly in concert with, and in a concert of action with, the other Defendants, named or unknown, their officers, affiliates, representatives and agents. Without limiting the scope of the foregoing, at all times relevant to this First Amended Complaint, Phoenix connection with the transaction, events and dealings herein alleged, and the alleged violations and tortious conduct set forth herein, the persons and entities:

(a)    Acted in concert with the other Defendants;

(b)    Knew that the conduct of the other Defendants described herein (including omissions to act in the face of the situation then obtaining) constituted a breach of duty to the Plaintiff and gave substantial assistance or encouragement to each such Defendant to so conduct himself or itself;

(c)    Gave substantial assistance to each such other Defendant in accomplishing the tortious or wrongful conduct and such Defendant's own conduct, separately considered, constituted a breach of duties the Defendants owed to the Plaintiff as set forth herein;

3

(d)     Induced the wrongful or tortious conduct, and such Defendant knew or should have known of the circumstances, that would make the conduct tortious if it were such Defendant's own conduct;

(e)     Conducted its activities with the aid of other Defendants, who were likely to do harm if not supervised and/or controlled, and failed to exercise care in the control; and/or

(f)     Had a duty to provide protection for, or to have care used for the protection of the Plaintiff and confided the performance of such duty to other Defendants, and such Defendant caused, or failed to avert, the tortious or wrongful conduct as set forth herein by failing to perform such duty.

3.     **Defendant Jeremiah A. Henderson, II ("Henderson, II")**, is believed to be an adult resident of Troy, Alabama. He owns property and does business in Troy, Alabama. He is a member and owner of Phoenix. At all relevant times hereto, by reason of financial ties, personal ties, financial services, business relationships, business dealings, communications, willing joinder in a common enterprise, scheme, plan and/or combine with the other Defendants, whether named or unnamed, its officers, its affiliates, its members and its employees was a co-conspirator with the other named Defendants, their agents, representatives, and those unknown parties who were also material participants, under the common law of Alabama. At all times relevant hereto, by reason of business and financial services rendered, contracts, meetings, communications, business and financial ties and relationships, and willing joinder in a common enterprise, scheme, plan and/or combine, Phoenix acted jointly in concert with, and in a concert of

4

action with, the other Defendants, named or unknown, their officers, affiliates, representatives and agents. Without limiting the scope of the foregoing, at all times relevant to this First Amended Complaint, Phoenix connection with the transaction, events and dealings herein alleged, and the alleged violations and tortious conduct set forth herein, the persons and entities:

(a)    Acted in concert with the other Defendants;

(b)    Knew that the conduct of the other Defendants described herein (including omissions to act in the face of the situation then obtaining) constituted a breach of duty to the Plaintiff and gave substantial assistance or encouragement to each such Defendant to so conduct himself or itself;

(c)    Gave substantial assistance to each such other Defendant in accomplishing the tortious or wrongful conduct and such Defendant's own conduct, separately considered, constituted a breach of duties the Defendants owed to the Plaintiff as set forth herein;

(d)    Induced the wrongful or tortious conduct, and such Defendant knew or should have known of the circumstances, that would make the conduct tortious if it were such Defendant's own conduct;

(e)    Conducted its activities with the aid of other Defendants, who were likely to do harm if not supervised and/or controlled, and failed to exercise care in the control; and/or

(f)    Had a duty to provide protection for, or to have care used for the protection of the Plaintiff and confided the performance of such duty to other Defendants, and such Defendant caused, or failed to avert, the

5

tortious or wrongful conduct as set forth herein by failing to perform such duty.

4.    **Jeremiah A. Henderson, III** ("Henderson III") is believed to be an adult resident of Troy, Alabama. He owns property and does business in Troy, Alabama. He is a member and owner of Phoenix. At all relevant times hereto, by reason of personal ties, financial ties, financial services, business relationships, business dealings, communications, willing joinder in a common enterprise, scheme, plan and/or combine with the other Defendants, whether named or unnamed, its officers, its affiliates, its members and its employees was a co-conspirator with the other named Defendants, their agents, representatives, and those unknown parties who were also material participants, under the common law of Alabama. At all times relevant hereto, by reason of business and financial services rendered, contracts, meetings, communications, business and financial ties and relationships, and willing joinder in a common enterprise, scheme, plan and/or combine, Phoenix acted jointly in concert with, and in a concert of action with, the other Defendants, named or unknown, their officers, affiliates, representatives and agents. Without limiting the scope of the foregoing, at all times relevant to this First Amended Complaint, Phoenix connection with the transaction, events and dealings herein alleged, and the alleged violations and tortious conduct set forth herein, the persons and entities:

(a)    Acted in concert with the other Defendants;

(b)    Knew that the conduct of the other Defendants described herein (including omissions to act in the face of the situation then obtaining) constituted a breach of duty to the Plaintiff and gave substantial assistance or encouragement to each such Defendant to so conduct himself or itself;

6

(c)     Gave substantial assistance to each such other Defendant in accomplishing the tortious or wrongful conduct and such Defendant's own conduct, separately considered, constituted a breach of duties the Defendants owed to the Plaintiff as set forth herein;

(d)     Induced the wrongful or tortious conduct, and such Defendant knew or should have known of the circumstances, that would make the conduct tortious if it were such Defendant's own conduct;

(e)     Conducted its activities with the aid of other Defendants, who were likely to do harm if not supervised and/or controlled, and failed to exercise care in the control; and/or

(f)     Had a duty to provide protection for, or to have care used for the protection of the Plaintiff and confided the performance of such duty to other Defendants, and such Defendant caused, or failed to avert, the tortious or wrongful conduct as set forth herein by failing to perform such duty.

5.      The Plaintiff avers that the identities of the fictitious defendants identified in the caption of this First Amended Complaint are unknown to Plaintiff at this time, and their true names will be substituted by amendment when their identities are ascertained.

**B.     Jurisdiction and Venue**

6.      This Court has jurisdiction over the subject matter of this action pursuant to Alabama common law.  Without limiting the generality of the foregoing, this Court has jurisdiction over these Defendants whose actions were directed at and into this State and County.  Further, the subject property is located within Montgomery County, Alabama.

7

7.     Venue is proper in this County pursuant to Alabama Code § 6-3-7(a). Venue is further proper because the fraudulent omissions or suppressions were disseminated by Defendants or their controlled persons or their co-conspirators to Plaintiff in this County, where the Plaintiff received them; the corporate defendants all do business in this County and have done business in this County during the relevant time; and the Plaintiff's damages occurred in this County. Many of the acts comprising the violations of law complained of herein, including the dissemination of documents, reports, and fraudulent correspondence, occurred in this County. Therefore, under the "co-conspirator" theory of venue and service of process provisions, this Court has proper venue and personal jurisdiction over all the Defendants by reason of the conduct of the named Defendants.

**C.    Factual Background**

8.     Plaintiff Goff was formerly married to Anne Henderson Goff ("Anne"). Prior to her marriage with Goff, Anne was married to Henderson II of Troy, Alabama. During that marriage, Anne and Henderson II had two sons, Reynolds and Henderson III. Goff and Anne were married over 16 years. During that time, Goff provided for Anne's children by a prior marriage as if they were his own sons.

9.     Anne, in or around summer of 2005, asked for a divorce from Goff, when his business started to fail and she knew she could not have the same lifestyle as she was accustomed to living. Thereafter, she began divorce proceedings and eventually reached a marital settlement of all assets and other divorce related issues. (See Divorce Decree, attached hereto as Exhibit "A"). During this difficult time, Henderson III physically threatened to cause harm to Goff. Because of large debts and judgments on the subject

8

property, Anne was unable to get any monies related to the Subject Property; however, Anne did receive the only liquid asset in the marriage (equity in a beach house in Watercolor, Florida) Goff retained the land and office building that is subject of this lawsuit. (See Exhibit B.)

10.    As a means to cause harm to Goff, Henderson II and Henderson III formed the limited liability company, Phoenix. After forming Phoenix, based on information and belief, in order to assist Anne to circumvent the divorce decree and to benefit them financially, they entered into a fraudulent and conspiratorial scheme, to wrongfully deprive Goff of his property. The Defendants, by and through Phoenix, purchased the second mortgage on said building from Community Bank. Again, as furtherance of their scheme to bring harm to the Plaintiff, and after purchasing the second mortgage, Phoenix immediately ran a notice of foreclosure in the morning of March 20, 2006 in *The Montgomery Advertiser* that the subject property would be foreclosed. Said notice would had to be delivered to *The Montgomery Advertiser* on or before March 17, 2006 in order for it to be published in Monday mornings edition. (See Exhibit C.) Said notice had already been published two days prior to the letter from Community Bank's counsel informing Goff that its mortgage had been sold and/or transferred. (See Exhibit D.) No notice was ever given to Plaintiff of said foreclosure. Goff not only did not have notice of the foreclosure but also did not receive notice from the second mortgage holder, Community Bank, that the mortgage had been sold and/or transferred to Phoenix until the morning of March 21, 2006. Goff had a long term arrangement with Community Bank as to late payments and had been operating under the arrangement for a long period of time. Goff has paid off multiple loans obtained from Community Bank over a number of years

9

and the loans total in excess of one million dollars. The original foreclosure was improper because it named the wrong legal owner of said property and there was an absence of proper notification of the foreclosure proceedings.

11.     On the 24th day of March 2006, the Plaintiff received a temporary restraining order against Defendant Phoenix and the Plaintiff had to post a $5,000 cash bond, which represents one month rent. A final hearing on the matter was set by this Honorable Court on Monday, April 3, 2006. The Defendants, by and through their attorneys, acknowledged that the initial foreclosure was not properly done and agreed to withdraw the foreclosure proceedings and begin anew after written notice of ten (10) days was provided to Goff Group. Again, Goff Group is not the owner of the Subject Property and the latest foreclosure is again improper in that the property is owned by Goff individually not Goff Group.

12.     After obtaining a temporary restraining order and by said agreement acknowledging the above stated error, the Defendants then refused to accept any payment by Goff that would have made the loan current. Goff instructed the Montgomery County Clerk to release the cash bond of $5,000 to Defendant Phoenix and sent another check for $5,200 to make all payments current according to Goff's records. Phoenix, by and through its attorneys, refused to accept said check in which notice of payment was sent before the new notice was sent to Goff. (See Exhibit E.) Goff then inter pled the above stated amount into the Court. Also, the Defendants have demanded from Goff that he pay over $64,000 in legal fees to Bradley Arant Rose & White, attorneys for Defendants. This is an unconscionable amount of legal fees, given the fact that were not earned, that

10

the matter was handled improperly to the detriment of Goff as described herein, and that these fees further represent and the fees is part of the Defendants' fraudulent scheme.

13.    The fraudulent scheme of the Defendants, as described above and as intended, has caused enormous harm to the Plaintiff, both financial and emotional. Goff has a lease on the building that has been placed in jeopardy; has lost a potential sale; has to been forced to take the adjoining lot off the market with Aronov Realty that has now been jeopardized; and has had the financial reorganization of business collapse because of the fraudulent announcement of a foreclosure. He has been caused financial harm and damage to his reputation. More importantly, Goff has suffered an incredible amount of emotional distress by the fact his former stepson (Henderson III), whom he loved and treated as his own son, is trying to ruin Goff both personally and professionally.

14.    In addition, one of the attorneys for Defendants, Kay Bains, took it upon herself to call Goff's accountant, Art Leadingham, and inform him that he better hire an attorney to foreclose on his mortgage. (Leadingham's mortgage is behind Phoenix's second mortgage.) Leadingham has been Goff's accountant for more than twenty (20) years. This is only one example of the tortious behavior of the Defendants in their outrageous attempt to collapse Goff financially through fraud and deceit.

15.    Goff does hereby request this Court enjoin the Defendants from moving forward with the above stated foreclosure in order to mitigate any further damages that have been inflicted upon him.

E.    **Causes of Action**

a.    **Count One – Preliminary Injunctive Relief**

11

15. According to the Alabama Supreme Court, a mortgagee cannot foreclose against a mortgagor for any reason other than to secure debt owed on the mortgage:

> A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor. *Johnson v. Shirley*, 539 So.2d 165, 168 (Ala.1989); *Paint Rock Properties v. Shewmake*, 393 So.2d 982, 984 (Ala.1981).

*Reeves Cedarhurst Development Corp. v. First American*, 607 So.2d 180, 182 (Ala.,1992). Any other reason for foreclosure is viewed as fraudulent:

> ... the mortgagee cannot use the power of sale for purposes other than to secure the debt owed by the mortgagor. Any improper use of the power for such purposes as oppressing the debtor, or serving the purposes of other individuals, will be considered by the court as a fraud in the exercise of the power. See, *Shewmake, supra,* at 983-84, quoting *Abel v. Fricks,* 219 Ala. 619, 123 So. 17 (1929).

*Johnson v. Shirley*, 539 So.2d 165, 168 (Ala. 1988). In *Johnson*, the court held that summary judgment was precluded for the mortgagee on a wrongful foreclosure cause of action where the mortgagee used the excess funds from one foreclosure sale to pay off the indebtedness from another mortgage:

> The law in Alabama is clear that a mortgage for a specific debt cannot be used to secure any subsequent advances in the absence of an express provision securing future indebtedness. *First State Bank of Franklin County v. Ford,* 484 So.2d 407, 408 (Ala.1986); *Cooper v. Elba Exchange Bank,* 496 So.2d 41, 43 (Ala.1986). Moreover, "[w]hen property is sold at a foreclosure sale, conducted under the power of sale contained in a mortgage, at an amount greater than the indebtedness secured by the mortgage, the mortgagee is liable to the mortgagor for the surplus." *Davis v. Huntsville Production Credit Ass'n,* 481 So.2d 1103, 1106 (Ala.1985).

*Id.*

16.     Defendant Phoenix is attempting to wrongfully foreclose against the Plaintiff as furtherance of the fraudulent scheme set forth herein.

17.     Further, even if Phoenix had complied with the terms of the mortgage agreement, the Alabama Supreme Court has held that the wrongful conduct of a mortgagee can alter the terms of the mortgage agreement and the mere inclusion of a nonwaiver of acceleration clause in the mortgage does not automatically preclude equitable estoppel of a foreclosure sale:

> On the one hand, the inclusion in the security instrument of a nonwaiver of the acceleration clause does not, of itself and under all circumstances, preclude, as a matter of law, the operative effect of the equitable principles inherent in the doctrine of estoppel. By virtue of its very definition, equitable estoppel may be invoked to vary the express terms of a contract where, because of certain subsequent conduct of the parties, enforcement of its literal provisions would work an injustice. Bank of Huntsville v. Witcher, 336 So.2d 1384 (Ala.Civ.App.1976). On the other hand, the mere making of late payments by the debtor and their acceptance by the creditor does not alter, as a matter of law, the express terms of either the acceleration or the nonwaiver of acceleration clauses of the security agreement. Putman Realty & Auction, Inc. v. Bailes, 371 So.2d 658 (Ala.1979).

*Id at 9.*

18.     By virtue of the foregoing, Plaintiff has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of a temporary restraining order against Defendant Phoenix.

19.     The Plaintiff by the virtue of the Defendants above described acts and the publication of same has been financially harmed and continues to be harmed on a daily basis.

13

20.    Unless the Defendant is temporarily and preliminarily enjoined from the foregoing conduct, Plaintiff will be irreparably harmed by economic loss, loss of confidence and trust of clients and business associates, loss of goodwill, and loss of business reputation.

21.    The foreclosure sale is set for May 5, 2006. The Plaintiff seeks to have the foreclosure sale stopped until a full evidentiary hearing can be conducted.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiff respectfully requests that this Honorable Court issue a temporary restraining order, providing for the following relief for a period of ten (10) days and further requests a hearing be set for a Preliminary Injunction prior to the expiration of said ten (10) days and/or any other relief to which the Plaintiff may be entitled.

**b.    Count Two – Fraud**

22.    The preceding paragraphs of this Complaint, and any additional factual averments set forth in any subsequent sections of this Complaint, are deemed to be repeated and incorporated by referenced in this Count. This Count involves the same transactions and conduct as is involved and alleged in the preceding paragraphs.

23.    Defendants omitted material facts willfully to deceive or recklessly without knowledge and acted upon by Plaintiff, or by mistake and innocently and acted upon by Plaintiff, and committed fraud upon Plaintiff, within the meaning of Alabama Code 6-5-100 though 6-5-104, et seq.

24.    The Defendants were each under an obligation and affirmative duty under the special circumstances of this case, and under statutory requirements of the Alabama Act and other laws, which governed their conduct, respectively, to communicate all

14

material facts to Plaintiff. The Defendants suppressed, concealed and omitted to disclose material facts, which, under the special circumstances of this case and under statutorily imposed disclosure obligations, the Defendants were under a duty to communicate truthfully and fully to Plaintiff, which constitutes fraud.

25.     Defendants have knowingly, willfully and/or recklessly deceived the Plaintiff through such secretive, misleading and emissive activity. The Defendants knew, or recklessly disregarded, or were reckless in not knowing, of the misrepresentations of material fact and the omissions of material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, that occurred in their communications with Plaintiff, and the Defendants acted knowing of, or recklessly disregarding the severe risk of, loss to the Plaintiff that would be proximately caused by Defendants' acts and omissions described herein.

26.     The Defendants, who were in possession of the material undisclosed facts and willfully or knowingly or recklessly concealed them, engaged in the aforesaid emissive, and therefore deceptive and manipulative and fraudulent, acts, practices and courses of business with the intent to take advantage of the position of inferior knowledge and ignorance of the true facts on the part of the Plaintiffs, and in order to take advantage of the Plaintiff's trust and confidence in the Defendants, and with the intent to defraud the Plaintiff, and with a profit seeking motive on the Defendants' part.

27.     Plaintiff did not know until less than two days before this suit was filed, about the material misrepresentations and undisclosed facts described in this Complaint, because no such disclosure was anywhere ever made, and thus the Plaintiff justifiably and reasonably relied on such representations and on Plaintiff's absence of knowledge of such

undisclosed facts.

28.    Plaintiff has incurred damages in the approximate amount, as of the present date (and not including prejudgment interest which continues to accrue) which was proximately caused by Defendants' misconduct and breaches of duty described herein. Such malicious, intentional, reckless, wanton and/or outrageous conduct that an award of exemplary damages is necessary and appropriate to punish the Defendants for such conduct and to make an example of them and to deter repetitions of such conduct attended the conduct of the Defendants. Accordingly, Plaintiff is entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiff seeks compensatory damages in the amount of Five Million Dollars ($5,000,000) and punitive damages in the amount of Fifteen Million Dollars ($15,000,000) attorneys' fees and any other relief to which he may be entitled.

c.    **Count Three – Tort of Outrage**

29.    The preceding paragraphs of this Complaint, and any additional factual averments set forth in any subsequent sections of this Complaint, are deemed to be repeated and incorporated by referenced in this Count. This Count involves the same transactions and conduct as is involved and alleged in the preceding paragraphs.

30.    As indicated in the above stated factual background, the Defendants engaged in the herein detailed fraudulent and outrageous conduct with the intent to cause the Plaintiff to suffer severe financial harm. The activities of the Defendants were so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and are atrocious and utterly intolerable in a civilized society.

16

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiff seeks compensatory damages in the amount of Five Million Dollars ($5,000,000) and punitive damages of Fifteen Million Dollars ($15,000,000) attorneys' fees and any other relief to which he may be entitled.

**d.    Count Four – Negligence**

31.    Plaintiff reasserts all preceding paragraphs of this Complaint as if fully set forth herein.

32.    The Defendants negligently handled the acceleration of the loan process and instituted foreclosure proceedings without providing the requisite notice. The negligent handling of this process has caused the Plaintiff to suffer damage to his reputation, financial harm and mental anguish.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiff seeks compensatory damages in the amount of Five Million Dollars ($5,000,000) and punitive damages in an amount of Fifteen Million Dollars ($15,000,000) attorneys' fees and any other relief to which he may be entitled.

**e.    Count Five – Conspiracy**

33.    Plaintiff reasserts all preceding paragraphs of this Complaint as if fully set forth herein.

34.    Defendants Jere and Jeremy Henderson and Phoenix, along with the other fictitious defendants, whose names are unknown at this time, conspired among themselves to do the acts hereinbefore described. The Defendants are liable for the damage done to the Plaintiff because of their actions committed as described herein.

35.    Plaintiff has incurred damages in the approximate amount, as of the

present date (and not including prejudgment interest which continues to accrue) which was proximately caused by Defendants' misconduct and breaches of duty described herein. Such malicious, intentional, reckless, wanton and/or outrageous conduct that an award of exemplary damages is necessary and appropriate to punish the Defendants for such conduct and to make an example of them and to deter repetitions of such conduct attended the conduct of the Defendants. Accordingly, Plaintiff is entitled to punitive damages. Plaintiff Goff has suffered tremendous amount of emotional distress as a result of the fraud committed by the Defendants.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiff seeks compensatory damages in the amount of Five Million Dollars ($5,000,000) and punitive damages in an amount of Fifteen Million Dollars ($15,000,000) attorneys' fees and any other relief to which he may be entitled.

**f.    Count Six-- Tortious Interference with Business Relations**

36.    Plaintiff reasserts all preceding paragraphs of this First Amended Complaint as if fully set forth herein.

37.    Plaintiff avers that the intentional conduct described more fully herein has caused interference with the Plaintiff's business relations.

38.    The Defendants conduct has caused the Plaintiff to suffer financial and emotional harm, as well as damage to his reputation.

**WHEREFORE**, the above premises considered, the Plaintiff moves for a finding by a jury for compensation damages in the amount of Five Million Dollars ($5,000,000) and punitive damages in the amount of Fifteen Million Dollars ($15,000,000) and for any other relief he may be entitled under these circumstances.

18

g. **Count Seven – Slander of Title**

39.    Plaintiff reasserts all preceding paragraphs of this First Amended Complaint as if fully set forth herein.

40.    Plaintiff avers that by the actions as stated above, the Defendants have wrongfully slandered the title Goff has in this property which has resulted in substantial damage to Goff's ownership and peaceful occupancy of said property.

41.    The Defendants conduct has caused the Plaintiff to suffer financial and emotional harm, as well as damage to his reputation.

WHEREFORE, the above premises considered, the Plaintiff moves for a finding by a jury for compensation damages in the amount of Five Million Dollars ($5,000,000) and punitive damages in the amount of Fifteen Million Dollars ($15,000,000) and for any other relief he may be entitled under these circumstances.

Respectfully submitted,


Thomas T. Gallion, III      (GAL010)

OF COUNSEL:
Haskell Slaughter Young & Gallion, LLC
305 South Lawrence Street
P.O. Box 4660
Montgomery, Alabama 36103-4660
(334) 265-8573    Telephone
(334) 264-7945    Facsimile

## PLAINTIFFS REQUEST TRIAL BY JURY


OF COUNSEL

19

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL**

Phoenix-Durango, LLC
c/o Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

Jeremiah A. Henderson, II
c/o Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

Jeremiah A. Henderson, III
c/o Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon the following listed persons by facsimile to the numbers listed below and by placing a copy of the same in the United States mail, postage prepaid and property addressed, on this the 21ˢᵗ day of April 2006.

Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
Attorney for Defendant Phoenix-Durango, LLC
1819 Fifth Avenue North
Birmingham, Alabama 35203

OF COUNSEL

26934-008
#19,991

21

## VERIFICATION

STATE OF ALABAMA
MONTGOMERY COUNTY

I, the undersigned, John W. Goff, being first duly sworn, depose and say:

I am a resident citizen of Montgomery County, in the State of Alabama. I am a

Plaintiff named as such in the foregoing First Amended Complaint. I have read over the

First Amended Complaint and the facts stated therein on my personal knowledge are true

and correct and the remaining facts therein are alleged on information and belief, with the

assistance of my counsel who at my request has conducted an investigation, and are true

and correct according to the best of my information, knowledge and belief.

_____
John W. Goff

Sworn to and subscribed before me

on this 20th day of April 2006.

_____
Notary Public
My commission expires  9-11-06

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA
### DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:      )

ANNE REYNOLDS GOFF      )

and      )      CASE NO. DR-2005-*10414*

JOHN WAYNE GOFF, SR.,      )

Wife and Husband.      )

## O R D E R

This matter is before the Court on the Wife's Motion for *Pendente Lite* Relief, her request for Specific Status Quo Order and her verified Petition for Divorce.

Upon consideration of said same, and for good cause shown, said Motion and request for Status Quo Order is due to be and is hereby *Granted*.

It is therefore, **ORDERED, ADJUDGED, and DECREED** as follows:

1.    The Wife's request for relief *pendente lite* is set for the _8th_ day of _September_ 2005, at _10:00_ _A._ M., Montgomery County Courthouse, before _Joshua B. Jones_.

2.    Other than for normal and customary living expenses, the parties are hereby restrained from incurring any additional debt either individually or which would result in any liability for said debt on the other party, without the express, written consent of both parties or by further Order of this Court.

3.    Other than for normal and custody living expenses, the parties are hereby restrained from disposing of, transferring, assigning, concealing, wasting, selling, or otherwise



EXHIBIT
A

changing the nature and character of any and all assets held by the parties whether held

individually or jointly with each other or with any other third party or parties, without the express,

written consent of both parties or by further Order of this Court.

4.     A copy of this shall be transmitted to counsel for the Wife and to the Husband

with service of the Petition for Divorce.

DONE this _18th_ day of _____August_____, 2005.

_Patricia D. Warner_

Circuit Judge

cc:     Judy H. Barganier, Esq., Attorney for Wife
       John W. Goff, Sr. (by service with Petition for Divorce)

2

LAW OFFICES

# KAUFMAN & ROTHFEDER

A PROFESSIONAL CORPORATION

ALAN E. ROTHFEDER*
JO KAREN PARR
RICHARDSON B. MCKENZIE III
ROBERT E. L. GILPIN
GEORGE W. THOMAS
JOHN WARD WEISS
ROBERT M. RITCHEY
SIMEON F. PENTON
J. SCOTT PIERCE
CARLA COLE GILMORE

ALIANT CENTER • 2740 ZELDA ROAD
MONTGOMERY, ALABAMA 36106
TELEPHONE: (334) 244-1111
FACSIMILE: (334) 244-1969

MAILING ADDRESS:
P. O. DRAWER 4540
ZIP 36103-4540

DAVID B. HUGHES
JOHN A. HOWARD, JR.
CHEAIRS M. PORTER
DAVIS H. SMITH
D. BRENT WILLS
SARAH S. JOHNSTON
JOHN RODGERS MORGAN III

OF COUNSEL:
SAMUEL KAUFMAN
GREGG B. EVERETT

ALSO ADMITTED TO:
* GA BAR

Writer's Direct Dial Number: (334) 409-2231
Writer's E-mail Address: gthomas@krlegal.com

February 17, 2005

***Via Federal Express***
Mr. Steve Carnine
StanCorp Mortgage Investors, LLC
920 SW Sixth Avenue
Portland, OR 97204-1203

      *Re:*    John W. Goff - Purchase from Goff Group
               Our File No. 5254.2016

Dear Steve:

      Attached are the following documents in connection with the transfer and assumption package which have been executed by John W. Goff:

    1. Consent to Transfer and Assumption Letter;
    2. Borrower Warranty Letter;
    3. Certificate and Indemnity Agreement Regarding Building Laws and Hazardous Substances;
    4. Copy of the Lease Agreement;
    5. Copy of Warranty Deed;
    6. Proof of hazard insurance; and,
    7. Unexecuted copy of HUD-1 closing statement (executed copy will be sent under separate cover).

                  Yours very truly,

                  KAUFMAN & ROTHFEDER, P.C.

                  George W. Thomas

GWT:ac
Attachments
cc: John W. Goff (w/enclosures)

EXHIBIT
B

# CONSENT TO TRANSFER AND ASSUMPTION LETTER

Upon execution by all parties, StanCorp Mortgage Investors, LLC, an Oregon limited liability company as agent for Standard Insurance Company, an Oregon corporation ("Lender"), hereby approves the transfer and assumption of the SIC Loan #A3031906 from Goff Group, Inc., an Alabama corporation ("Transferring Party") to John W. Goff, individually ("Assuming Party").

The Assuming Party shall assume the same liability as the Transferring Party for the payment and performance of all terms and conditions of the referenced loan in its entirety.

Goff Group, Inc., an Alabama corporation, shall be released from personal liability for payment and performance of the terms and conditions of this loan.

John W. Goff shall not be released from personal liability for payment and performance of the terms and conditions of this loan.

All past due loan payments, late charges, delinquent interest, and all taxes past due and currently payable, including interest and penalties, if any, must be brought current at the time the transfer of the secured property closes.

Our willingness to consent to this transfer shall in no way limit our right to disapprove future transfers or transactions concerning the subject property.

Except as herein modified, all other terms and conditions of our original loan documents shall remain in full force and effect.

Transferring Party and Assuming Party acknowledge their acceptance of the terms of all documents securing the loan and agree to be bound by them by signing below where indicated.

### *All signatures to be notarized.*

TRANSFERRING PARTIES:

Date of Execution: ___2/14/05___

Goff Group, Inc.,
an Alabama corporation

By: _____
John W. Goff, President and CEO

STATE OF <u>ALABAMA</u>       )

<u>MONTGOMERY</u> COUNTY)

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that <u>John W. Goff</u>, whose name as President and CEO of Goff Group, Inc., an Alabama corporation, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he, as such Officer, and with full authority, executed the same voluntarily for and as the act of said corporation on the day the same bears date.

Given under my hand and official seal, this 14th day of February, 2005.

_____
Notary Public

(SEAL)                                    My Commission Expires: <u>07/25/05</u>

SIC Loan No. A3031906
February 8, 2005
Page 2 of 2

**ASSUMING PARTIES:**

Date of Execution:_____2/14/05

_____
John W. Goff

**LENDER:**

Date of Execution:_____

StanCorp Mortgage Investors, LLC,
as Agent for Standard Insurance Company,
an Oregon corporation

By: _____
    Amy Frazey, Assistant Vice President
    Investment Administration

Attest: _____
        Assistant Secretary

STATE OF ALABAMA          )

COUNTY OF MONTGOMERY     )

      I, the undersigned authority, a Notary Public in and for said State at Large, hereby certify that John W. Goff, whose name is signed to the foregoing conveyance and who is known to me acknowledged before me on this day, that, being informed of the contents of the conveyance, he executed the same voluntarily on the day the same bears date.

      Given under my hand and seal this the 14th day of February, 2005.

(SEAL)

Notary Public
My Commission Expires: 07/25/05

February 10, 2005

StanCorp Mortgage Investors, LLC
920 SW Sixth Avenue, PSB11E
Portland, OR 97204

RE:     SIC Loan No. A3031906
        80 Technocenter Drive
        Montgomery, AL 36117

Gentlemen and Ladies:

The undersigned, John W. Goff is the fee simple owner of the property referenced above, given as security for the loan referred to herein. If more than one person signs this letter, each shall be jointly and severally liable hereunder. The term "Borrower" wherever used herein shall mean the persons or entities named in this paragraph or any one or more of them.

As an inducement to you to consent to a transfer and assumption of the loan referenced above (the "Loan"), Borrower hereby represents, covenants and warrants as follows: which representations, covenants and warranties are true and correct as of the date of the transfer and assumption of the Loan, and, except for Paragraph 4 which Borrower represents and warrants only as of the date of the funding of the Note, shall survive the funding of the Loan, and shall remain continuing representations, covenants and warranties of Borrower so long as the obligations of Borrower under the documents representing and securing the Loan remain outstanding.

1.      The property securing the Loan, 80 Technocenter Drive, Montgomery, Alabama 36117 (the "Property") is, to the knowledge of Borrower, in compliance with all zoning, subdivision, environmental, health and safety regulations and ordinances applicable thereto; to the knowledge of Borrower, all deed restrictions, subdivision and building ordinances and other applicable governmental laws have been fully complied with; and Borrower has obtained or will obtain all licenses and permits required by governmental authorities with respect to the Property, its operation, improvement and use.

2.      There are no actions, lawsuits, or other proceedings pending or, to the knowledge of Borrower, threatened against or affecting the Property or Borrower, which might adversely affect the ability of Borrower to perform its obligations under the Mortgage, the Mortgage Note (the "Note"), and other instruments given as security for the Note, or which might adversely affect the priority of your lien on the property.

3.      Consummation of the Loan and performance under the Mortgage, the Note, and the other instruments given to evidence and secure the Note (the "Loan Documents") will not conflict with or result in a breach of any understanding or agreement of Borrower, or, to the knowledge of Borrower, any law, regulation or court order applicable to Borrower or the Property.

Borrower Warranty Letter Individual (11/04)          Page 1 of 2

4.   No rents from Leases of Property have been paid more than one (1) month in advance of the rental required by the terms of the leases. None of the tenants or Leases (as defined in the Mortgage) are in default. No tenant claims are outstanding against Borrower. The only Leases in effect in connection with the Property are as set forth on the rent roll (Index of Leases) given concurrently with the original Commitment letter dated May 27, 2003, as modified if applicable (the "Commitment").

5.   No portion of the Property has been damaged by fire or other casualty, nor is any condemnation proceeding pending, or to the knowledge of Borrower, threatened with respect to the Property.

6.   There has been no material change in the financial condition of Borrower which might adversely affect the ability of Borrower to perform its obligations under the Mortgage, the Note, and other instruments given as security for the Note, or which might adversely affect the priority of your lien on the property, and there has been no material adverse change in any aspect of the transaction as represented in the application and Commitment terms and conditions.

7.   All services and utilities such as water, electricity, and sewer are available and are or will be connected to the Property and its improvements.

8.   Neither the Property nor the proceeds of the Loan have been or will be used to launder money or for any other illegal or restricted use or purpose. All information in this warranty letter, any loan application and all other material and information provided to Lender in connection with the Loan, including the Commitment, is true, correct and complete and was made for the purpose of obtaining the Loan. None of the following appear on the list of Specially Designated Nationals and Blocked Persons that is maintained by U.S. Treasury Department's Office of Foreign Assets Control or on any other similar list maintained by any governmental entity or agency: (a) any Borrower; (b) any principal, manager or majority shareholder of any Borrower ("Principal"); (c) any Guarantor or Indemnitor, if any (as defined in the Loan Documents or Certificate and Indemnity Agreement Regarding Building Laws and Hazardous Substances); (d) any person or entity related to any Borrower, any Principal, any Guarantor or any Indemnitor of the Loan or the Property; or (e) any person or entity receiving (directly or indirectly) the benefit of proceeds of the Loan.

This warranty letter is effective as of the date of the Consent to Transfer Letter.

_____
John W. Goff

STATE OF ALABAMA                    )

COUNTY OF MONTGOMERY          )

I, the undersigned authority, a Notary Public in and for said State at Large, hereby certify that John W. Goff, whose name is signed to the foregoing conveyance and who is known to me acknowledged before me on this day, that, being informed of the contents of the conveyance, he executed the same voluntarily on the day the same bears date.

Given under my hand and seal this the 14th day of February, 2005.

(SEAL)                                                    _____
                                                          Notary Public
                                                          My Commission Expires: 07/25/05

SIC Loan No. A3031906

## CERTIFICATE AND INDEMNITY AGREEMENT
## REGARDING BUILDING LAWS AND HAZARDOUS SUBSTANCES

This Agreement is made as of February 10, 2005, by John W. Goff ("Indemnitor"), for the benefit of StanCorp Mortgage Investors, LLC, an Oregon limited liability company, as agent for Standard Insurance Company, an Oregon corporation ("Lender"), to induce Lender to consent to a transfer and assumption of the above loan (the "Loan") to Indemnitor in the original amount of One Million Eight Hundred Twenty Thousand and No/100ths Dollars ($1,820,000.00).

In consideration of Lender consenting to a transfer and assumption of the Loan, Indemnitor certifies, represents, warrants, covenants and agrees as follows for the benefit of Lender:

1.    Due Investigation. Indemnitor has duly investigated (a) the present and past uses of the "Property" (defined below) and has made due inquiry of the appropriate governmental agencies and offices having jurisdiction over the Property as to whether the Property or any "Other Property" (defined below) is or has been the site of storage or contamination by any "Hazardous Substances", (defined below) and Indemnitor has examined or been advised of all "Environmental Laws" (defined below) applicable to the Property; and (b) the condition of all buildings and other improvements on the Property and been advised of all "Building Laws" (defined below) applicable to the Property. Upon Lender's request, Indemnitor will provide Lender with a written summary of its investigations and copies of all inquiries and responses.

2.    Hazardous Substances. Indemnitor has no knowledge of (a) the presence of any Hazardous Substances on the Property or (b) any spills, releases, discharges or disposal of Hazardous Substances that have occurred or are presently occurring on or onto the Property or any Other Property, other than the presence, use, storage and disposal of Hazardous Substances generally used in the ordinary course of operating, maintaining or developing properties such as the Property and then only in strict observance and compliance with all applicable Environmental Laws applicable to such use, all of which Indemnitor covenants have and will be used, stored and disposed of in accordance with commercially reasonable practices and all applicable Environmental Laws.

3.    Compliance with Law. Indemnitor has no knowledge of (a) any failure by any person or entity to comply with all currently applicable Environmental Laws with respect to the generation, recycling, reuse, sale, storage, handling, transport and disposal of Hazardous Substances on or from the Property; or (b) any failure of the Property to comply with all currently applicable Building Laws. Indemnitor shall cause the Property to be continuously in compliance with all Building Laws and Environmental Laws.

Certificate and Indemnity Agreement (AL 1/03)        Page 1

Indemnitor warrants the Property is the only real property or interest in real property required to operate the Property (and all improvements thereon) are in compliance with all Building Laws, except as otherwise disclosed to Lender in writing. All certificates of occupancy and other governmental permits and approvals necessary for the occupancy of the Property have been obtained. All buildings and other improvements currently located on the Property are located outside a 100-year flood plain, or are covered by adequate flood insurance.

4.    Future Buildings and Improvements. All buildings, structures and other improvements to be built or constructed on the Property shall be constructed in accordance with and shall fully comply with all applicable Building Laws and shall be located outside of any 100-year flood plain or will be continuously covered by adequate flood insurance.

With respect to all buildings or improvements to the Property, if any, to be constructed and paid for with Loan proceeds, Indemnitor represents and warrants no changes to the plans and specifications for such buildings or improvements, submitted to - and approved by Lender, have been required by governmental authorities, and all permits necessary to construct such buildings and improvements have been issued on the basis of the plans and specifications submitted to and approved by Lender.

5.    No Release or Waiver. Indemnitor has not and will not release or waive the liability of any previous owner, lessee or operator of the Property, or any other person or entity potentially responsible under applicable Environmental Laws for the presence or removal of Hazardous Substances on or from the Property, and Indemnitor has made no promises of indemnification regarding Hazardous Substances to any person or entity other than Lender.

6.    Notice to Lender. Indemnitor will immediately notify Lender if Indemnitor receives notice or otherwise becomes aware of (a) any Hazardous Substances or other environmental problem or liability with respect to the Property or Other Property, (b) any lien, action or notice resulting from the violation of any Environmental Laws or any Building Laws, or (c) the Property being in violation of any applicable Building Law or Environmental Law. At its own cost, Indemnitor will take all actions which are necessary or desirable to clean up any Hazardous Substances affecting the Property, including removal, containment or other remedial action required by applicable law, or cause the Property to be in compliance with any applicable Environmental Law or Building Law. Any notice sent to Lender pursuant to this paragraph will describe with particularity any actual, potential or alleged violation of Building Laws or Environmental Laws, and shall contain Indemnitor's plan or recommendations for correcting the violations.

7.    Indemnification. Indemnitor shall indemnify, defend and hold Lender harmless from and against any and all claims, demands, damages, losses, liens, liabilities, penalties, fines, lawsuits and other proceedings and costs and expenses (including attorneys fees and disbursements, and architectural, engineering and accounting costs and all repair and clean-up costs) which accrue to or are made against or incurred by Lender, or are in, any way connected with (a) the inaccuracy of any of the certifications, representations or warranties of Indemnitor contained in this Agreement, (b) any

Certificate and Indemnity Agreement (AL 1/03)          Page 2

activities on the Property during Indemnitor's or Borrower's ownership, possession or control of the Property which directly or indirectly result in the Property or any other Property being contaminated with Hazardous Substances, or the Property being in violation of any applicable Building Laws or Environmental Laws, or (e) the discovery and/or cleanup of Hazardous Substances deposited on existing on the Property or any Other Property, and (d) any breach by Indemnitor of any of its covenants or agreements set forth in this Agreement. If Lender becomes the owner of or acquires an interest in or rights to the Property by foreclosure or by a conveyance in lieu of foreclosure of the Mortgage, Assignment of Rents, Security Agreement and Fixture Filing (the "Mortgage") or any other instruments securing the Loan, or by any other means, the foregoing indemnification obligation of Indemnitor shall survive such foreclosure or conveyance in lieu of foreclosure or other acquisition of the Property. Notwithstanding the preceding sentence, Indemnitor shall have no obligation to defend, indemnify or hold Lender harmless from any claim, demand, damage, loss, lien, liability, etc. arising from or out of the activities of Lender or its agents on the Property on or after transfer of the Property to Lender pursuant to foreclosure proceedings or in lieu thereof.

8.     Unconditional and Unsecured obligations. Indemnitor's obligations under this Agreement are unconditional and shall not be limited by any limitations on liability provided for in any document or instrument evidencing or securing the Loan (collectively the "Loan Documents"). The certifications, representations, warranties, covenants and agreements of Indemnitor set forth in this Agreement (including without limitation the indemnity provided for in Paragraph 7 above), are separate and distinct obligations from Indemnitor's or Borrower's obligations with respect to the Loan and under the Loan Documents, (b) are not secured by the Mortgage or any other Loan Document, (c) shall not be discharged or satisfied by foreclosure of the lien of the Mortgage or any lien or security interest created by any other Loan Document, and (d) shall continue in effect after any transfer of the Property, including without limitation transfers pursuant to foreclosure proceedings (whether judicial or nonjudicial), or by any conveyance in lieu of foreclosure.

9.     Definitions. For purposes of this Agreement:

a.     "Building Laws" means all federal, state and local laws, statutes, regulations, ordinances and requirements, now or hereafter in effect, applicable to the ownership, development or operation of the Property, including all building, zoning, planning, subdivision, fire, traffic, safety, health, labor, air quality, wetlands, shoreline and flood plain laws, statutes, regulations, ordinances and requirements, and specifically includes all applicable requirements of the Fair Housing Act of 1968, and the Americans With Disabilities Act of 1990, and all government and private covenants, conditions and restrictions applicable to the Property, all as now or hereafter amended.

b.     "Environmental Laws" means all federal, state and local statutes, regulations, ordinances, and requirements, now or hereafter in effect, pertaining to environmental protection, contamination or cleanup, including without limitation:

Federal

Federal Resource Conservation and Recovery Act of 1976, 42 U.S.C. Section 6901 et seq., as amended by the Solid and Hazardous Waste Amendment of 1984.

Federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. Section 9601 et seq.

Federal Clean Air Act, 42 U.S.C. Sections 7401-7626.

Federal Water Pollution Control Act, Federal Clean Water Act of 1977, 33 U.S.C. Section 1251 et seq.

Federal Insecticide, Fungicide, and Rodenticide Act, Federal Pesticide Act of 1978, 7 U.S.C. Section 136 et seq.

Federal Toxic Substances Control Act, 15 U.S.C. Section 2601 et seq.

Federal Safe Drinking Water Act, 42 U.S.C. Section 300(f) et seq.

Federal Rivers and Harbors Act of 1988, 33 U.S.C. Section 3401 et seq.

Federal Endangered Species Act of 1973, as amended 16 U.S.C. Section 1531 et seq.

Federal Atomic Energy Act, 42 U.S.C. Section 3011 et seq.

Federal Occupational Safety and Health Act, 29 U.S.C. Section 651 et seq.

Federal Environmental Policy Act, 42 U.S.C. Section 4321 et seq.

Federal Hazardous Materials Transportation Act, 49 U.S.C. Section 1471 et seq.

Federal Hazardous Materials Transportation Table, 49 C.F.R. Section 172.101 et seq.

Federal Refuse Act, 33 U.S.C. Section 407 et seq.

Federal Emergency Planning and Community Right-to-Know Act, 42 U.S.C. Section 1101 et seq.

c.    "Hazardous Substances" means any chemical, substance or material classified or designated as hazardous, toxic or radioactive, or other similar term, and now or hereafter regulated under any Environmental Law, including without limitation, asbestos, petroleum and hydrocarbon products. Furthermore, for the purposes of determining if Borrower has breached any covenant or obligation under this Agreement or to determine if any representation or warranty has been breached or is untrue, "Hazardous Substances" shall not mean substances which are (a) consumer products held on the Property for retail sale in the borrower's or the borrower's tenants' ordinary course of business, or (b) necessary for the operation and maintenance of the Property that are maintained, stored and labeled in accordance with all applicable laws and regulations applicable to such substances.

d.    "Lender" means Standard Insurance Company, an Oregon corporation and its universal successors and assigns, and any person or entity designated or appointed by Lender to acquire the Property through foreclosure or by transfer in lieu of foreclosure, and any and all other financial institutions participating in the Loan.

e.  "Other Property" means any property which becomes contaminated with Hazardous Substances as a result of the construction, development, operation or other activities on, or the contamination of the Property.

f.  "Property" means the real property situated in **Montgomery County, Alabama**, commonly known as **80 Technacenter Drive, Montgomery, Alabama 36117**, legally described as follows:

Lot 1-A, Block A, according to the Map of Technacenter Plat No. 2, as said Map appears of record in the Office of the Judge of Probate of Montgomery County, Alabama in Plat Book 41, at Page 150.

and all buildings, structures and other improvements now or hereafter, located thereon.

10.  General.  If Indemnitor is composed of more than one person or entity, the term "Indemnitor" shall refer to each and every such person or entity and all of such persons and entities shall be jointly and severally liable under this Agreement. Any individual signing this Agreement does so on his or her own behalf and on behalf of his or her marital community, unless otherwise stated in this Agreement. This Agreement shall be binding upon and inure to the benefit of Lender, Indemnitor and their respective heirs, representatives, successors and assigns. This Agreement shall be governed by and construed under the laws of the State of Alabama. In any lawsuit, action or appeal therefrom, including proceedings in bankruptcy court, to enforce or interpret this Agreement, the prevailing party shall be entitled to recover its costs and expenses incurred therein, including attorneys' fees and disbursements.

MADE, entered into and date as of the day and year first written above by the undersigned.

SIGNATURE OF INDEMNITOR

John W. Goff

STATE OF ALABAMA )

COUNTY OF MONTGOMERY )

I, the undersigned authority, a Notary Public in and for said State at Large, hereby certify that John W. Goff, whose name is signed to the foregoing conveyance and who is known to me acknowledged before me on this day, that, being informed of the contents of the conveyance, he executed the same voluntarily on the day the same bears date.

Given under my hand and seal this the 14th day of February, 2005.

(SEAL)

Notary Public
My Commission Expires: 07/25/05

STATE OF ALABAMA
COUNTY OF MONTGOMERY

## LEASE AGREEMENT

THIS LEASE AGREEMENT ("Lease") made and entered into this 31st day of January, 2005, by and between JOHN W. GOFF, (hereinafter referred to as "Landlord") and GOFF GROUP, INC., an Alabama corporation (hereinafter referred to as "Tenant").

### WITNESSETH:

Parties. The Parties hereinabove covenant and agree as follows:

1.     Premises. Landlord leases to Tenant and Tenant leases from Landlord the following premises located in Montgomery County, Alabama, viz: 80 Technacenter Drive, more particularly described as Lot 1-A, Block A, of the Technacenter Plat No. 2, recorded in Book 41 at Page 150 in the office of the Judge of Probate of Montgomery County, Alabama, and being an office building of approximately 30,800 square feet of net lease area and the surrounding land (all hereinafter referred to as "Premises").

2.     Term. The term of this Lease shall be nine (9) years and eight (8) months and shall commence on the 31st day of January, 2005, and end on the 30th day of September, 2014.

3.     Possession. Upon payment by Tenant of all items of rent, and any and all other sums to be paid by Tenant to Landlord hereunder and the observance and performance of all the covenants, terms and conditions to be observed and performed by Tenant, Tenant shall have the peaceful and quiet use of the Premises and all rights, servitudes and privileges belonging, or in any wise appertaining thereto or granted hereby, for the Term of this Lease, without hindrance or interruption by Landlord, or any other person or persons lawfully claiming by, through or under Landlord subject nevertheless to the terms and conditions of this Lease, and to any mortgage, deed of trust, ground lease or agreement to which this Lease, and/or Landlord's interest in the Premises and the Building of which they are a part, is subordinate as herein set forth. Landlord warrants that it has full right and authority to enter into this Lease for the full term hereof and that this Lease has been duly authorized.

4.     Rent. Subject to the terms and conditions hereof, the Tenant agrees to pay to the Landlord as a rental for the premises during the term of this Lease, the sum of Four hundred sixty-two Thousand and no/100 ($462,000.00) Dollars per annum in the installments hereinafter described. The rent amount is calculated on the basis of $15.00 per square foot times approximately 30,800 square feet. The rental shall be paid in twelve (12) equal monthly installments of Thirty Eight Thousand Five Hundred and no/100 ($38,500.00) Dollars per month, which installments shall be due and payable in advance on the first day of each and every calendar month of the Term commencing February 1, 2005.

5.     No Partnership. Landlord shall not become or be deemed a partner or a joint venturer by reason of the provisions of this Lease.

6.     Use. Tenant shall use the Premises as an office building and for no other use without Landlord's prior written consent.

7.     Alterations.  Tenant shall make no alterations, additions, installations or substitutions to improvements in or to the Premises without the express prior written consent of the Landlord.  Landlord may not alter, install or make substitutions to the improvements in the Premises without the consent of the Tenant.

8.     Surrender of Premises at Termination of Lease.  It is further agreed that, at the expiration of this Lease (whether by forfeiture or at the end of the Term), all rights, title and interest of the said Tenant in and to all alterations, additions or improvements, including any buildings or fixtures in the future erected on said land shall cease, and title thereto shall immediately vest in the Landlord, and shall remain upon and be surrendered with the Premises as a part thereof to Landlord, at the termination of this Lease without hindrance, molestation or injury.

9.     Subletting and Assignments.  Tenant agrees not to sublet the property, or any portion thereof, or assign this Lease, without the prior written consent of the Landlord, which consent shall not be unreasonably withheld or delayed; to permit no waste of the Premises, but, on the contrary, to take good care of same; and upon termination of this Lease to surrender possession of same without notice, in as good condition as the commencement of the Term, reasonable use and wear excepted.

10.     Tenant's Compliance.  Tenant agrees to comply with all laws and city ordinances affecting the use or occupation of the Premises hereby leased, and to relieve Landlord from any liability for Tenant's violation thereof.

11.     Taxes and Services.  Landlord shall furnish reasonably adequate electricity, water and automatically operated elevator service, as well as heat and air conditioning in season, consistent with Tenant's reasonable needs based upon its historic operating practices, including its practice of updating and modernizing equipment, provided however that Landlord shall not be required to increase service should the cost of same be material and adverse to Landlord in the operation and use of the Demised Premises and New 5th Floor Space. Landlord shall provide routine maintenance, painting and electrical lighting service for all public areas and special service areas of the Building, in the manner and to the extent deemed by the landlord to be standard.  The electrical wiring, risers and other equipment in the Building are not represented by Landlord to be adequate for any purpose other than general office use, including standard office machines of low electrical consumption.  Tenant agrees that it will not make any use of the electrical equipment of the Building which exceeds the capacity of such equipment. Failure by Landlord to any extent to furnish these defined services, or any cessation thereof, shall not render Landlord liable in any respect for damages to either person or property, nor shall such events be construed an eviction of Tenant nor work an abatement of rent, nor relieve Tenant from fulfillment of any term, condition, covenant or agreement hereof.  Should any of the Building equipment or machinery break down, or for any cause or reason cease to function properly, Landlord shall use reasonable diligence to repair the same promptly, but Tenant shall have no claim for rebate of rent or for any damages on account of any interruption in service occasioned thereby or resulting therefrom. Landlord further agrees to pay at least twenty (20) days before the same becomes delinquent, all State, County, City and all other taxes, assessments and impositions imposed or levied by any governmental agency on the Premises.  Landlord shall arrange for and pay any and all utilities, including water, electricity, telephone service, and garbage and janitorial services.

12.     Damage to Building.  Tenant agrees that Landlord shall not be liable for any damage caused by any present or future defect in any buildings, improvements or equipment on the land described above.

13.     Tenant's Property.  Tenant hereby declares that the property it will use on said Premises will and shall be its own property, and, except for equipment and inventory, is not and shall not be encumbered, and is pledged as security for the payment of rent and other charges due under this Lease.  Tenant agrees that during the term of this Lease, Tenant shall not remove or permit the removal of its property situated on the Premises without Landlord's written permission, except for such as is sold or otherwise disposed of in the ordinary course of business. Any items of Tenant's property (except money, securities and other like valuables) which shall remain

in the Premises after the date fixed for termination of this Lease or after a period of ten (10) days following an earlier termination date, may, at the option of Landlord, be deemed to have been abandoned, and in such case either may be retained by Landlord as its property or may, at Tenant's expense, be disposed of, without accountability, and in such manner as Landlord may see fit.

14.     Repairs by Landlord. Landlord shall be responsible for HVAC repair and maintenance, repair and maintenance of roof, walls, structural components and parking areas, and repair and maintenance of all plumbing and electrical lines and fixtures bringing service to the Premises, as well as through lines within the Premises and shall all other repairs, ordinary or extraordinary, in or about the Premises, except that Landlord shall not be required to make such repairs as Tenant may be required to make under the provisions of Section 15 below. Landlord, shall have full and complete control to make changes and/or repairs to the roof, structural components, outside walls, elevators, heating, air conditioning, electrical, plumbing and other utility systems or the Building. There shall be no allowance to Tenant for a diminution of rental value and Landlord shall have no liability to Tenant by reason of any inconvenience, annoyance, interruption or injury to the business of Tenant arising from Landlord's making any repairs or changes which Landlord is required or permitted by this Lease or required by law to make in or to any portion of the Premises, or in or to the fixtures, equipment or appurtenances to the Premises.

15.     Repairs by Tenant. Tenant shall take good care of the Premises and, at Tenant's expense, and particularly those required by reason of (I) the installation, use or operation of Tenant's property in the Premises (ii) the moving of Tenant's property in or out of the Building, and (iii) the misuse or neglect or other act of or sufferance by Tenant or any of its employees, agents or contractors. In the event of any repairs or alterations by Tenant within the Premises, Tenant agrees to obtain Landlord's written consent prior to making any such repairs and alterations, which consent shall not be unreasonably withheld or delayed, and to keep the Premises free from any liens arising out of any work performed, materials furnished or obligations incurred by Tenant. In the event that Tenant shall not, within thirty (30) days following the imposition of any such lien cause the same to be released of record, or shall contest same by legal means and shall deliver to Landlord bond or indemnification agreement indemnifying Landlord against any loss arising out of such lien, in form and substance reasonably acceptable to Landlord, then, in that event, Landlord shall have, in addition to all other remedies provided herein and by law, the right, but not the obligation, to cause the same to be released by such means as it shall deem proper, including payment of the claim giving rise to such lien. All sums paid by Landlord for such purpose, and all expenses incurred by it in connection therewith, shall be payable to Landlord by Tenant on demand with interest at the Default Rate.

16.     Events of Default by Tenant. The happening of any one or more of the following listed events (hereinafter referred to singly as "Event of Default" and plurally as "Events of Default") shall constitute a breach of this Lease on the part of the Tenant, namely:

A.      The filing by or on behalf of Tenant of any petition or proceeding to declare Tenant a bankrupt; or, the adjudication in bankruptcy of Tenant under any bankruptcy law or act; or, the filing of a petition in bankruptcy by creditors of Tenant to declare the Tenant an involuntary bankrupt, and such petition is not dismissed within a period of sixty (60) days thereafter.

B.      The failure of Tenant to pay any rent payable under this Lease when the same becomes due and payable, and the continued failure to pay same for five (5) days after written notice of such failure.

C.      The appointment by any Court or under any law of a receiver, trustee or other custodian of the property, assets or business of Tenant; and, such receiver, trustee or other custodian shall not be legally removed within a reasonable time not exceeding ninety (90) days after such appointment.

D.      The assignment by Tenant of all or a substantial part of its property or assets for the benefit of creditors.

E.      The levy of execution, attachment or other taking of property, assets or the leasehold interest of Tenant by process of law or otherwise in satisfaction of any judgment, debtor claim, where such of the foregoing materially and adversely affects the ability of Tenant to perform hereunder, unless such levy of execution, attachment or other taking be dismissed and discharged within a reasonable time not exceeding thirty (30) days thereafter.

F.      The failure of Tenant to fully and promptly perform any act required of it in the performance of this Lease or to otherwise comply with any term or provision hereof; and, such failure is not corrected within thirty (30) days after written notice from the Landlord to correct the same, unless the nature thereof is such that it cannot reasonably be cured within thirty (30) days, in which event the failure to commence correction within thirty (30) days and diligently prosecute same to completion thereafter.

17.    Rights of Landlord upon Default by Tenant.

A.      Landlord's Remedies. In the event of the occurrence of any Event of Default or Events of Default:

(i)      Landlord, at its option, may serve upon Tenant notice that this Lease and the then unexpired term hereof shall cease and expire and become absolutely void on a date specified in such notice, to be not less than fifteen (15) days after the date of such notice; and, thereupon, and on the expiration of the time limited in such notice, this Lease and the term hereof granted, as well as all of the right, title and interest of the Tenant hereunder, shall wholly cease and expire and become void; and, Tenant shall then immediately quit and surrender to Landlord the Premises, and Landlord may enter into and repossess the Premises, by summary proceedings, detainer, ejectment or otherwise, and remove all occupants thereof, and, at Landlord's option, any property thereon, without being liable to indictment, prosecution or damages therefor;

(ii)      Landlord may accelerate and collect rents for the remainder of the term of this Lease;

(iii)      Without terminating the Lease, Landlord may re-enter and repossess the Premises, breaking open locked doors, if necessary, and, Landlord may (but is not obligated) thereupon or at any time thereafter, lease the Premises to any other person upon such terms as Landlord shall deem reasonable entirely at Landlord's discretion and for a term within or beyond the term of this Lease, and Tenant shall remain liable for any loss in rent for the balance of the then current term, together with any and all expenses or costs incurred by Landlord in re-renting the Premises, including but not limited to the payment of commissions, clearing or references, the making of alterations, costs of leasing same, or otherwise; and

(iv)      Landlord may exercise any and all other legal and/or equitable remedies provided in this Lease or by law or equity, to which the Landlord may be entitled, including but not limited to injunction and/or damages.

B.      Remedies Cumulative. It is further agreed that, if there is an Event of Default or threatened breach by Tenant of any of the agreements, conditions, covenants or terms hereof, Landlord shall have the right of injunction to restrain the same and the right to invoke any remedy allowed by law or in equity whether or not other remedies, indemnity or reimbursements are herein provided. It is further agreed that the rights and remedies given to Landlord in this Lease are distinct, separate and cumulative remedies, and that no one of them, whether or not exercised by Landlord, shall be deemed to be in exclusion of any of the others.

C.    Exemptions and Attorney's Fee.  As to and against the payment of rent and any other monies which shall accrue to Landlord under the terms of this Lease, Tenant hereby expressly waives all exemptions as to personal property allowed Tenant under the constitution and laws of the State of Alabama, or any other state, and agrees to pay all costs of collecting the same, including a reasonable attorney's fee. In the event of the breach by Tenant of one or more of the terms and conditions of this Lease, Landlord shall be and is hereby authorized to do any and all things deemed by Landlord or such attorneys necessary to protect, conserve or promote the interest of Landlord under this Lease, including the institution of legal proceedings, against Tenant, of any nature, and including suit for damages for any such breach. Landlord and Tenant agree that in the event any such breach results in litigation whereby such dispute is ended by decision of a court of law, then, in that event, the non-prevailing party shall pay the attorney fees of the prevailing party.

D.    Expenses.  If an Event of Default occurs, Tenant agrees to reimburse Landlord all of Landlord's expenses, including, but not limited to, reasonable attorney's fees in enforcing or attempting to enforce any of Tenant's obligations under this Lease, the violation of which constitute such Event of Default.

E.    Curing Tenant's Default.  If Tenant shall default in the performance of any of Tenant's obligations under this Lease, Landlord, without thereby waiving such default, may (but shall not be obligated to) perform the same for the account and at the expense of Tenant, without notice in a case of emergency, and in any other case if such default continues after the expiration of five (5) days from the date Landlord gives Tenant notice of intention so to perform. All costs, expenses and disbursements of every kind and nature, whatsoever, incurred by Landlord in connection with any such performance by it for the account of Tenant, including any expenses incurred for any property, material, labor or services provided, furnished or rendered, by Landlord or at its instance to Tenant, together with interest thereon at the Default Rate, shall be paid by Tenant to Landlord within ten (10) days after Landlord's rendition of each bill therefor to Tenant.

18.    Default by Landlord and Tenant Remedies.

A.    Should the Landlord materially fail to perform any of its obligations under this Lease, Tenant may give notice of the failure to the Landlord and demand that the obligation be performed within a reasonable time. Should the failure to perform the obligation continue beyond thirty (30) days, Tenant may declare a default in the provision of the Lease.

B.    Tenant's sole remedy for a Landlord default to perform the obligation or hire its performance charging a reasonable amount therefor to the account of the Landlord. Prior to initiating its own performance of the Lease obligation, it is agreed that the Tenant must provide to the Landlord and Landlord's mortgagee a written declaration of the default and allow an additional thirty (30) days from the written declaration for the Landlord to cure the same.

19.    Insurance.

A.    Coverages.  Landlord shall insure the Building against damage by fire, including extended coverage, in an amount equal to no less than ninety percent (90%) of the replacement cost of the Building and improvements, and shall maintain such insurance throughout the term hereby demised. During the term, Tenant shall fully and completely insure all of its property, owned or leased, in the Demised Premises against damage by fire, extended coverage, vandalism, water damage and sprinkler leakage in an amount selected by Tenant which shall, in any event, be adequate to satisfy any co-insurance requirements of the policies providing such insurance. In addition, both Landlord and Tenant shall also maintain with respect to the Building and Demised Premises , respectively, comprehensive public liability insurance, with minimum limits of One Million Dollars/One Million Dollars ($1,000,000.00/$1,000,000.00) for personal injury, and Five Hundred Thousand

Dollars ($500,000.00) for property damage.

**B.** <u>Other Lease Requirements.</u>    Tenant shall maintain the insurance coverage required herein with a company or companies acceptable to Landlord. The comprehensive public liability insurance shall include the Landlord as an additional named insured, as well as Tenant, against bodily injury to or death of persons and against property damages herein provided. Tenant shall deliver certificates of insurance indicating the above specified coverage to the Landlord upon the commencement of the term of this Lease, and continuing evidence of such coverage annually.  If such insurance is carried under a blanket policy, Tenant agrees to deliver to Landlord a proper certificate of such insurance, signed by the insurer. Such insurance policy or policies shall be in a form reasonably satisfactory to the Landlord and shall be placed with a company qualified to do business in the jurisdiction in which the Demised Premises are located, and shall provide that it (they) cannot be cancelled without at least ten (10) days prior written notice to the Landlord.

**C.** <u>No Subrogation.</u>  Neither Landlord nor Tenant shall be liable (by way of subrogation or otherwise) to the other party (or to any insurance company insuring the other party) for any loss or damage to any property of the Landlord or Tenant, as the case may be, covered by insurance to the extent of such insurance, even though such loss or damage might have been occasioned by the negligence of the Landlord or Tenant, or their respective agents, employees, invitees, etc. This release shall be in effect only so long as the applicable insurance policies shall contain a clause or endorsement to the effect that the aforementioned waiver shall not affect the right of the insured to recover under such policies; each party shall use its best efforts (including payment of additional premiums) to have its insurance policies contain the standard waiver of subrogation clause.  In the event Landlord's or Tenant's insurance carrier declines to include in such carrier's policies a standard waiver of subrogation clause, Landlord or Tenant, as the case may be, shall promptly notify the other party, in which event, the other party shall not be required to have its insurance policies contain such waiver of subrogation clause and this section shall be of no force and effect.

20.    <u>Tenant's Indemnity and Landlord's Indemnity.</u>

**A.** <u>Tenant's Indemnity.</u>  Tenant shall indemnify Landlord and save it harmless from suits, actions, damages, liability and expense in connection with loss of life, bodily or personal injury or property damage arising from or out of any occurrence in, upon or at, or from the occupancy or use by Tenant of the Premises or any part thereof, or occasioned wholly or in part by any act or omission of Tenant, its agents, contractors, employees, servants, invitees, licensees or concessionaires, except for such damages, liability and expense which may be caused by the negligence of Landlord or its agents or the condition of the Premises not due to the negligence fo Tenant or its agents.

**B.** <u>Landlord's Indemnity.</u>  Landlord shall indemnify Tenant and save it harmless from suits, actions, damages, liability and expense in connection with loss of life, bodily or personal injury or property damage arising from or out of any occurrence in, upon or at, any portion of the Premises, or occasioned wholly or in part by any act or omission of Landlord, its agents, contractors, employees, servants, invitees, licensees or concessionaires, except for damages or liability as may be caused by the negligence of Tenant or Tenant's agents.

21.    <u>Destruction.</u>  In case of damage by fire or other casualty to the Premises or any part thereof, Landlord shall have one hundred eighty (180) days within which to restore the same without terminating this Lease, except that if fire or other casualty shall damage the entire Premises or a substantial portion of the Premises, Landlord may elect not to repair and restore the Premises, in which event Landlord shall notify Tenant of that election within thirty (30) days after the date of the casualty.  In which case, Tenant may at any time thereafter terminate this Lease. In the event Landlord repairs and restores the damaged portion of said Premises, then during the period that Tenant is deprived of the use of the damaged portion of the Premises, Tenant shall be required to pay rental covering only that part of the Premises that it is able to

occupy; the rent for said remaining space shall be that portion of the total rent which that amount of square foot area remaining that can be occupied bears to the total square foot area of all the Premises covered by this Lease. If during the term of this Lease the entire Premises or any part thereof, including for this purpose the means of access thereto, shall be so damaged by fire or other casualty as to be untenantable, then unless said damage be repaired within one hundred eighty (180) days thereafter as herein specified, either party hereto, upon written notice to the other party given at any time following the expiration of one hundred eighty (180) days after said fire or other casualty, may terminate this Lease in which case the Rent shall be apportioned and paid to the date of said fire or other casualty. The period of one hundred eighty (180) days hereinabove referred to shall be extended by such additional period, not in excess of sixty (60) days, that Landlord is delayed in substantially completing such repair or restoration by causes such as strikes, unavailability of materials or any other cause which is beyond the reasonable control of the Landlord. Except as expressly stated herein, no compensation or claim of diminution of rent will be allowed or paid, by Landlord, by reason of inconvenience, annoyance, or injury to business, arising from the necessity of repairing the Premises, or any portion of the Building; however, the necessity may occur, as determined in the sole discretion of the Landlord. For purposes of this section, a substantial portion shall mean twenty-five percent (25%) or more of the Premises .

22.    Condemnation.  If any portion of the Premises less than a substantial part thereof shall be taken or condemned or sold for public or quasi public use or purpose by or to any competent authority, then this Lease shall not terminate except as to the part taken and shall terminate as to the part taken effective as of the date when title vests in such authority.  Tenant agrees if the Premises, or a substantial part thereof, shall be taken or condemned or sold for public or quasi public use or purpose by or to any competent authority, this Lease shall fully terminate as of the date when title vests in such authority. Tenant shall have no claim against the Landlord, and shall not have any claim or right to any portion of the amount that may be awarded as damages or paid as a result of any such condemnation; and all rights of Tenant to damages therefore, if any, are hereby assigned by Tenant to Landlord. For purposes of this section, a substantial part shall mean twenty-five percent (25%) or more of the Premises .

23.    Subordination.  Provided that such mortgagee or mortgagees agree not to disturb Tenant's possession and use of the Premises, Tenant agrees that this Lease is and shall remain subject to and subordinate to all present and future first mortgages affecting the Building, and likewise subordinate to any other mortgage affecting the Building as to which Landlord may elect and the Tenant shall promptly execute and deliver to Landlord such certificate or certificates in writing as the Landlord may request, showing the subordination of this Lease to such mortgage or mortgages and in default of the Tenant's so doing.

24.    Parking Spaces. Tenant shall have the exclusive right to the parking spaces located at the on the Premises.

25.    No Representations by Landlord.  Neither Landlord nor any agent or employee of Landlord has made any representations or promises with respect to the Premises except as herein expressly set forth, and no rights, privileges, easements or licenses are acquired by Tenant except as herein set forth.  The Tenant, by taking possession of the Premises , shall accept the same "as is", and such taking of possession shall be conclusive evidence that the Premises are in good and satisfactory condition at the time of such taking of possession. Landlord agrees to assign to Tenant the right of pursuing any claim it might have under warranties from contractors, materialmen or suppliers of the Premises.

26.    Entire Agreement. This Lease, together with the Exhibit(s) attached hereto, contains the entire and only agreement between the parties and no oral statements or representations or prior written matter not contained or referred to in this instrument shall have any force or effect. This Lease shall not be modified in any way except by a writing subscribed by both parties. The failure of the Landlord or Tenant

to insist upon strict performance by the other of any of the covenants or conditions of this Lease in any one or more instances shall not be construed as a waiver or relinquishment for the future of any such covenants or conditions, but the same shall be and remain in full force and effect. No waiver of any provision of this Lease shall be deemed to have been made, unless it be in writing and signed by the party to be charged therewith.

27.    Notices.  All notices required or desired to be given hereunder by either party to the other shall be given by certified or registered mail, first class, postage prepaid, return receipt requested. Notice to the respective parties shall be addressed as follows:

If to Landlord:                                              If to Tenant:

JOHN W. GOFF                                          GOFF GROUP, INC.
80 Techancenter Dr.                                    80 Techancenter Dr.
Montgomery, AL 36117                              Montgomery, AL 36117


With Copy To:                                           With Copy To:
George W. Thomas, Esq.
Kaufman and Rothfeder, P.C.
2740 Zelda Road, 3rd Floor
Montgomery, AL 36106
Office:   334-244-1111
Fax:      334-244-1969

Either party may, by like written notice, designate a new address to which such notices shall be directed. Notice shall be deemed given five (5) days after it is mailed.

27.    Estoppel Certificates.  Tenant agrees, at any time and from time to time, upon not less than five (5) days prior written notice by Landlord, to execute, acknowledge and deliver to Landlord a statement in writing stating (i) that this Lease is unmodified and in full force and effect, or if there have been modifications, that this Lease is in full force and effect as modified, and stating any such modifications; (ii) that Tenant has accepted possession of the Premises , and that any improvements required by the terms of this Lease to be made by the Landlord have been completed to the satisfaction of the Tenant; (iii) that no rent under this Lease has been paid more than thirty (30) days in advance of its due date; (iv) the address to which notices to Tenant should be sent; (v) that Tenant, as of the date of any such certification, has no charge, lien or claim of set off under this Lease, or otherwise, against rents or other charges due or to become due hereunder; and (vi) whether or not, to the best of Tenant's knowledge, Landlord is, or is not, in default of the performance of any covenant, agreement or condition contained in this Lease, and, if so, specifying each such default of which Tenant may have knowledge. Any such statement delivered pursuant hereto may be relied upon by any owner of the Premises, any prospective purchaser of the Premises, any mortgagee or prospective mortgagee of the Premises or of Landlord's interest, or any prospective assignee of any such mortgagee.

28.    Binding Effect of Lease.  It is agreed that all rights, remedies and liabilities herein given to or imposed upon either of the parties hereto, shall extend to their respective heirs, executors, administrators and, except as otherwise expressly provided in this Lease, their successors and assigns. Landlord may freely and fully assign its interest hereunder. The term "Landlord" shall mean only the owner at the time in question of the Premises or of a lease of the Premises, so that in the event of any transfer or transfers of title

to the Premises or of Landlord's interest in a lease of the Premies, the transferor shall be and hereby is relieved of all obligations of Landlord under this Lease accruing after such transfer, and it shall be deemed, without further agreement, that such transferee has assumed and agreed to perform and observe all obligations of Landlord herein during the period it is the older of Landlord's interest under this Lease.

29.    Holding Over.    If the Tenant withholds from the Landlord possession of the Premises at the termination of this Lease, whether by lapse of time or by election of the Landlord the damages for which the Tenant shall be liable for such detention shall be and are hereby equal to 150% of the rate of rent stipulated herein, the same to be due for the entire period of such holding over or detention, without liability for any consequential and actual damages.

30.    Signs and Advertising.    Except for the existing signage on the date of this Lease, which is approved, no sign, advertising or notice shall be inscribed, fixed or displayed on any part of the outside or the inside except within the Premises, except as approved in writing in advance by Landlord, and then only in such place, number, size, color and style as approved by Landlord. Any such permitted use, including directories and nameplates, shall be at the sole cost and expense of the Tenant, except as otherwise provided. Landlord shall h ave the right to prohibit any advertisement of Tenant which in its opinion tends to impair the reputation of the Building or its desirability as a high-quality office building, and upon written notice from Landlord, Tenant shall immediately refrain from and discontinue any such advertisement. Landlord shall have the right to install signs on the exterior or interior of the Building.

31.    Miscellaneous.

A.    Words of any gender used in this Lease shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, unless the context otherwise requires.

B.    The captions inserted in this Lease are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Lease or any provision hereof.

C.    If any clause, phrase, provision or portion of this Lease or the application thereof to any person or circumstance shall be invalid or unenforceable under applicable law, such event shall not affect, impair or render invalid or unenforceable the remainder of this Lease nor any other clause, phrase, provision or portion thereof.

D.    Each of the parties (i) represents and warrants to the other that it has not dealt with any broker or finder in connection with this Lease, except as may be otherwise described herein, and (ii) indemnifies and holds the other harmless from any and all losses, liability, cost or expenses (including attorney's fees) incurred as a result of a breach of the foregoing warranty.

32.    Entry by Landlord.    Landlord reserves and shall at any and all reasonable times, after reasonable notice, have the right to enter the Premises to inspect the same, to supply any services to be provided by Landlord to Tenant hereunder, and to submit said Premises to prospective purchasers or tenants, to post notices of non-responsibility, to repair the Premises or any other portion of the Building to the extent such entry does not in any material way affect Tenant's use of the same, all without abatement of rent, and may for that purpose erect scaffolding and other necessary structures where reasonably required by the character of the work to be performed. For each of the aforesaid purposes, Landlord shall at all times have and retain a key with which to unlock all of the doors in, upon and about the Premises , except Tenant's vaults and safes, and Landlord shall have the right to use any and all means which Landlord may deem proper to open said doors in an emergency in order to obtain entry to the Premises , and any entry to the Premises

obtained by Landlord by any of said means, or otherwise, shall not, under any circumstances, be construed or deemed to be a forcible or unlawful entry into, or a detainer of, the Premises, or an eviction of Tenant from the Premises or any portion thereof. Landlord agrees to use reasonable efforts not to interfere with Tenant's business in the Premises in the event entry is required or needed as described in this Section 32.

33.    Limitation of Liability.    Tenant shall look only to Landlord's estate and property in the Building and on the land on which it is located for satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) requiring the payment of money by Landlord or its successors or assigns, in the event of any default by Landlord hereunder (subject to the prior rights of the holder of the mortgage or deed to secure debt on any part of the Building) and no other property or assets of Landlord or its partners or principals, disclosed or undisclosed, shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under and with respect to this Lease, the relationship of Landlord and Tenant hereunder or Tenant's use or occupancy of the Premises.

34.    Laws of Alabama.    This Lease shall be construed and interpreted in accordance with the laws of the State of Alabama.

<div align="center">

[SIGNATURES ON NEXT PAGE]

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

</div>

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands the day and year first above written.

LANDLORD:

_____ (L.S.)
JOHN W. GOFF

TENANT:

GOFF GROUP, INC.

By: _____
    John W. Goff, Its President

This Instrument Was Prepared By:
George W. Thomas
Kaufman & Rothfeder, P.C.
2740 Zelda Road, 3rd Floor
Montgomery, Alabama  36106
K&R File No. 5254.2016

## WARRANTY DEED

STATE OF ALABAMA
COUNTY OF MONTGOMERY

KNOW ALL MEN BY THESE PRESENTS, That in consideration of other good and valuable considerations and the sum of Ten and no/100 ($10.00) Dollars to the undersigned GRANTOR in hand paid by the GRANTEE herein, the receipt of which is hereby acknowledged, GOFF GROUP, INC., an Alabama corporation (hereinafter referred to as GRANTOR), does hereby grant, bargain, sell and convey unto JOHN W. GOFF (hereinafter referred to as GRANTEE), the following described real estate situated in the County of Montgomery and State of Alabama, to-wit:

See Exhibit "A" Attached Hereto

This conveyance is made subject to that certain first mortgage in favor of StanCorp Mortgage Investors, LLC, an Oregon limited liability company, as the same is recorded in the Office of the Judge of Probate of Montgomery County, Alabama in RLPY Book 2679, at Page 595, as to Parcel I, and other subordinate encumbrances heretofore imposed of record affecting said property.

This conveyance is also made subject to that certain first mortgage in favor of Companion Casualty and Property Insurance Company, a South Carolina corporation, as the same is recorded in the Office of the Judge of Probate of Montgomery County, Alabama in RLPY Book 2824, at Page 757, as to Parcel IIA & Parcel IIB, and other subordinate encumbrances heretofore imposed of record affecting said property.

This conveyance is further made subject to any and all restrictions, reservations, covenants, easements, and rights of way, if any, heretofore imposed of record affecting said property and municipal zoning ordinances now or hereafter becoming applicable, and taxes or assessments now or hereafter becoming due against said property.

For tax appraisal purposes only, the address of the above described real estate is Lot 1-A, 80 Technacenter Drive, Montgomery, AL; and the mailing address of GRANTEE is P. O. Box 241567, Montgomery AL 36124-1567.

Together with all and singular the tenaments, hereditaments and appurtenances thereto belonging or in anywise appertaining in fee simple.

And said GRANTOR does for itself and its successors and assigns, covenant with the said GRANTEE, his heirs and assigns, that it is lawfully seized in fee simple of said premises, that they are free from all encumbrances, unless otherwise noted above, that it is entitled to the immediate possession thereof; that it has a good right to sell and convey the same as aforesaid; that it will and its successors and assigns shall, warrant and defend the same to the said GRANTEE, his heirs and assigns forever, against the lawful claims of all persons.

IN WITNESS WHEREOF, the undersigned has hereunto set its signature on this the _31st_ day of _January_ , 2005 .

Goff Group, Inc.

By: _____

Its: _____

STATE OF ALABAMA

COUNTY OF MONTGOMERY

I, the undersigned, a notary public in and for said county in said state, hereby certify that _John W Goff_ as _Pres._ of Goff Group, Inc. is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he as such duly authorized officer executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this the _31st_ day of _January_ , 2005 .

_____
Notary Public
My Commission Expires: _7/25/05_

S:\Client-Matters\5254\2014\Goff Group deed 122904.wpd

2

Exhibit "A"

**Parcel I:**

Lot 1-A, Block A, according to the Map of Technacenter Plat No. 2, as said Map appears of record in the Office of the Judge of Probate of Montgomery County, Alabama in Plat Book 41, at Page 150.

**Parcel IIA:**

Begin at the Southeast corner of Lot 1-A, Technacenter Plat No. 2, as recorded in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 41, at Page 150, said point also being the Point of Beginning; thence run N 03° 52' 00" W, 547.86 feet to a point; thence run N 86° 08' 00" E, 268.95 feet to a point lying in the centerline of a creek (Carter Creek); thence run along the meandering of said creek, more or less, the following four (4) courses and distances: (1) S 08° 36' 53" E, 181.88 feet, (2) S 16° 16' 25" E, 135.59 feet, (3) S 00° 35' 42" E, 140.21 feet, (4) S 00° 21' 53" E, 94.37 feet to a point lying on the north right of way of Atlanta Highway (US Highway 80); thence run along said right of way S 86° 08' 00" W, 299.37 feet to the point of beginning.

Said described parcel of land lying and being situated in the East Half of Section 14, T-16-N, R-19-E, Montgomery County, Alabama, and contains 3.722 acres, more or less.

**PARCEL IIB:**

Begin at the Northeast corner of Lot 1-B, Block A, Technacenter Plat No. 2, as recorded in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 41, at Page 150, said point also being the Point of Beginning; thence run N 86° 08' 00" E, 271.57 feet to a point lying in the centerline of a creek (Carter Creek); thence run along the meandering of said creek, more or less, the following four (4) courses and distances: (1) S 12° 43' 01" E, 99.18 feet, (2) S 06° 32' 03" W, 117.32 feet, (3) S 12° 37' 48" W, 83.96 feet, (4) S 28° 51' 01" E, 64.26 feet to a point; thence leaving said centerline of creek run S 86° 08' 00" W, 268.95 feet to a point; thence run N 03° 52' 00" W, 352.14 feet to the Point of Beginning.

Said described parcel of land lying and being situated in the East Half of Section 14, T-16-N, R-19-E, Montgomery County, Alabama, and contains 2.182 acres, more or less.

STATE OF ALABAMA
MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON

2006 FEB 16  AM 8: 00

REESE McKINNEY, JR.
JUDGE OF PROBATE

3.

Feb. 17. 2005  5:22PM   THE CONE COMPANY   EVIDENCE OF PROPERTY INSURANCE   No. 4983   P. 2   DATE (MM/DD/YY)
02/17/2005

ACORD

THIS IS EVIDENCE THAT INSURANCE AS IDENTIFIED BELOW HAS BEEN ISSUED, IS IN FORCE, AND CONVEYS ALL THE RIGHTS AND PRIVILEGES AFFORDED UNDER THE POLICY.

| PRODUCER PHONE (A/C, No, Ext): (334)272-4791 | COMPANY |
|---|---|
| The Cone Company<br>P. O. Box 230549<br>Montgomery, AL 36123-0549 | Hartford |

| CODE: | SUB CODE: |
|---|---|
| AGENCY CUSTOMER ID #:  00000253 | |

| INSURED | |
|---|---|
| John W. Goff | |

| LOAN NUMBER | POLICY NUMBER |
|---|---|
| | BK01764366 |

| EFFECTIVE DATE | EXPIRATION DATE | CONTINUED UNTIL TERMINATED IF CHECKED |
|---|---|---|
| 12/15/2004 | 12/15/2005 | |

THIS REPLACES PRIOR EVIDENCE DATED:

| LOCATION/DESCRIPTION | |
|---|---|
| 1 | Loc 00001 Bldg 00001 80 Technacenter Dr Montgomery, AL 36117 |

| | COVERAGE/PERILS/FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|---|
| 1 | Building, , Special | 3,379,000 | 2500 |
| 1 | Business Personal Property, , Special | 250,000 | 2500 |

THE POLICY IS SUBJECT TO THE PREMIUMS, FORMS, AND RULES IN EFFECT FOR EACH POLICY PERIOD. SHOULD THE POLICY BE TERMINATED, THE COMPANY WILL GIVE THE ADDITIONAL INTEREST IDENTIFIED BELOW ____30__ DAYS WRITTEN NOTICE, AND WILL SEND NOTIFICATION OF ANY CHANGES TO THE POLICY THAT WOULD AFFECT THAT INTEREST, IN ACCORDANCE WITH THE POLICY PROVISIONS OR AS REQUIRED BY LAW.

| ADDITIONAL INTEREST | |
|---|---|
| NAME AND ADDRESS | |
| Stancorp Mortgage Investors, LLC<br>920 SW 6th Ave<br>Portland, OR 97204 | X MORTGAGEE    X ADDITIONAL INSURED<br>LOSS PAYEE<br>LOAN # |

AUTHORIZED REPRESENTATIVE

**A. Settlement Statement**

WinClose
Fee Simple Software, Inc
(205) 823-3993

U.S. Department of Housing
and Housing Development
OMB No. 2502-0265

**B. TYPE OF LOAN**

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☑ Conv. Unins | File Number | Loan Number | FHA/VA Case Number | Mortgage Ins. Number |
|---|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | 62542016 | A3031906 | | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "POC" were paid outside of closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER:**
John W. Goff
80 Technacenter Drive
Montgomery, Alabama 36117

**E. NAME AND ADDRESS OF SELLER:**
Goff Group, Inc.
80 Technacenter Drive
(SELLER TIN· ) Montgomery, Alabama 36117

**F. NAME AND ADDRESS OF LENDER:**
Stancorp Mortgage Investors
920 SW Sixth Avenue
Portland, OR 97204

**G. PROPERTY LOCATION:**
Lot 1-A, Technacenter Plat
Montgomery, Alabama
Tax ID:

**H. SETTLEMENT AGENT:**
Kaufman & Rothfeder, P.C.
2740 Zelda Road, 3rd Floor
(TIN· 83-0847827 ) Montgomery, Alabama 36106

**PLACE OF SETTLEMENT:**
2740 Zelda Road, 3rd Floor
Montgomery, Alabama 36106

**I. SETTLEMENT DATE:** February 14, 2005

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sales price | $2,888,586.95 | 401. Contract sales price | $2,888,586.95 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $0.00 | 403. (Gross Proceeds- $2,888,586.95 ) | |
| 104. | | 404. | |
| 105. | | 405. | |
| **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE** | | **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE** | |
| 106. City/town taxes to | | 406. City/town taxes to | |
| 107. County taxes to | | 407. County taxes to | |
| 108. Assessments to | | 408. Assessments to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER:** | $2,888,586.95 | **420. GROSS AMOUNT DUE TO SELLER:** | $2,888,586.95 |
| **200. AMOUNTS PAID ON OR ON BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | $1,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | $11,000.00 |
| 203. Existing loan(s) taken subject to | $2,787,586.95 | 503. Existing loan(s) taken subject to | $2,787,586.95 |
| 204. | | 504. Payoff 1st mortgage loan | |
| 205. | | 505. Payoff 2nd mortgage loan | |
| 206. Credit Reinstatement Payment loan | $90,000.00 | 506. Credit Reinstatement Payment loan | $90,000.00 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER** | | **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | |
| 210. City/town taxes to | | 510. City/town taxes to | |
| 211. County taxes to | | 511. County taxes to | |
| 212. Assessments to | | 512. Assessments to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER:** | $2,878,586.95 | **520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER:** | $2,888,586.95 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross amount due from borrower (line 120) | $2,888,586.95 | 601. Gross amount due to seller (line 420) | $2,888,586.95 |
| 302. Less amount paid by/for borrower (line 220) | $2,878,586.95 | 602. Less reductions in amount due seller (line 520) | $2,888,586.95 |
| 303. CASH ( ☑ FROM )( ☐ TO ) BORROWER: | $10,000.00 | 603. CASH ( ☐ TO )( ☑ FROM ) SELLER: | $0.00 |

**SUBSTITUTE FORM 1099 STATEMENT:** The information contained in Blocks E, G, H, and I and on line 401 (of if line 401 is asterisked, lines 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that is has not been reported.
**SELLER INSTRUCTIONS:** If this real estate was your principal residence, file form 2119, Sale of Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040). You are required by law to provide [see box H] your correct taxpayer identification number. If you do not provide [see box H] your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law, and under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

HUD-1 (3-86) - RESPA, HB 4305.2

GWT

_____ Seller's Signature

Page 1

I. ENTER LANGUAGE PCT.

| | | | | | | |
|---|---|---|---|---|---|---|
| 1002 Mortgage insurance | months @ | | per month | | | |
| 1003 City property taxes | months @ | | per month | | | |
| 1004 County property taxes | months @ | | per month | | | |
| 1005 Annual assessments | months @ | | per month | | | |
| 1006 Flood insurance | months @ | | per month | | | |
| 1007 School property taxes | months @ | | per month | | | |
| 1008 Village property taxes | months @ | | per month | | | |
| 1009 Aggregate adjustment | | | | | | |
| 1100. TITLE CHARGES: | | | | | | $0.00 |
| 1101 Settlement or closing fee | | | | | | |
| 1102 Abstract or title search: | | | | | | |
| 1103 Title examination: | | | | | | |
| 1104. Title insurance binder: | | | | | | |
| 1105 Document preparation: | | | | | | |
| 1106 Notary fees: | | | | | | |
| 1107 Attorney's fees | | | | | | |
| (includes above item Numbers | ) | | | | | |
| 1108 Title insurance | | | | | | |
| (includes above item Numbers | ) | | | | | |
| 1109 Lender's coverage | | | | | | |
| 1110 Owner's coverage | | | | | | |
| 1111 | | | | | | |
| 1112 | | | | | | |
| 1113 | | | | | | $9,976.50 |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES: | | | | | | |
| 1201 Recording Fee | $13.50 Mtg. | | $0.00 Rel. | $0.00 | | |
| 1202 City/county tax/stamps | Deed | $10.00 Mortgage | $0.00 | | | $13.50 |
| 1203 State tax/stamps | Deed | Mortgage | | | | $10.00 |
| 1204. | | | | | | |
| 1205 | | | | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES: | | | | | | |
| 1301 Survey | | | | | | |
| 1302 Pest inspection | | | | | | |
| 1303 | | | | | | |
| 1304. | | | | | | |
| 1305. | | | | | | |
| 1306. | | | | | | |
| 1307 | | | | | | |
| 1400. TOTAL SETTLEMENT CHARGES: | | | | | | $0.00 | $11,000.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Goff Group, Inc.

Borrower: _____  Date: 02/14/05   Seller or Agent: _____
John W. Goff                                    John W. Goff, President          Date: 02/14/05

Borrower: _____  Date: _____   Seller or Agent: _____
                                                                                Date: _____

Borrower: _____  Date: _____   Seller or Agent: _____
                                                                                Date: _____

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: Kaufman & Rothfeder, P.C.
George W. Thomas          Date: 02/14/05

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title U.S. Code Section 1001 and Section 1010.

WinClose by Fee Simple Software (205) 823-3993 (WWW.WinClose.com)          HUD-1 (Rev. 3/86)          Page 2

**A. Settlement Statement**

WinClose
Fee Simple Software, Inc
(205) 823-3993

U.S. Department of Housing
and Urban Development
OMB No. 2502-0265

**B. TYPE OF LOAN**

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☑ Conv. Unins | File Number | Loan Number | FHA/VA Case Number | Mortgage Ins. Number |
|---|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | 52542016 | A3031906 | | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "POC" were paid outside of closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER:**
John W. Goff
80 Technacenter Drive
Montgomery, Alabama 36117

**E. NAME AND ADDRESS OF SELLER:**
Goff Group, Inc.
80 Technacenter Drive
Montgomery, Alabama 36117
(SELLER TIN:    )

**F. NAME AND ADDRESS OF LENDER:**
Stancorp Mortgage Investors
920 SW 56th Avenue
Portland, OR 97204

**G. PROPERTY LOCATION:**
Lot 1-A, Technsecnter Plat
Montgomery, Alabama
Tax ID:

**H. SETTLEMENT AGENT:**
Kaufman & Rothfeder, P.C.
2740 Zelda Road, 3rd Floor
Montgomery, Alabama 36106
(TIN: 63-0847927    )

**PLACE OF SETTLEMENT:**
2740 Zelda Road, 3rd Floor
Montgomery, Alabama 36106

**I. SETTLEMENT DATE:** February 14, 2005

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sales price | $2,888,586.95 | 401. Contract sales price | $2,888,586.95 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $0.00 | 403. * (Gross Proceeds- $2,888,586.95 ) | |
| 104. | | 404. | |
| 105. | | 405. | |
| **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE:** | | **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE** | |
| 106. City/town taxes    to | | 406. City/town taxes    to | |
| 107. County taxes    to | | 407. County taxes    to | |
| 108. Assessments    to | | 408. Assessments    to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER:** | $2,888,586.95 | **420. GROSS AMOUNT DUE TO SELLER:** | $2,888,586.95 |
| **200. AMOUNTS PAID ON OR ON BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | $1,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400 | $11,000.00 |
| 203. Existing loan(s) taken subject to | $2,787,586.95 | 503. Existing loan(s) taken subject to | $2,787,586.95 |
| 204. | | 504. Payoff 1st mortgage loan | |
| 205. | | 505. Payoff 2nd mortgage loan | |
| 206. Credit Reinstatement Payment loan | $90,000.00 | 506. Credit Reinstatement Payment loan | $90,000.00 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | | **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | |
| 210. City/town taxes    to | | 510. City/town taxes    to | |
| 211. County taxes    to | | 511. County taxes    to | |
| 212. Assessments    to | | 512. Assessments    to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER:** | $2,878,586.95 | **520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER:** | $2,888,586.95 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross amount due from borrower (line 120) | $2,888,586.95 | 601. Gross amount due to seller (line 420) | $2,888,586.95 |
| 302. Less amount paid by/for borrower (line 220) | $2,878,586.95 | 602. Less reductions in amount due seller (line 520) | $2,888,586.95 |
| 303. CASH ( ☑ FROM )( ☐ TO) BORROWER: | $10,000.00 | 603. CASH ( ☐ TO )( ☑ FROM ) SELLER: | $0.00 |

SUBSTITUTE FORM 1099 STATEMENT: The information contained in Blocks E, G, H, and I and on line 401 (of if line 401 is asterisked, lines 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that is has not been reported.
SELLER INSTRUCTIONS: If this real estate was your principal residence, file form 2119, Sale of Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040). You are required by law to provide (see box H) your correct taxpayer identification number. If you do not provide (see box H) your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law, and under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

GWT

_____
Seller's Signature

HUD-1 (3-86) - RESPA, HB 4305.2

**L.**                              SETTLEMENT CHARGES

**700. TOTAL SALES/BROKER'S COMMISSIONS:**

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| Based on price:    $2,685,566.95    @          % | | | |
| Division of Commission (Line 700) as follows: | | | |
| **701.** $0.00   to: | | | |
| **702.** $0.00   to: | | | |
| **703.** Commission paid at settlement | | | |
| **704.** | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN:** | | | |
| **801.** Loan origination fee | | | |
| **802.** Loan discount | | | |
| **803.** Appraisal fee | | | |
| **804.** Credit report | | | |
| **805.** Assumption fee:               to  Stancorp | | | |
| **806.** | | | $1,000.00 |
| **807.** | | | |
| **808.** | | | |
| **809.** | | | |
| **810.** | | | |
| **811.** | | | |
| **812.** | | | |
| **813.** | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE:** | | | |
| **901.** Interest from          to          days @ | | | |
| **902.** Mortgage Insurance premium for          mos. to | | | |
| **903.** Hazard Insurance premium for          yrs. to | | | |
| **904.** Flood Insurance premium for          yrs. to | | | |
| **905.** | | | |
| **1000. RESERVES DEPOSITED WITH LENDER:** | | | |
| **1001.** Hazard Insurance          months @          per month | | | |
| **1002.** Mortgage Insurance          months @          per month | | | |
| **1003.** City property taxes          months @          per month | | | |
| **1004.** County property taxes          months @          per month | | | |
| **1005.** Annual assessments          months @          per month | | | |
| **1006.** Flood insurance          months @          per month | | | |
| **1007.** School property taxes          months @          per month | | | |
| **1008.** Village property taxes          months @          per month | | | |
| **1009.** Aggregate adjustment          per month | | | |
| **1100. TITLE CHARGES:** | | $0.00 | |
| **1101.** Settlement or closing fee | | | |
| **1102.** Abstract or title search: | | | |
| **1103.** Title examination: | | | |
| **1104.** Title insurance binder: | | | |
| **1105.** Document preparation: | | | |
| **1106.** Notary fees: | | | |
| **1107.** Attorney's fees | | | |
|     (includes above item Numbers          ) | | | |
| **1108.** Title insurance | | | |
|     (includes above item Numbers          ) | | | |
| **1109.** Lender's coverage | | | |
| **1110.** Owner's coverage | | | |
| **1111.** | | | |
| **1112.** | | | |
| **1113.** | | | $9,578.50 |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES:** | | | |
| **1201.** Recording Deed     $13.50   Mtg.               | | | |
| **1202.** City/county tax/stamps   Deed    $10.00   Mortgage   $0.00   Rel.   $0.00     $0.00 | | | $13.50 |
| **1203.** State tax/stamps   Deed          Mortgage | | | $10.00 |
| **1204.** | | | |
| **1205.** | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES:** | | | |
| **1301.** Survey | | | |
| **1302.** Pest inspection | | | |
| **1303.** | | | |
| **1304.** | | | |
| **1305.** | | | |
| **1306.** | | | |
| **1307.** | | | |
| **1400. TOTAL SETTLEMENT CHARGES:** | | $0.00 | $11,000.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Golf Group, Inc.

| Borrower: | | Date: 02/14/05 | Seller or Agent: | |
| --- | --- | --- | --- | --- |
| John W. Goff | | | John W. Goff, President | Date: 02/14/05 |
| Borrower: | | Date: | Seller or Agent: | |
| | | | | Date: |
| Borrower: | | Date: | Seller or Agent: | |
| | | | | Date: |

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Kaufman & Rothleder, P.C.

Settlement Agent:    George W. Thomas                     Date: 02/14/05

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title U.S. Code Section 1001 and Section 1010.

WinClose by Fee Simple Software (205) 823-3993 (WWW.WinClose.com)    HUD-1 (Rev. 3/86)    Page 2

# PURCHASE AND SALE AGREEMENT



**THIS PURCHASE AND SALE AGREEMENT** (hereinafter sometimes referred to as the "Agreement") is hereby made and entered into as of the Effective Date (as hereinafter defined) by and between **GOFF GROUP, INC.**, an Alabama corporation (hereinafter sometimes referred to as the "Seller") and **JOHN W. GOFF**, (hereinafter sometimes referred to as the "Purchaser").

## W I T N E S S E T H   T H A T:

**WHEREAS,** Seller owns 80 Technacenter Drive also known as Lot 1-A of the Technacenter Plat as the same is more fully described on Exhibit "A" (hereinafter referred to as the "Property");

**WHEREAS,** Seller owes a first mortgage loan to StanCorp, and a number of other loans secured by the Property as shown on the following table:

| CREDITOR POSITION | CREDITOR | APPROXIMATE AMOUNT |
|---|---|---|
| First Mortgage | Stancorp Mortgage | $   1,787,594.46 |
| Second Mortgage | Community Bank | $      391,416.99 |
| Third Mortgage | Dooley Culbertson | $      200,000.00 |
| Fourth Mortgage | SouthTrust Bank | $        71,000.00 |
| Fifth Mortgage | Art Leadingham | $        75,000.00 |
| Sixth Mortgage | Tommy Gallion | $        75,000.00 |
| Seventh Mortgage | Bobby Bowick | $        69,575.50 |
| Eighth Mortgage | Jody Duncan | $      118,000.00 |
| **TOTAL** | | $   2,787,586.95 |

; and

**WHEREAS,** the following are costs associated with a third party sale which would have to be paid at the closing of an outright sale to a party other than Purchaser:

| FACTOR | APPROXIMATE COST |
|---|---|
| First Mortgage Prepayment Penalty | $245,000 |
| 6-10 % Real Estate Commission | $180,000 to $300,000 |
| **TOTAL** | $425,000 to $545,000 |

; and

WHEREAS, there is deferred maintenance on the building of $200,000 to $300,000 which is a factor is assessing the value of the building and has the effect of de-valuing the bottom line of the appraised value of the building; and

WHEREAS, the current appraised value of the property is in the range of $3,200,000 to $3,400,000 without consideration of sales commission, the prepayment penalty or deferred maintenance; and

WHEREAS, John W. Goff has already loaned to Goff Group, Inc. $90,000 by paying that sum on behalf of Goff Group, Inc. in order to reinstate the first mortgage with StanCorp; and

WHEREAS, the assumption by John W. Goff of all of the liabilities on the Property plus credit for the $90,000 reinstatement payment and a $1000 binder results in an assumption price of approximately $2,878,586.95;

WHEREAS, an assumption price of $2,878,586.95 paid by John W. Goff is equivalent to a free and clear sale through a realtor to any other party in the price range of $3,303,586.95 to $3,423,586.95 because of the absence of the aforementioned prepayment penalty and real estate commission; and

WHEREAS, Seller desires to sell and Purchaser desires to purchase, upon the terms and conditions hereinafter set forth, the Property, together with (a) all right, title and interest of Seller in and to any and all improvements situated upon the Property, (b) all rights, easements, licenses, privileges and appurtenances pertaining thereto, and (c) all trees, bushes, landscaping and foliage thereon with said sale and purchase being subject only to the Permitted Title Exceptions as defined in Paragraph 5 hereof.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are all hereby acknowledged by each of the parties hereto, the parties hereto agree as follows:

1. **Purchase and Sale; Purchase Price and Method of Payment.** At the Closing on the Closing Date (as hereinafter defined), and upon all of the terms and subject to all of the conditions of this Agreement, Seller shall sell, assign, convey, transfer and deliver to Purchaser, and Purchaser shall purchase and take possession of, the Property. The purchase price for the Property shall be approximately TWO MILLION EIGHT HUNDRED EIGHTY-SEVEN THOUSAND FIVE HUNDRED EIGHTY-SIX and 95/100 Dollars ($2,887,586.95) (hereinafter sometimes referred to as the "Purchase Price"). The Purchase Price shall be adjusted as set forth in this Agreement and shall be paid by Purchaser to Seller at Closing in the manner set forth herein.

A.   **Reinstatement Payment.** Purchaser shall receive a credit against the Purchase Price for $90,000.00 representing a reinstatement payment paid on December 1, 2005 which payment was funded by a loan obtained by purchaser from Dooley Culbertson and Bobby Bowick.

B.   **Assumption of Existing Loans.** Purchaser shall assume Seller's existing mortgage loans listed above and receive a credit against the Purchase Price in the amount of $2,787,586.95.

C.   **Binder/Assumption Fee.** The Seller has agreed to pay the Assumption Fee in Paragraph 2 below. Purchaser herewith tenders to Seller $1000.00 as an earnest money binder which Seller shall in turn use to pay the Assumption Fee. Said binder shall be credited to the Purchase Price at closing.

D.   **Cash to Seller at Closing.** At Closing, no cash is to be paid to Seller in that the entire purchase price is financed by the assumption credit, the reinstatement credit, and the binder credit.

2.   **Closing Costs.** Seller shall pay the Assumption Fee of StanCorp in the amount of $1000.00. Purchaser shall be responsible for the other closing costs including recording fees on recordable documents.

3.   **Closing Prorations.** The following items are to be prorated or adjusted (as appropriate) as of the Closing Date, it being understood that for purposes of prorations and adjustments, Purchaser shall be deemed the owner of the Property on the Closing Date and shall receive the benefits and burdens of ownership on and after the Closing Date:

(i)   All real estate and other ad valorem, personal property, use and other taxes shall be prorated (employing a 365-day year) between Purchaser and Seller as of closing based upon the most recently available property assessment and based on 100% of the amount payable, regardless of whether any appeal is pending. If such assessment is not available for the year in question, such proration shall be made on the best available information, and taxes shall be reprorated when the amount thereof can be ascertained and the provisions hereof shall survive the Closing and the delivery of Seller's limited warranty deed. If any taxes or assessments against the Property are not paid in full by Seller on or before Closing the same shall be paid at bond closing.

(ii)   All such other charges and expenses of the Property.

4.   **Closing.** The consummation of the purchase and sale of the Property contemplated under this Agreement (the "Closing") shall be held at a time mutually agreed upon in writing but not later than _____, 2005 (the "Closing Date") by Purchaser and Seller at the offices of Kaufman & Rothfeder, P. C., or such other office designated by Purchaser.

5.   **Conveyance of Title.** At Closing, Seller shall convey fee simple title to the Property to Purchaser pursuant to a recordable limited warranty deed, subject only to such exceptions to title

as are set forth on Exhibit "B" attached hereto (the "Permitted Title Exceptions") . Seller will convey marketable title to the Property to Purchaser, insurable (at Purchaser's expense) by a title insurance company under its standard ALTA Owner's Policy of Title Insurance at standard rates, free and clear of all liens (except the assumed mortgages listed in the recitals above), encumbrances, and other exceptions to title, except those which do not materially affect the current use of the property in an adverse manner.

6.    **Damage or Destruction, Condemnation and Code Violations.**

A.    **Damage or Destruction.** If, prior to Closing, the Property, or any part thereof, is damaged or destroyed by any casualty and the Property, or any part thereof, so damaged or destroyed are not repaired or replaced to a condition at least as good as that immediately preceding the damage or destruction (the parties agreeing that the inability of Seller to restore occupancy and revenue to levels reasonably comparable to those existing immediately prior to such casualty shall constitute a condition not as good as that immediately preceding the casualty) by Seller at Seller's expense prior to Closing, then Purchaser shall have the option to (i) if the damage exceeds $100,000.00, terminate this Agreement by giving written notice of such termination to Seller; or (ii) close the transaction contemplated by this Agreement according to the terms hereof without reduction in the Purchase Price, in which event at the Closing Seller shall (x) allow as a credit against the Purchase Price a sum equal to any insurance proceeds previously paid to Seller on account of such damage or destruction which have not been applied to the restoration of the Property, or any part thereof, prior to Closing and (y) assign to Purchaser all of Seller's rights to receive the proceeds of any insurance policy otherwise payable to and not previously paid to Seller on account of such damage or destruction. If the damage is less than $100,000.00, then Seller may elect not to repair such damage or destruction, but instead may pay over to Purchaser at Closing all insurance proceeds which it has received in connection with such damage or destruction and/or assign to Purchaser at Closing all of Seller's rights, title and interest to any insurance proceeds not then received by Seller and pay to Purchaser the amount of any deductible involved with such damage or destruction and, in such event, Purchaser shall close hereunder with no reduction in the Purchaser Price. Purchaser shall exercise its election provided in this Section by giving Seller written notice of Purchaser's election within ten (10) days after receipt of the notice of damage or destruction. If Purchaser fails to timely elect to terminate as provided in this Section, Purchaser shall be deemed to have elected to close as provided in this Section. If Purchaser timely elects to terminate, then all other rights and obligations of the parties under this Agreement shall terminate.

B.    **Condemnation.** If, prior to Closing, the Property or any portion thereof which, in the judgment of Purchaser, would have a material adverse effect on the operation of the Property as an assisted living facility, is taken, or subject to being taken, under pending condemnation, eminent domain or similar governmental confiscatory proceedings, Purchaser, at its sole option, by notice to Seller within ten (10) days following the date on which Purchaser has actual knowledge of such occurrence, may elect to terminate this Agreement, in which event all other rights and obligations of the parties under this Agreement shall be terminated. If Purchaser elects not to terminate this Agreement, the transaction contemplated herein shall be closed in accordance with the terms hereof

and Seller shall pay to Purchaser the amount of any proceeds it has received pursuant to such condemnation or eminent domain and assign to Purchaser any rights to future proceeds related thereto.

7. **Deliveries at Closing**.

A. **By Seller**. At Closing, and subject to the terms, conditions and provisions hereof and the performance by Purchaser of its obligations as set forth herein, Seller shall deliver possession of the Property to Purchaser and shall deliver or cause to be delivered to Purchaser, at Seller's sole cost and expense, and in addition to the other documents provided for herein, each of the following items:

(i)     A limited warranty deed duly executed and acknowledged by Seller, and in form for recording, conveying fee simple title in the Land and Improvements to Purchaser, subject only to the Permitted Title Exceptions;

(ii)     All keys to all locks on the Property (to the extent that such are available and are not already in Purchaser's possession) and an accounting for keys in possession of others and all on-site books and records pertaining to the Property;

(iii)     An owner's affidavit reasonably acceptable to Purchaser's title insurance company sufficient to remove any exception to title for mechanics' and materialman's liens, broker's liens, or other liens (including without limitation water and sewer, if applicable) and parties in possession;

(iv)     Such documents as are required by StanCorp and the other mortgage holders to evidence the assumption thereof; and

(v)     a lease from Purchaser as landlord to Seller as tenant at no less than $15 per foot with a term of at least one (1) year longer than the loan maturity date of the first mortgage.

B. **By Purchaser**: At Closing, and subject to the terms, conditions and provisions hereof and the performance by Seller of its obligations as set forth herein, Purchaser shall deliver or cause to be delivered to Seller, at Purchaser's sole cost and expense, and in addition to the other documents provided for herein, each of the following items:

(i)     The balance of the Purchase Price or closing costs, if any.

(ii)     Such other documents including Assumption Agreement as may be required by this Agreement, all in form satisfactory to Purchaser, Seller and Title Company, if applicable.

(iii)     a lease from Purchaser as landlord to Seller as tenant at no less than $15 per foot with a term of at least one (1) year longer than the loan maturity date of the first mortgage.

(iv)    Such documents as are required by StanCorp and the other mortgage holders to evidence the assumption thereof.

**8.**    **Representations, Warranties and Covenants.**

**A.**    **Of Seller:** Seller represents, warrants and covenants to Purchaser that:

(i)    Seller (i) has complete and full authority to execute this Agreement and to convey to Purchaser title to the Property in accordance with Paragraph 5 of this Agreement and (ii) will execute and deliver such other documents, instruments, agreements, including but not limited to affidavits and certificates necessary to effectuate the transaction contemplated herein.

(ii)    Seller will not further sell, encumber, convey, assign or contract to sell, convey, assign, pledge, encumber or lease (except for resident leases for terms not to exceed twelve (12) months entered into in the ordinary course of business and at market rates) all or any part of the Property, nor restrict the use of all or any part of the Property at any time between the Effective Date and (i) Closing, or (ii) the earlier termination of this Agreement pursuant to its terms. Seller additionally hereby represents and warrants that no rights-of-first refusal or similar agreements exist in connection with the Property which would in any way interfere with Purchaser's ability to purchase the Property as provided herein.

(iii)    Seller is not a "foreign person" as that term is defined in the I.R.C., Section 1445 (F) (3), nor is the sale of the Property subject to any withholding requirements imposed by the Internal Revenue Code, including, but not limited to, Section 1445 thereof.

(iv)    To Seller's knowledge, (i) the Property has not in the past been used and is not presently being used for the handling, storage, manufacturing, refining, transportation or disposal of "toxic material", "hazardous substances" or "hazardous waste" other than small quantities ordinarily used in the operation and maintenance of an assisted living facility; and (ii) there are no buried, semi-buried or otherwise placed tanks, storage vessels, drums or containers of any kind located on the Property used for the storage of hazardous waste, hazardous substances or toxic material. The terms "hazardous waste", "hazardous substances" and toxic material" include, without limitation, any flammable explosives, radioactive materials, hazardous materials, hazardous wastes, hazardous or toxic substances or related materials defined in the Comprehensive Environmental Response Compensation, and Liability Acct of 1980, as amended (42 U.S.C. Sect. 960 et seq.), the Hazardous Materials Transportation Act, as amended (42 U.S.C. Sect. 1801 et seq.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. Sect 9601 et seq.), the regulations adopted and publications promulgated pursuant to the foregoing and any other federal, state or local environmental law, ordinance, rule or regulation. Furthermore, Seller has not received a summons, citation, directive, letter or other communication, written or oral, from any governmental authority as to any of the above environmental concerns.

(v)    That the representations and warranties contained in this Section 8 shall be true and correct as of the date hereof and as of the Closing Date and such representations and warranties and the covenants of Seller contained in this Section 8 shall survive Closing and continue in full force and effect for six (6) months following Closing notwithstanding such Closing and consummation of the sale and purchase contracted for herein. In order for Purchaser to make a claim against Seller for breach of any of the representations, warranties and covenants contained herein, Purchaser shall provide Seller with written notice of same prior to the expiration of said    six (6) month period. The obligation of Purchaser to close this transaction is expressly conditioned upon said representations and warranties being true and correct on the Closing Date in material respects; and, if requested by Purchaser, Seller shall recertify at Closing as to the continued validity of the representations, warranties and covenants set forth herein. A breach by Seller of any warranty or representation made by Seller in any material respect or a breach of any covenant made by Seller shall be deemed a default on the part of Seller.

Notwithstanding the provisions of this Paragraph 8 (A), it is expressly acknowledged and agreed that if Purchaser shall actually discover prior to Closing that any of the representations set forth in this Paragraph 8 (A) were untrue when made, or have become untrue prior to the Closing, then, if Purchaser shall proceed with the consummation of the purchase and sale of the Property pursuant to this Agreement, Purchaser shall be deemed to have waived any claim of breach that Purchaser may have against Seller with respect to any such representation set forth herein.

B.    **Of Purchaser**: Purchaser represents, warrants and covenants to Seller that:

(i)    Purchaser has obtained all requisite authorizations, has the capacity and full power to enter into and carry out this Agreement and the transactions contemplated hereby and will execute and deliver such other documents, instruments and agreements necessary to effectuate the transaction contemplated herein.

(ii)    There is no suit, action or arbitration, or legal, administrative or other proceeding or governmental investigation, formal or informal, pending or to Purchaser's knowledge threatened which materially and adversely affects Purchaser's ability to perform hereunder.

9.    **Notices**. All notices, requests, demands or other communications hereunder shall be in writing and deemed given when delivered personally or by recognized overnight courier delivery service such as Federal Express, when telefaxed or on the day said communication is deposited in the U.S. mail, by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

If to Seller:              Goff Group, Inc.
                           80 Technacenter Drive
                           Montgomery, AL 36117

S:\Client-Matters\5254\2016\AssumptionsalePSA version 2 wpd.wpd    7

**With a copy to:**

**If to Purchaser:**          John W. Goff
                              80 Technacenter Drive
                              Montgomery, AL 36117

**With a copy to:**           George W. Thomas
                              Kaufman & Rothfeder, P. C.
                              P. O. Box 4540
                              Montgomery, AL 36103

or to such other address as the parties may from time to time designate by notice in writing to the other parties.

    10.    **Amendment**. Neither this Agreement nor any provision hereof may be changed, amended, modified, waived or discharged orally or by any course of dealing, but only by an instrument in writing signed by the party against which enforcement of the change, amendment, modification, waiver or discharge is sought.

    11.    **Applicable Law**. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Alabama.

    12.    **Waiver**. Failure of either Purchaser or Seller to exercise any right given hereunder or to insist upon strict compliance with regard to any term, condition or covenant specified herein, shall not constitute a waiver of Purchaser's or Seller's right to exercise such right or to demand strict compliance with any term, condition or covenant under this Agreement.

    13.    **Counterparts**. This Agreement may be executed in several counterparts, each of which may be deemed an original, and all of such counterparts together shall constitute one and the same Agreement. This Agreement shall not be recorded and any party recording this Agreement or a memorandum thereof shall be in default hereunder.

    14.    **Captions**. All captions, headings, paragraph and subparagraph numbers and letters are solely for reference purposes and shall not be deemed to be supplementing, limiting, or otherwise varying the text of this Agreement.

    15.    **Severability**. The invalidity or enforceability of a particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

16.    **Entire Agreement**. This Agreement constitutes the sole and entire agreement of the parties and is binding upon Seller and Purchaser, their heirs, successors, legal representatives and assigns.

17.    **Assignment**. Purchaser may freely transfer and assign this Agreement. Purchaser shall notify Seller in writing in the event of such transfer and assignment. Seller shall not transfer or assign its interest hereunder without the prior written consent of Purchaser, which may be withheld by Purchaser in its sole discretion.

18.    **Indemnity**. Seller hereby agrees to indemnify and hold Purchaser harmless for and against any and all losses, damages, costs, expenses, liabilities, obligations and claims of any kind (including, without limitation, reasonable attorneys fees and other legal costs and expenses) which Purchaser may at any time suffer or incur, or become subject to, as a result of or in connection with:

(i)    any material breach or inaccuracy of any of the representations or warranties made by Seller in or pursuant to this Agreement or any material failure  by Seller to carry out, perform or satisfy any of its covenants, agreements or obligations under or pursuant to this Agreement; or

(ii)    the operation of the Property prior to the Closing Date.

19.    **Effective Date of Agreement**.  In the event this Agreement is not signed simultaneously by both parties, the "Effective Date" of this Agreement shall be the date upon which the last party accepts and executes the Agreement.

## [SIGNATURES ON NEXT PAGE]

## [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed by their duly authorized officers or representatives, under seal, as of the Effective Date set forth in the preceding paragraph.

Seller:

**GOFF GROUP, INC.,**
an Alabama corporation

By: _____
Its: _____

Date of Execution: Jan. _____, 2005

Purchaser:

By: _____
     JOHN W. GOFF

Date of Execution: Jan. _____, 2005

Exhibit "A"

Legal Description of the Property

[to be attached]

## Exhibit "B"

### Permitted Title Exceptions

1.    Taxes and assessments for the year 2005, and subsequent years.

2.    [Add any other permitted title exceptions here]

**2400 Today's LEGAL**

mortgage is recorded in the Office of the Judge of Probate of Montgomery County, Alabama, in Real Property 2142, page 232, the undersigned, Phoenix-Durango, LLC, who is the owner of said mortgage and the indebtedness secured thereby by assignment, will, under and by virtue of the power of sale contained therein, sell the real estate described in said mortgage, at public outcry, to the highest bidder for cash, on April 11, 2006, between the legal hours of sale, in front of the courthouse door of Montgomery County, Alabama, at Montgomery, Alabama, and will apply the proceeds of sale as directed in and by said mortgage; said real estate lying and being in Montgomery County, Alabama, and being described as follows, to-wit:

Lot 1-A, Block A, according to the Map of Technacenter Plat No. 2, as said Map appears of record in the Office of the Judge of Probate of Montgomery County, Alabama in Plat Book 41, at page 150.

This sale is made for the purpose of paying the indebtedness secured by said mortgage, as well as the expenses of foreclosure.

Dated: March, 2006

Phoenix-Durango, LLC
Mortgagee

Kay K. Bains, Esq.
Bradley Arant Rose
& White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama
35203
(205) 521-8220
Attorney for Mortgagee

Mont. Adv. 3/20, 3/27, 4/3/2006

666970, 666974

**2400 Today's LEGAL**

paying the indebtedness secured by said mortgage, as well as the expenses of foreclosure. Five Thousand Dollars and no/100 ($5,000.00) must be tendered in certified funds at the time and place of the sale by the purchaser as a non-refundable deposit. The balance of the purchase price must be paid in certified funds within 24 HOURS thereafter at the Law Office of Shapiro & Tucker, L.L.P. Shapiro & Tucker, L.L.P., reserves the right to award the bid to the next highest bidder, or to reschedule the sale, should the highest bidder fail to timely tender the total amount due.

Christiana Bank & Trust Company, as Trustee of the Sequoia Funding Trust, and its successors and assigns

Mortgagee or Transferee

SHAPIRO & TUCKER, L.L.P.
651 Beacon Parkway
West, Suite 115
Birmingham, Alabama
35209
(205) 323-7757/ 06-0063
Attorneys for Mortgagee or Transferee

Mont. Adv. 3/6, 3/13, 3/20/2006

664426

**NOTICE OF MORTGAGE FORECLOSURE SALE**

Default having been made in the payment of the indebtedness secured by that certain mortgage executed by Goff Group, Inc., to Community Bank & Trust on July 25, 2000, which

**EXHIBIT C**

MEMORY, DAY & AZAR
ATTORNEYS AT LAW

VON G. MEMORY
JAMES L. DAY
WILLIAM D. AZAR

469 SOUTH MCDOUNOUGH STREET
MONTGOMERY, ALABAMA 36104

TYSON-MANER HOUSE
THE NATIONAL REGISTER - 1888

TELEPHONE 334-834-8000
FACSIMILE 334-834-8001

MAILING ADDRESS
P.O. BOX 4054
MONTGOMERY, ALABAMA
36103-4054

March 20, 2006

Mr. John W. Goff
The Goff Group, Inc.
80 Technacenter Drive
Montgomery, AL 36117

Reference:    Community Bank & Trust Note and Mortgage
The Goff Group

Dear John:

Please be advised that the above-referenced note and mortgage have been
assigned to Phoenix-Durango, LLC.  All future payments should be made to
Phoenix-Durango, LLC and sent to the following address:

Phoenix-Durango, LLC.
c/o Kay K. Bains, Esq.
Bradley, Arant, Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104

Sincerely,

Memory, Day & Azar

By: _____
Von G. Memory


EXHIBIT

VGM/pkh

cc:    Kay K. Bains, Esq.
        Bradley, Arant, Rose & White, LLP
        One Federal Place
        1819 Fifth Avenue North
        Birmingham, AL 35203-2104



**Bradley Arant**

BRADLEY ARANT ROSE & WHITE LLP

ONE FEDERAL PLACE
1819 FIFTH AVENUE NORTH
BIRMINGHAM, AL 35203-2119
205.521.8000    FAX 205.521.8800
WWW.BRADLEYARANT.COM

**Kay K. Bains**

Direct Dial: 205.521.8220
Direct Fax: 205.488.6220
kbains@bradleyarant.com

April 6, 2006

**VIA FACSIMILE AND HAND DELIVERY**

Thomas T. Gallion, III, Esq.
Haskell Slaughter Young & Gallion, LLC
P. O. Box 4660
Montgomery, AL 36103-4660

RE:    Foreclosure of Property Secured by Mortgage dated July 25, 2000 (P0307-83699)

Dear Tommy:

Enclosed please find check number 1080 in the amount of $5,200, which your client delivered to our Montgomery office on April 3. Our client, Phoenix-Durango, LLC, has accelerated the debt, and will not accept partial payments.

To avoid foreclosure, your client must pay the amount of $464,758.11 (calculated as of today's date) prior to the scheduled foreclosure date. That amount is composed of the following:

| | |
|---|---|
| Unpaid Principal Balance: | $395,168.48 |
| Accrued Interest: | 5,250.40 |
| Late Charges: | 100.00 |
| Attorney's Fees: | $64,239.23 |

We intend to commence foreclosure notice on Thursday, April 13 with a foreclosure sale scheduled May 5, 2006. In the event your client elects to pay the loan in full, we will accept a wire, a certified check or a cashier's check. Please contact me prior to submitting payment for an updated pay-off.

Very truly yours,

Kay K. Bains

KKB/imj
Enclosure

cc: Phoenix-Durango LLC

1/1440606.1

**EXHIBIT**

E

BIRMINGHAM    CHARLOTTE    HUNTSVILLE    JACKSON    MONTGOMERY    WASHINGTON, DC

** TOTAL PAGE.02 **

AVS0350

ALABAMA JUDICIAL DATA CENTER
MONTGOMERY    COUNTY

SUMMONS

CV 2006 000834.0

---

IN THE CIRCUIT  COURT OF MONTGOMERY    COUNTY

GOFF GROUP INC ET AL VS PHOENIX-DURANGO LLC

SERVE ON: (D003)

SSN: 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

HENDERSON II JEREMIAH A
% KAY K BAINS ESQ
1819 FIFTH AVE NORTH
BIRMINGHAM    ,AL    35203-0000

PLAINTIFF'S ATTORNEY

GALLION THOMAS T III
HASKELL SLAUGHTER YOUNG
P. O. BOX 4660
MONTGOMERY    ,AL    36103-0000

---

TO THE ABOVE NAMED DEFENDANT:

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST
TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS, YOU OR YOUR ATTORNEY ARE
REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER
ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFFS
ATTORNEY(S) SHOWN ABOVE OR ATTACHED:

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS
AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGEMENT BY DEFAULT MAY BE
ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

---

( )  TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY EITHER RULES 4.1 (B)(2) OR
     4.2 (B)(2) OR 4.4 (B)(2) OF THE ALABAMA RULES OF CIVIL PROCEDURE:
     YOU ARE HEREBY COMMANDED TO SERVE THIS SUMMONS AND A COPY OF THE
     COMPLAINT IN THIS ACTION UPON DEFENDANT.

(✓)  THIS SERVICE BY CERTIFIED MAIL OF THIS SUMMONS IS INITIATED UPON THE
     WRITTEN REQUEST OF _____ PURSUANT TO RULE 4.1(C)
     OF THE ALABAMA RULES OF CIVIL PROCEDURE.

DATE: 04/26/2006

CLERK:MELISSA RITTENOUR
P O BOX 1667
MONTGOMERY  AL  36102-1667
(334)832-1266

---

RETURN ON SERVICE:

( )  CERTIFIED MAIL RETURN RECEIPT
     (RETURN RECEIPT HERETO ATTACHE

( )  I CERTIFY THAT I PERSONALLY DE

     COMPLAINT TO _____

     IN _____

_____
DATE

_____
SERVER ADDRESS

OPERATOR: MIA
PREPARED: 04/26/2006



U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To Jeremiah Henderson, 11
Street, Apt No. % Kay Bains Esq.
or PO Box No. 1819 5th Ave North
City, State, ZIP+4 Birmingham, AL 35203

AVS0350

ALABAMA JUDICIAL DATA CENTER
MONTGOMERY    COUNTY

SUMMONS

CV 2006 000834.0

---

IN THE CIRCUIT  COURT OF MONTGOMERY    COUNTY

GOFF GROUP INC ET AL VS PHOENIX-DURANGO LLC

SERVE ON:  (D001)

SSN: 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

PHOENIX-DURANGO LLC
% KAY K BAINS ESQ
1819 FIFTH AVE NORTH
BIRMINGHAM    ,AL   35203-0000

PLAINTIFF'S ATTORNEY

GALLION THOMAS T III
HASKELL SLAUGHTER YOUNG
P. O. BOX 4660
MONTGOMERY    ,AL  36103-0000

---

TO THE ABOVE NAMED DEFENDANT:

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST
TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE
REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER
ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFFS
ATTORNEY(S) SHOWN ABOVE OR ATTACHED:

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS
AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGEMENT BY DEFAULT MAY BE
ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

---

( )    TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY EITHER RULES 4.1(B)(2) OR
       4.2(B)(2) OR 4.4(B)(2) OF THE ALABAMA RULES OF CIVIL PROCEDURE,
       YOU ARE HEREBY COMMANDED TO SERVE THIS SUMMONS AND A COPY OF THE
       COMPLAINT IN THIS ACTION UPON DEFENDANT.

(✓)   THIS SERVICE BY CERTIFIED MAIL OF THIS SUMMONS IS INITIATED UPON THE
       WRITTEN REQUEST OF _____ PURSUANT TO RULE 4.1(C)
       OF THE ALABAMA RULES OF CIVIL PROCEDURE.

DATE: 04/26/2006

CLERK:MELISSA RITTENOUR MA
P O BOX 1667
MONTGOMERY  AL  36102-1667
(334)832-1266

---

RETURN ON SERVICE:

( )   CERTIFIED MAIL RETURN RECEIPT IN
      (RETURN RECEIPT HERETO ATTACHED)

( )   I CERTIFY THAT I PERSONALLY DELIV

      COMPLAINT TO _____

      IN _____ COUN

_____
DATE

_____
SERVER ADDRESS

OPERATOR: MIA
PREPARED: 04/26/2006

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7004 1160 5806 1400

Sent To Phoenix Durango
Street, Apt. No. Kay Bains Esg.
or PO Box No. PAR-W
City, State, ZIP+4 Birmingham Al 35203

PS Form 3800, June 2002                See Reverse for Instructions

AVSO350

ALABAMA JUDICIAL DATA CENTER
MONTGOMERY    COUNTY

SUMMONS

CV 2006 000834.0

IN THE CIRCUIT  COURT OF MONTGOMERY    COUNTY

GOFF GROUP INC ET AL VS PHOENIX-DURANGO LLC

SERVE ON: (D002)

SSN: 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

HENDERSON III JEREMIAH A
% KAY K BAINS ESQ
1819 FIFTH AVE NORTH
BIRMINGHAM    ,AL  35203-0000

PLAINTIFF'S ATTORNEY

GALLION THOMAS T III
HASKELL SLAUGHTER YOUNG
P. O. BOX 4660
MONTGOMERY    ,AL  36103-0000

TO THE ABOVE NAMED DEFENDANT:

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST
TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE
REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER
ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFFS
ATTORNEY(S) SHOWN ABOVE OR ATTACHED:

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS
AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGEMENT BY DEFAULT MAY BE
ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

( )  TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY EITHER RULES 4.1 (B)(2) OR
     4.2 (B)(2) OR 4.4 (B)(2) OF THE ALABAMA RULES OF CIVIL PROCEDURE,
     YOU ARE HEREBY COMMANDED TO SERVE THIS SUMMONS AND A COPY OF THE
     COMPLAINT IN THIS ACTION UPON DEFENDANT.

(✓)  THIS SERVICE BY CERTIFIED MAIL OF THIS SUMMONS IS INITIATED UPON THE
     WRITTEN REQUEST OF —————————————— PURSUANT TO RULE 4.1(C)
     OF THE ALABAMA RULES OF CIVIL PROCEDURE.

DATE: 04/26/2006

CLERK:MELISSA RITTENBUR
P O BOX 1667
MONTGOMERY  AL  36102-1667
(334)832-1266

RETURN ON SERVICE:

( )  CERTIFIED MAIL RETURN RECEIPT I
     (RETURN RECEIPT HERETO ATTACHED)

( )  I CERTIFY THAT I PERSONALLY DEL

COMPLAINT TO _____

IN _____

DATE

SERVER ADDRESS

OPERATOR: MIA
PREPARED: 04/26/2006

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com

OFFICIAL USE

Postage  $
Certified Fee
Return Receipt Fee (Endorsement Required)
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees  $

Postmark Here

Jeremiah A. Henderson III
% Kay Bains Esq.
1819 5th Ave N
Birmingham Al 35203

PS Form 3800, June 2002