IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA

JOHN W. GOFF,     )
            )
  Plaintiff,     )
            )
vs          )  Case No.  CV-06-834
            )
PHOENIX-DURANGO, LLC, a limited )
liability company; JEREMIAH A.  )
HENDERSON, II, an individual;  )  **JURY TRIAL DEMAND**
JEREMIAH A. HENDERSON, III,  )
an individual; No. 1, whether singular )
or plural, that entity or person or those )
entities or persons whose breaches of duty )
proximately caused the Plaintiff's  )
damages pursuant to said breaches; No. 2,)
whether singular or plural, that entity or )
person or those entities or persons whose )
statements or suppressions of material )
fact or other conduct proximately  )
caused the plaintiff damages in or arising )
from the occurrences made the basis of )
Plaintiff's complaint; No.3, whether )
singular or plural, that entity or  )
person or those entities or persons who )
were unjustly enriched by reason of the )
wrongdoing or occurrences made the )
basis of Plaintiff's complaint; No. 4, )
whether singular or plural, that person )
or entity or those persons or entities, )
other than those entities described above, )
which is or are the predecessor(s) or )
successor(s) in interest of any of the )
defendants named herein or any other )
persons or entities described above; )
No. 5, whether singular or plural, )
that entity or person or those entities )
or persons who were controlling  )
persons of the Defendants named  )
herein or any other persons or entities )
described above; No. 6, whether singular )
or plural, that entity or person or those )
entities or persons who were  )
co-conspirators of, or joint actors with, )

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2006 APR 25  AM 11:03

or who materially participated with or )
aided and abetted, the Defendants )
named herein or any other persons or )
entities described above in the )
wrongdoing or occurrences made the )
basis of Plaintiff's complaint. Plaintiff )
aver that the identities of the )
fictitious party Defendants herein is )
otherwise unknown to the Plaintiff )
at this time, or if their names are known )
to the Plaintiff their identities as )
proper party Defendants are not known )
to the Plaintiff at this time and their true )
names will be substituted by amendment )
when ascertained. )
                                                )
        **Defendants.**                          )

## FIRST AMENDED COMPLAINT
## AND REQUEST FOR RESTRAINING ORDER

COMES NOW the Plaintiff John W. Goff (hereinafter referred to as **"Goff"**), and

brings the following First Amended Complaint against Defendants Phoenix-Durango,

LLC, Jeremiah A. Henderson, II, Jeremiah A. Henderson, III and other fictitious

Defendants.[1]  In support thereof, the Plaintiff offers the following:

**A.    Parties**

1.      Plaintiff John W. Goff ("Goff") is a natural resident over the age of

nineteen (19) years of age who maintains a residence in Montgomery County, Alabama.

The Plaintiff owns property located at 80 TechnaCenter Drive, Montgomery, Alabama

(hereinafter referred to as "Subject Property").

2.      **Phoenix-Durango, LLC** ("Phoenix") is a Delaware limited liability

company doing business in Montgomery, Alabama.  Phoenix purports to hold a second

---

[1] The Complaint is amended to reflect the deletion of Goff Group, Inc. as a party Plaintiff, the addition of
Defendants Jeremiah A. Henderson, II and Jeremiah A. Henderson, III and the inclusion of certain newly
learned facts.

2

mortgage on the Subject Property. At all relevant times hereto, by reason of financial ties, financial services, business relationships, business dealings, communications, willing joinder in a common enterprise, scheme, plan and/or combine with the other Defendants, whether named or unnamed, its officers, its affiliates, its members and its employees was a co-conspirator with the other named Defendants, their agents, representatives, and those unknown parties who were also material participants, under the common law of Alabama. At all times relevant hereto, by reason of business and financial services rendered, contracts, meetings, communications, business and financial ties and relationships, and willing joinder in a common enterprise, scheme, plan and/or combine, Phoenix acted jointly in concert with, and in a concert of action with, the other Defendants, named or unknown, their officers, affiliates, representatives and agents. Without limiting the scope of the foregoing, at all times relevant to this First Amended Complaint, Phoenix connection with the transaction, events and dealings herein alleged, and the alleged violations and tortious conduct set forth herein, the persons and entities:

(a)     Acted in concert with the other Defendants;

(b)     Knew that the conduct of the other Defendants described herein (including omissions to act in the face of the situation then obtaining) constituted a breach of duty to the Plaintiff and gave substantial assistance or encouragement to each such Defendant to so conduct himself or itself;

(c)     Gave substantial assistance to each such other Defendant in accomplishing the tortious or wrongful conduct and such Defendant's own conduct, separately considered, constituted a breach of duties the Defendants owed to the Plaintiff as set forth herein;

3

(d)     Induced the wrongful or tortious conduct, and such Defendant knew or should have known of the circumstances, that would make the conduct tortious if it were such Defendant's own conduct;

(e)     Conducted its activities with the aid of other Defendants, who were likely to do harm if not supervised and/or controlled, and failed to exercise care in the control; and/or

(f)     Had a duty to provide protection for, or to have care used for the protection of the Plaintiff and confided the performance of such duty to other Defendants, and such Defendant caused, or failed to avert, the tortious or wrongful conduct as set forth herein by failing to perform such duty.

3.     **Defendant Jeremiah A. Henderson, II ("Henderson, II")**, is believed to be an adult resident of Troy, Alabama. He owns property and does business in Troy, Alabama. He is a member and owner of Phoenix. At all relevant times hereto, by reason of financial ties, personal ties, financial services, business relationships, business dealings, communications, willing joinder in a common enterprise, scheme, plan and/or combine with the other Defendants, whether named or unnamed, its officers, its affiliates, its members and its employees was a co-conspirator with the other named Defendants, their agents, representatives, and those unknown parties who were also material participants, under the common law of Alabama. At all times relevant hereto, by reason of business and financial services rendered, contracts, meetings, communications, business and financial ties and relationships, and willing joinder in a common enterprise, scheme, plan and/or combine, Phoenix acted jointly in concert with, and in a concert of

action with, the other Defendants, named or unknown, their officers, affiliates, representatives and agents. Without limiting the scope of the foregoing, at all times relevant to this First Amended Complaint, Phoenix connection with the transaction, events and dealings herein alleged, and the alleged violations and tortious conduct set forth herein, the persons and entities:

(a)    Acted in concert with the other Defendants;

(b)    Knew that the conduct of the other Defendants described herein (including omissions to act in the face of the situation then obtaining) constituted a breach of duty to the Plaintiff and gave substantial assistance or encouragement to each such Defendant to so conduct himself or itself;

(c)    Gave substantial assistance to each such other Defendant in accomplishing the tortious or wrongful conduct and such Defendant's own conduct, separately considered, constituted a breach of duties the Defendants owed to the Plaintiff as set forth herein;

(d)    Induced the wrongful or tortious conduct, and such Defendant knew or should have known of the circumstances, that would make the conduct tortious if it were such Defendant's own conduct;

(e)    Conducted its activities with the aid of other Defendants, who were likely to do harm if not supervised and/or controlled, and failed to exercise care in the control; and/or

(f)    Had a duty to provide protection for, or to have care used for the protection of the Plaintiff and confided the performance of such duty to other Defendants, and such Defendant caused, or failed to avert, the

tortious or wrongful conduct as set forth herein by failing to perform such duty.

4.    **Jeremiah A. Henderson, III** ("Henderson III") is believed to be an adult resident of Troy, Alabama. He owns property and does business in Troy, Alabama. He is a member and owner of Phoenix. At all relevant times hereto, by reason of personal ties, financial ties, financial services, business relationships, business dealings, communications, willing joinder in a common enterprise, scheme, plan and/or combine with the other Defendants, whether named or unnamed, its officers, its affiliates, its members and its employees was a co-conspirator with the other named Defendants, their agents, representatives, and those unknown parties who were also material participants, under the common law of Alabama. At all times relevant hereto, by reason of business and financial services rendered, contracts, meetings, communications, business and financial ties and relationships, and willing joinder in a common enterprise, scheme, plan and/or combine, Phoenix acted jointly in concert with, and in a concert of action with, the other Defendants, named or unknown, their officers, affiliates, representatives and agents. Without limiting the scope of the foregoing, at all times relevant to this First Amended Complaint, Phoenix connection with the transaction, events and dealings herein alleged, and the alleged violations and tortious conduct set forth herein, the persons and entities:

(a)    Acted in concert with the other Defendants;

(b)    Knew that the conduct of the other Defendants described herein (including omissions to act in the face of the situation then obtaining) constituted a breach of duty to the Plaintiff and gave substantial assistance or encouragement to each such Defendant to so conduct himself or itself;

(c)     Gave substantial assistance to each such other Defendant in accomplishing the tortious or wrongful conduct and such Defendant's own conduct, separately considered, constituted a breach of duties the Defendants owed to the Plaintiff as set forth herein;

(d)     Induced the wrongful or tortious conduct, and such Defendant knew or should have known of the circumstances, that would make the conduct tortious if it were such Defendant's own conduct;

(e)     Conducted its activities with the aid of other Defendants, who were likely to do harm if not supervised and/or controlled, and failed to exercise care in the control; and/or

(f)     Had a duty to provide protection for, or to have care used for the protection of the Plaintiff and confided the performance of such duty to other Defendants, and such Defendant caused, or failed to avert, the tortious or wrongful conduct as set forth herein by failing to perform such duty.

5.     The Plaintiff avers that the identities of the fictitious defendants identified in the caption of this First Amended Complaint are unknown to Plaintiff at this time, and their true names will be substituted by amendment when their identities are ascertained.

**B.     Jurisdiction and Venue**

6.     This Court has jurisdiction over the subject matter of this action pursuant to Alabama common law. Without limiting the generality of the foregoing, this Court has jurisdiction over these Defendants whose actions were directed at and into this State and County. Further, the subject property is located within Montgomery County, Alabama.

7.      Venue is proper in this County pursuant to Alabama Code § 6-3-7(a). Venue is further proper because the fraudulent omissions or suppressions were disseminated by Defendants or their controlled persons or their co-conspirators to Plaintiff in this County, where the Plaintiff received them; the corporate defendants all do business in this County and have done business in this County during the relevant time; and the Plaintiff's damages occurred in this County.  Many of the acts comprising the violations of law complained of herein, including the dissemination of documents, reports, and fraudulent correspondence, occurred in this County.  Therefore, under the "co-conspirator" theory of venue and service of process provisions, this Court has proper venue and personal jurisdiction over all the Defendants by reason of the conduct of the named Defendants.

## C.    Factual Background

8.      Plaintiff Goff was formerly married to Anne Henderson Goff ("Anne"). Prior to her marriage with Goff, Anne was married to Henderson II of Troy, Alabama. During that marriage, Anne and Henderson II had two sons, Reynolds and Henderson III. Goff and Anne were married over 16 years. During that time, Goff provided for Anne's children by a prior marriage as if they were his own sons.

9.      Anne, in or around summer of 2005, asked for a divorce from Goff, when his business started to fail and she knew she could not have the same lifestyle as she was accustomed to living. Thereafter, she began divorce proceedings and eventually reached a marital settlement of all assets and other divorce related issues. (See Divorce Decree, attached hereto as Exhibit "A").  During this difficult time, Henderson III physically threatened to cause harm to Goff. Because of large debts and judgments on the subject

8

property, Anne was unable to get any monies related to the Subject Property; however, Anne did receive the only liquid asset in the marriage (equity in a beach house in Watercolor, Florida) Goff retained the land and office building that is subject of this lawsuit. (See Exhibit B.)

10.    As a means to cause harm to Goff, Henderson II and Henderson III formed the limited liability company, Phoenix. After forming Phoenix, based on information and belief, in order to assist Anne to circumvent the divorce decree and to benefit them financially, they entered into a fraudulent and conspiratorial scheme, to wrongfully deprive Goff of his property.  The Defendants, by and through Phoenix, purchased the second mortgage on said building from Community Bank. Again, as furtherance of their scheme to bring harm to the Plaintiff, and after purchasing the second mortgage, Phoenix immediately ran a notice of foreclosure in the morning of March 20, 2006 in *The Montgomery Advertiser* that the subject property would be foreclosed. Said notice would had to be delivered to *The Montgomery Advertiser* on or before March 17, 2006 in order for it to be published in Monday mornings edition.  (See Exhibit C.)  Said notice had already been published two days prior to the letter from Community Bank's counsel informing Goff that its mortgage had been sold and/or transferred. (See Exhibit D.)  No notice was ever given to Plaintiff of said foreclosure. Goff not only did not have notice of the foreclosure but also did not receive notice from the second mortgage holder, Community Bank, that the mortgage had been sold and/or transferred to Phoenix until the morning of March 21, 2006.  Goff had a long term arrangement with Community Bank as to late payments and had been operating under the arrangement for a long period of time. Goff has paid off multiple loans obtained from Community Bank over a number of years

9

and the loans total in excess of one million dollars. The original foreclosure was improper because it named the wrong legal owner of said property and there was an absence of proper notification of the foreclosure proceedings.

11.    On the 24th day of March 2006, the Plaintiff received a temporary restraining order against Defendant Phoenix and the Plaintiff had to post a $5,000 cash bond, which represents one month rent. A final hearing on the matter was set by this Honorable Court on Monday, April 3, 2006. The Defendants, by and through their attorneys, acknowledged that the initial foreclosure was not properly done and agreed to withdraw the foreclosure proceedings and begin anew after written notice of ten (10) days was provided to Goff Group. Again, Goff Group is not the owner of the Subject Property and the latest foreclosure is again improper in that the property is owned by Goff individually not Goff Group.

12.    After obtaining a temporary restraining order and by said agreement acknowledging the above stated error, the Defendants then refused to accept any payment by Goff that would have made the loan current. Goff instructed the Montgomery County Clerk to release the cash bond of $5,000 to Defendant Phoenix and sent another check for $5,200 to make all payments current according to Goff's records. Phoenix, by and through its attorneys, refused to accept said check in which notice of payment was sent before the new notice was sent to Goff. (See Exhibit E.) Goff then inter pled the above stated amount into the Court. Also, the Defendants have demanded from Goff that he pay over $64,000 in legal fees to Bradley Arant Rose & White, attorneys for Defendants. This is an unconscionable amount of legal fees, given the fact that were not earned, that

10

the matter was handled improperly to the detriment of Goff as described herein, and that these fees further represent and the fees is part of the Defendants' fraudulent scheme.

13.    The fraudulent scheme of the Defendants, as described above and as intended, has caused enormous harm to the Plaintiff, both financial and emotional. Goff has a lease on the building that has been placed in jeopardy; has lost a potential sale; has to been forced to take the adjoining lot off the market with Aronov Realty that has now been jeopardized; and has had the financial reorganization of business collapse because of the fraudulent announcement of a foreclosure. He has been caused financial harm and damage to his reputation. More importantly, Goff has suffered an incredible amount of emotional distress by the fact his former stepson (Henderson III), whom he loved and treated as his own son, is trying to ruin Goff both personally and professionally.

14.    In addition, one of the attorneys for Defendants, Kay Bains, took it upon herself to call Goff's accountant, Art Leadingham, and inform him that he better hire an attorney to foreclose on his mortgage.   (Leadingham's mortgage is behind Phoenix's second mortgage.)   Leadingham has been Goff's accountant for more than twenty (20) years.  This is only one example of the tortious behavior of the Defendants in their outrageous attempt to collapse Goff financially through fraud and deceit.

15.    Goff does hereby request this Court enjoin the Defendants from moving forward with the above stated foreclosure in order to mitigate any further damages that have been inflicted upon him.

**E.    Causes of Action**

   **a.    Count One – Preliminary Injunctive Relief**

11

15.    According to the Alabama Supreme Court, a mortgagee cannot foreclose against a mortgagor for any reason other than to secure debt owed on the mortgage:

> A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor. *Johnson v. Shirley,* 539 So.2d 165, 168 (Ala.1989); *Paint Rock Properties v. Shewmake,* 393 So.2d 982, 984 (Ala.1981).

*Reeves Cedarhurst Development Corp. v. First American,* 607 So.2d 180, 182 (Ala.,1992). Any other reason for foreclosure is viewed as fraudulent:

> … the mortgagee cannot use the power of sale for purposes other than to secure the debt owed by the mortgagor. Any improper use of the power for such purposes as oppressing the debtor, or serving the purposes of other individuals, will be considered by the court as a fraud in the exercise of the power. See, *Shewmake, supra,* at 983-84, quoting *Abel v. Fricks,* 219 Ala. 619, 123 So. 17 (1929).

*Johnson v. Shirley,* 539 So.2d 165, 168 (Ala. 1988). In *Johnson,* the court held that summary judgment was precluded for the mortgagee on a wrongful foreclosure cause of action where the mortgagee used the excess funds from one foreclosure sale to pay off the indebtedness from another mortgage:

> The law in Alabama is clear that a mortgage for a specific debt cannot be used to secure any subsequent advances in the absence of an express provision securing future indebtedness. *First State Bank of Franklin County v. Ford,* 484 So.2d 407, 408 (Ala.1986); *Cooper v. Elba Exchange Bank,* 496 So.2d 41, 43 (Ala.1986). Moreover, "[w]hen property is sold at a foreclosure sale, conducted under the power of sale contained in a mortgage, at an amount greater than the indebtedness secured by the mortgage, the mortgagee is liable to the mortgagor for the surplus." *Davis v. Huntsville Production Credit Ass'n,* 481 So.2d 1103, 1106 (Ala.1985).

*Id.*

16.    Defendant Phoenix is attempting to wrongfully foreclose against the Plaintiff as furtherance of the fraudulent scheme set forth herein.

17.    Further, even if Phoenix had complied with the terms of the mortgage agreement, the Alabama Supreme Court has held that the wrongful conduct of a mortgagee can alter the terms of the mortgage agreement and the mere inclusion of a nonwaiver of acceleration clause in the mortgage does not automatically preclude equitable estoppel of a foreclosure sale:

> On the one hand, the inclusion in the security instrument of a nonwaiver of the acceleration clause does not, of itself and under all circumstances, preclude, as a matter of law, the operative effect of the equitable principles inherent in the doctrine of estoppel. By virtue of its very definition, equitable estoppel may be invoked to vary the express terms of a contract where, because of certain subsequent conduct of the parties, enforcement of its literal provisions would work an injustice. Bank of Huntsville v. Witcher, 336 So.2d 1384 (Ala.Civ.App.1976). On the other hand, the mere making of late payments by the debtor and their acceptance by the creditor does not alter, as a matter of law, the express terms of either the acceleration or the nonwaiver of acceleration clauses of the security agreement. Putman Realty & Auction, Inc. v. Bailes, 371 So.2d 658 (Ala.1979).

Id at 9.

18.    By virtue of the foregoing, Plaintiff has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of a temporary restraining order against Defendant Phoenix.

19.    The Plaintiff by the virtue of the Defendants above described acts and the publication of same has been financially harmed and continues to be harmed on a daily basis.

13

20.    Unless the Defendant is temporarily and preliminarily enjoined from the foregoing conduct, Plaintiff will be irreparably harmed by economic loss, loss of confidence and trust of clients and business associates, loss of goodwill, and loss of business reputation.

21.    The foreclosure sale is set for May 5, 2006.  The Plaintiff seeks to have the foreclosure sale stopped until a full evidentiary hearing can be conducted.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiff respectfully requests that this Honorable Court issue a temporary restraining order, providing for the following relief for a period of ten (10) days and further requests a hearing be set for a Preliminary Injunction prior to the expiration of said ten (10) days and/or any other relief to which the Plaintiff may be entitled.

**b.    Count Two – Fraud**

22.    The preceding paragraphs of this Complaint, and any additional factual averments set forth in any subsequent sections of this Complaint, are deemed to be repeated and incorporated by referenced in this Count.  This Count involves the same transactions and conduct as is involved and alleged in the preceding paragraphs.

23.    Defendants omitted material facts willfully to deceive or recklessly without knowledge and acted upon by Plaintiff, or by mistake and innocently and acted upon by Plaintiff, and committed fraud upon Plaintiff, within the meaning of Alabama Code 6-5-100 though 6-5-104, et seq.

24.    The Defendants were each under an obligation and affirmative duty under the special circumstances of this case, and under statutory requirements of the Alabama Act and other laws, which governed their conduct, respectively, to communicate all

14

material facts to Plaintiff. The Defendants suppressed, concealed and omitted to disclose material facts, which, under the special circumstances of this case and under statutorily imposed disclosure obligations, the Defendants were under a duty to communicate truthfully and fully to Plaintiff, which constitutes fraud.

25.    Defendants have knowingly, willfully and/or recklessly deceived the Plaintiff through such secretive, misleading and emissive activity. The Defendants knew, or recklessly disregarded, or were reckless in not knowing, of the misrepresentations of material fact and the omissions of material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, that occurred in their communications with Plaintiff, and the Defendants acted knowing of, or recklessly disregarding the severe risk of, loss to the Plaintiff that would be proximately caused by Defendants' acts and omissions described herein.

26.    The Defendants, who were in possession of the material undisclosed facts and willfully or knowingly or recklessly concealed them, engaged in the aforesaid emissive, and therefore deceptive and manipulative and fraudulent, acts, practices and courses of business with the intent to take advantage of the position of inferior knowledge and ignorance of the true facts on the part of the Plaintiffs, and in order to take advantage of the Plaintiff's trust and confidence in the Defendants, and with the intent to defraud the Plaintiff, and with a profit seeking motive on the Defendants' part.

27.    Plaintiff did not know until less than two days before this suit was filed, about the material misrepresentations and undisclosed facts described in this Complaint, because no such disclosure was anywhere ever made, and thus the Plaintiff justifiably and reasonably relied on such representations and on Plaintiff's absence of knowledge of such

undisclosed facts.

28.    Plaintiff has incurred damages in the approximate amount, as of the present date (and not including prejudgment interest which continues to accrue) which was proximately caused by Defendants' misconduct and breaches of duty described herein. Such malicious, intentional, reckless, wanton and/or outrageous conduct that an award of exemplary damages is necessary and appropriate to punish the Defendants for such conduct and to make an example of them and to deter repetitions of such conduct attended the conduct of the Defendants. Accordingly, Plaintiff is entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiff seeks compensatory damages in the amount of Five Million Dollars ($5,000,000) and punitive damages in the amount of Fifteen Million Dollars ($15,000,000) attorneys' fees and any other relief to which he may be entitled.

**c.    Count Three – Tort of Outrage**

29.    The preceding paragraphs of this Complaint, and any additional factual averments set forth in any subsequent sections of this Complaint, are deemed to be repeated and incorporated by referenced in this Count. This Count involves the same transactions and conduct as is involved and alleged in the preceding paragraphs.

30.    As indicated in the above stated factual background, the Defendants engaged in the herein detailed fraudulent and outrageous conduct with the intent to cause the Plaintiff to suffer severe financial harm. The activities of the Defendants were so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and are atrocious and utterly intolerable in a civilized society.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiff seeks compensatory damages in the amount of Five Million Dollars ($5,000,000) and punitive damages of Fifteen Million Dollars ($15,000,000) attorneys' fees and any other relief to which he may be entitled.

**d.    Count Four – Negligence**

31.    Plaintiff reasserts all preceding paragraphs of this Complaint as if fully set forth herein.

32.    The Defendants negligently handled the acceleration of the loan process and instituted foreclosure proceedings without providing the requisite notice. The negligent handling of this process has caused the Plaintiff to suffer damage to his reputation, financial harm and mental anguish.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiff seeks compensatory damages in the amount of Five Million Dollars ($5,000,000) and punitive damages in an amount of Fifteen Million Dollars ($15,000,000) attorneys' fees and any other relief to which he may be entitled.

**e.    Count Five – Conspiracy**

33.    Plaintiff reasserts all preceding paragraphs of this Complaint as if fully set forth herein.

34.    Defendants Jere and Jeremy Henderson and Phoenix, along with the other fictitious defendants, whose names are unknown at this time, conspired among themselves to do the acts hereinbefore described. The Defendants are liable for the damage done to the Plaintiff because of their actions committed as described herein.

35.    Plaintiff has incurred damages in the approximate amount, as of the

present date (and not including prejudgment interest which continues to accrue) which was proximately caused by Defendants' misconduct and breaches of duty described herein. Such malicious, intentional, reckless, wanton and/or outrageous conduct that an award of exemplary damages is necessary and appropriate to punish the Defendants for such conduct and to make an example of them and to deter repetitions of such conduct attended the conduct of the Defendants. Accordingly, Plaintiff is entitled to punitive damages. Plaintiff Goff has suffered tremendous amount of emotional distress as a result of the fraud committed by the Defendants.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, the Plaintiff seeks compensatory damages in the amount of Five Million Dollars ($5,000,000) and punitive damages in an amount of Fifteen Million Dollars ($15,000,000) attorneys' fees and any other relief to which he may be entitled.

**f.    Count Six-- Tortious Interference with Business Relations**

36.    Plaintiff reasserts all preceding paragraphs of this First Amended Complaint as if fully set forth herein.

37.    Plaintiff avers that the intentional conduct described more fully herein has caused interference with the Plaintiff's business relations.

38.    The Defendants conduct has caused the Plaintiff to suffer financial and emotional harm, as well as damage to his reputation.

**WHEREFORE**, the above premises considered, the Plaintiff moves for a finding by a jury for compensation damages in the amount of Five Million Dollars ($5,000,000) and punitive damages in the amount of Fifteen Million Dollars ($15,000,000) and for any other relief he may be entitled under these circumstances.

g.    **Count Seven – Slander of Title**

39.    Plaintiff reasserts all preceding paragraphs of this First Amended Complaint as if fully set forth herein.

40.    Plaintiff avers that by the actions as stated above, the Defendants have wrongfully slandered the title Goff has in this property which has resulted in substantial damage to Goff's ownership and peaceful occupancy of said property.

41.    The Defendants conduct has caused the Plaintiff to suffer financial and emotional harm, as well as damage to his reputation.

WHEREFORE, the above premises considered, the Plaintiff moves for a finding by a jury for compensation damages in the amount of Five Million Dollars ($5,000,000) and punitive damages in the amount of Fifteen Million Dollars ($15,000,000) and for any other relief he may be entitled under these circumstances.

Respectfully submitted,


Thomas T. Gallion, III      (GAL010)

OF COUNSEL:
Haskell Slaughter Young & Gallion, LLC
305 South Lawrence Street
P.O. Box 4660
Montgomery, Alabama 36103-4660
(334) 265-8573    Telephone
(334) 264-7945    Facsimile

**PLAINTIFFS REQUEST TRIAL BY JURY**


OF COUNSEL

19

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL**

Phoenix-Durango, LLC
c/o Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

Jeremiah A. Henderson, II
c/o Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

Jeremiah A. Henderson, III
c/o Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon the following listed persons by facsimile to the numbers listed below and by placing a copy of the same in the United States mail, postage prepaid and property addressed, on this the 21ˢᵗ day of April 2006.

Kay K. Bains, Esq.
Bradley Arant Rose & White, LLP
Attorney for Defendant Phoenix-Durango, LLC
1819 Fifth Avenue North
Birmingham, Alabama 35203



OF COUNSEL

26934-008
#19,991

21

# VERIFICATION

STATE OF ALABAMA
MONTGOMERY COUNTY

     I, the undersigned, John W. Goff, being first duly sworn, depose and say:

     I am a resident citizen of Montgomery County, in the State of Alabama.  I am a

Plaintiff named as such in the foregoing First Amended Complaint.  I have read over the

First Amended Complaint and the facts stated therein on my personal knowledge are true

and correct and the remaining facts therein are alleged on information and belief, with the

assistance of my counsel who at my request has conducted an investigation, and are true

and correct according to the best of my information, knowledge and belief.

John W. Goff

Sworn to and subscribed before me
on this 20th day of April 2006.

Notary Public
My commission expires  9-11-06