## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

JOHN W. GOFF and GOFF GROUP,
INC.

         **Plaintiffs,**

v.

PHOENIX-DURANGO, LLC, et al.,

         **Defendants.**

**CIVIL ACTION NO.
CV - 2006-00389-SRW**

## ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES OF DEFENDANTS PHOENIX-DURANGO, LLC, JEREMIAH A. HENDERSON II, AND JEREMIAH A. HENDERSON III

COMES NOW Phoenix-Durango, LLC, Jeremiah A. Henderson II, and Jeremiah A. Henderson III, defendants in the above-styled action, and for their answer to the First Amended Complaint and Request for Restraining Order, say as follows:

### FIRST DEFENSE

The First Amended Complaint and Request for Restraining Order ("First Amended Complaint"), and each and every count thereunder, fails to state a claim upon which relief can be granted as to these defendants.

### SECOND DEFENSE

In response to the factual allegations of the plaintiffs' First Amended Complaint[1], these defendants say as follows, their responses corresponding to the numbered paragraphs of the plaintiff's First Amended Complaint:

---

[1] Footnote 1 to the First Amended Complaint states that the amendment reflects "the deletion of Goff Group, Inc. as a party Plaintiff . . . ." Goff Group, Inc., however, is still a plaintiff in this case. It has not filed a Notice of Dismissal pursuant to Rule 41 of the Alabama or Federal Rules of Civil Procedure. Moreover, Goff Group, Inc. is the mortgagor of the Subject Property and the maker of the note secured by the mortgage.

**EXHIBIT  A**

1.     Defendants admit that that Plaintiff John W. Goff ("Goff") maintains a residence in, and is a resident of, Montgomery County, Alabama, and is over the age of 19. Otherwise, these defendants are without knowledge or information sufficient to form a belief as to the truthfulness of these allegations, and therefore deny them.

2.     Defendants admit that Phoenix-Durango, LLC ("Phoenix-Durango"), is organized as a limited liability company under the laws of Delaware and that it holds a second mortgage on the Subject Property pursuant to a valid assignment of said mortgage by Community Bank & Trust. Except to the extent specifically admitted herein, Defendants deny the remaining material allegations of this paragraph.

3.     Defendants admit that Jeremiah A. Henderson II ("Henderson II") is a member of Phoenix-Durango. Defendants admit that Henderson II owns land in Troy, Alabama, but Defendants deny that Henderson II is a resident of Troy, Alabama. Henderson II is an adult resident of Houston, Texas. Except to the extent specifically admitted herein, Defendants deny the remaining material allegations of this paragraph.

4.     Defendants admit that Jeremiah A. Henderson III ("Henderson III") is a member of Phoenix-Durango. Defendants admit that Henderson III owns land in Troy, Alabama, but Defendants deny that Henderson III is a resident of Troy, Alabama. Henderson III is an adult resident of Rosemary Beach, Florida. Except to the extent specifically admitted herein, Defendants deny the remaining material allegations of this paragraph.

5.     This paragraph simply contains the plaintiffs' designation of fictitious party defendants and requires no response from these defendants. Plaintiffs' allegations in the remainder of the complaint as to fictitious defendants further do not require a response from these defendants, and therefore none is made. To the extent any such allegation against a

2

fictitious defendant requires a response from these defendants, these defendants are without knowledge or information sufficient to form a belief as to the truthfulness of those allegations, and therefore deny them.

      6.     Jurisdiction is proper for this action in the United States District Court for the Middle District, Northern Division, based upon diversity of citizenship of the parties and over $75,000 in controversy. Defendants admit that the Subject Property is located within Montgomery County, Alabama. Except to the extent specifically admitted herein, Defendants deny the remaining material allegations of this paragraph.

      7.     Denied.

      8.     Defendants admit that Goff was formerly married to Anne Henderson Goff ("Anne"), and that, prior to Anne's marriage to Goff, Anne was married to Henderson II. Defendants admit that Anne and Henderson II had two sons, Reynolds and Henderson III, during their marriage. Defendants deny that Goff provided for Reynolds and Henderson III as if they were his own sons. Except to the extent specifically admitted herein, Defendants deny the remaining material allegations of this paragraph.

      9.     Defendants admit that Anne sought a divorce from Goff in or around August 2005. Defendants admit that Anne and Goff reached a marital settlement of all assets and other divorce related issues. Defendants admit that Goff retained the land and office building on the Subject Property, and that Anne received some of the equity in a beach house in Watercolor, Florida. Except to the extent specifically admitted herein, Defendants deny the remaining material allegations of this paragraph.

      10.     Defendants admit that Henderson II and Henderson III formed Phoenix-Durango, a limited liability company. Defendants admit that Phoenix-Durango purchased the second

mortgage and the promissory note on the Subject Property which is secured by the mortgage from Community Bank & Trust. Defendants admit that Phoenix-Durango began foreclosure proceedings against the Subject Property on or about March 20, 2006, without personal notice to Goff. Defendants deny that Phoenix-Durango was required by the mortgage instrument or by law to give personal notice to Goff or to Goff Group, Inc., of its intention to foreclose on the Subject Property. Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the allegations regarding Goff's arrangement or past business relationship with Community Bank & Trust, and therefore deny them. Except as specifically admitted herein, Defendants deny the remaining material allegations of this paragraph.

11.     Defendants admit that Judge Price, in the Circuit Court of Montgomery County, Alabama, entered a temporary restraining order on March 24, 2006, prohibiting Phoenix-Durango from continuing with its foreclosure proceedings on the Subject Property. Defendants admit that the plaintiffs posted a $5,000 bond in the Circuit Court of Montgomery County, Alabama, and that a hearing was initially set for a preliminary injunction on April 3, 2006. Defendants deny acknowledging through their attorneys that the initial foreclosure was improper. Except as specifically admitted herein, Defendants deny the remaining material allegations of this paragraph.

12.     Defendants admit that Phoenix-Durango refused to accept Goff's check of $5,200.00. Defendants deny the money tendered by Goff would have brought the loan current. Defendants admit that they have requested Goff to bring the account current and have requested Goff to pay certain attorneys' fees due under the note secured by the mortgage. Except as specifically admitted herein, Defendants deny the remaining material allegations of this paragraph.

4

13.    All allegations of this paragraph are denied.

14.    Defendants admit Kay Bains called Art Leadingham, the holder of a junior mortgage. Defendants admit that Art Leadingham has served as Goff's accountant. Except as specifically admitted herein, Defendants deny the remaining allegations of this paragraph.

15.    Defendants deny that the plaintiffs are entitled to the requested injunction to stop Phoenix-Durango from proceeding with foreclosure of the subject property, and assert that the plaintiffs wrongfully procured a temporary restraining order from the Circuit Court of Montgomery County, Alabama.

**Count One - Preliminary Injunctive Relief**

15.    The statements of law, which are not pertinent to this case, set forth in this paragraph do not require an answer from these Defendants.

16.    Denied.

17.    Phoenix-Durango denies that it did not comply with the terms of the mortgage agreement in instituting foreclosure proceedings and the implication that the terms of the mortgage were ever altered. Otherwise, the statements of law set forth in this paragraph do not require an answer from these Defendants.

18.    Denied.

19.    Denied.

20.    Denied.

21.    Defendants deny that a foreclosure of the Subject Property is set for May 5, 2006.

**Count Two - Fraud**

22.    These defendants incorporate by reference their responses to the allegations contained in paragraphs 1 through 21 of the Plaintiffs' First Amended Complaint as if those responses were set forth fully at this point.

23.    Denied.

24.    Denied.

25.    Denied.

26.    Denied.

27.    Denied.

28.    Denied.

**Count Three - Tort of Outrage**

29.    These defendants incorporate by reference their responses to the allegations contained in paragraphs 1 through 28 of the Plaintiffs' First Amended Complaint as if those responses were set forth fully at this point.

30.    Denied.

**Count Four - Negligence**

31.    These defendants incorporate by reference their responses to the allegations contained in paragraphs 1 through 30 of the Plaintiffs' First Amended Complaint as if those responses were set forth fully at this point.

32.    Denied

**Count Five - Conspiracy**

33.    These defendants incorporate by reference their responses to the allegations contained in paragraphs 1 through 32 of the Plaintiffs' First Amended Complaint as if those responses were set forth fully at this point.

6

34.    Denied.

35.    Denied.

**Count Six - Tortious Interference with Business Relations**

36.    These defendants incorporate by reference their responses to the allegations contained in paragraphs 1 through 35 of the Plaintiffs' First Amended Complaint as if those responses were set forth fully at this point.

37.    Denied.

38.    Denied.

**Count Seven - Slander of Title**

39.    These defendants incorporate by reference their responses to the allegations contained in paragraphs 1 through 38 of the Plaintiffs' First Amended Complaint as if those responses were set forth fully at this point.

40.    Denied.

41.    Denied.

To the extent not specifically admitted herein, Phoenix-Durango denies each and every material averment of the First Amended Complaint and demands strict proof thereof.

**THIRD DEFENSE**

The plaintiffs' fraud claims are due to be dismissed for failure to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

**FOURTH DEFENSE**

The plaintiffs' negligence claims are barred by the doctrine of contributory negligence.

**FIFTH DEFENSE**

The plaintiffs' claims for relief are barred by the doctrine of laches and unclean hands and because the plaintiffs have not offered to do equity.

### SIXTH DEFENSE

Plaintiff John Goff is not entitled to any equitable relief because whatever interest, if any, he has in the mortgaged property was obtained for improper purposes and by improper means, and, as a result, the doctrine of unclean hands is applicable to him.

### SEVENTH DEFENSE

The plaintiffs have failed to mitigate their damages, if any.

### EIGHTH DEFENSE

These defendants deny that they are guilty of any negligent acts, fraudulent or malicious acts, or wantonness or willful conduct which proximately contributed to or caused the plaintiffs' alleged injuries or damages.

### NINTH DEFENSE

These defendants deny that the plaintiffs are entitled to compensatory or punitive damages from these Defendants in this action.

### TENTH DEFENSE

The plaintiffs have failed to allege conduct warranting imposition of exemplary or punitive damages against these Defendants under applicable state law.

### ELEVENTH DEFENSE

The plaintiffs have not been damaged by any conduct on the part of these defendants.

### TWELFTH DEFENSE

The plaintiffs' demand for punitive damages violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution in that the claim for punitive damages is vague and not rationally related to any legitimate government interests.

### THIRTEENTH DEFENSE

The plaintiffs' demand for punitive damages violates the Sixth Amendment of the United States Constitution in that the plaintiffs' claim for punitive damages is a claim that is penal in nature, entitling these defendants to the same procedural safeguards afforded to a criminal defendant under the Sixth Amendment.

### FOURTEENTH DEFENSE

The plaintiffs' demand for punitive damages violates the Fifth Amendment of the United States Constitution which prohibits deprivation of life, liberty or property except by due process of law in that the claim for punitive damages is vague and not rationally related to any legitimate government interests.

### FIFTEENTH DEFENSE

The plaintiffs' demand for punitive damages violates the rights guaranteed by the United States Constitution in that the claim for punitive damages is penal in nature, but the burden of proof on the plaintiffs is less than the "beyond the reasonable doubt" standard required in criminal cases.

### SIXTEENTH DEFENSE

The plaintiffs' demand for punitive damages is unconstitutional under the Constitution of the State of Alabama which provides in Article I, Section 6, that no person shall be deprived of life, liberty and property except by due process of law, in that the claim for punitive damages is vague and not rationally related to any legitimate government interests.

## SEVENTEENTH DEFENSE

The plaintiffs' demand for punitive damages is unconstitutional under the Constitution of the State of Alabama which provides in Article I, Section 6, that no person shall be deprived of life, liberty or property except by due process of law, in that the punitive damages claimed are penal in nature, but the burden of proof on the plaintiff is less than the "beyond a reasonable doubt" burden of proof required in criminal cases.

## EIGHTEENTH DEFENSE

These defendants avers that any award of punitive damages to the plaintiffs in this case will violate the constitutional safeguards provided to these defendants, based upon the following grounds:

a.      There is a lack of reasonable standards necessary to instruct the jury on the propriety and the amount of any punitive damage award;

b.      The power and authority of the jury under Alabama law to decide the amount of a punitive damage award is so unfettered that there is lacking any reasonable logic or standard, uniformity, criteria, or guidance in the assessment of the amount of the award of punitive damage;

c.      Alabama procedures, pursuant to which amounts of punitive damages are awarded, are unconstitutionally void for vagueness.

## NINETEENTH DEFENSE

Defendants give notice that they will rely upon such other and further defenses as may become apparent during the course of this action.


/s/Vernon L. Wells, II


10

/s/C. Ellis Brazeal

Attorneys for Defendants Phoenix-Durango, LLC,
Jeremiah A. Henderson II, and Jeremiah A.
Henderson III

OF COUNSEL
Walston, Wells & Birchall, LLP
1819 5th Avenue North, Suite 1100
Birmingham, Alabama 35203
Telephone: (205) 244-5200
Telecopier: (205) 244-5400

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May, 2006, I electronically filed the foregoing
ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE
DEFENSES BY PHOENIX-DURANGO, LLC, JEREMIAH A. HENDERSON II, AND
JEREMIAH A. HENDERSON III with the Clerk of the Court using the CM/ECF system which
will send notification of such filing to the following:

Thomas T. Gallion, III
Haskell, Slaughter, Young & Gallion, LLC
305 South Lawrence Street
PO Box 4660
Montgomery, Alabama 36103-4660

/s/ Vernon L. Wells, II

11

Mar. 31. 2006  3:54PM                                                No. 3926   P. 2/5

| | | |
|---|---|---|
| GOFF GROUP, INC. FKA GOFF-N.B.A., INC. 80 TECHNACENTER DRIVE MONTGOMERY, AL 36117 | COMMUNITY BANK & TRUST · ALABAMA P.O. BOX 310 UNION SPRINGS, AL 36089 | Loan Number 400656501 Date JULY 25, 2000 Maturity Date JULY 25, 2005 Loan Amount $ 648,915.24 Renewal Of |
| **BORROWER'S NAME AND ADDRESS** "I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS** "You" means the lender, its successors and assigns. | XI |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of SIX HUNDRED FORTY EIGHT THOUSAND NINE HUNDRED FIFTEEN DOLLARS AND 24/100          Dollars $ 648,915.24

☒ **Single Advance:** I will receive all of this principal sum on JULY 25, 2000          No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____ I will receive the amount of $ _____ and future principal advances are contemplated.

Conditions: The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum principal sum more than one time. This feature is subject to all other conditions and expires on _____

☐ **Closed End Credit:** You and I agree that I may borrow (subject to all other conditions) up to the maximum principal sum only one time.

**INTEREST:** I agree to pay interest on the outstanding principal balance from JULY 25, 2000          at the rate of 10.50 % per year until _____

☒ **Variable Rate:** This rate may then change as stated below.

☒ **Index Rate:** The future rate will be 1.00% ABOVE          the following index rate: WALL STREET JOURNAL PRIME

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☒ **Frequency and Timing:** The rate on this note may change as often as DAILY          A change in the interest rate will take effect ON THE SAME DAY

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:

☐ The amount of each scheduled payment will change.    ☒ The amount of the final payment will change.

☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a 365 DAY ACTUAL          basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:

☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).

☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than 10 days after it is due, I agree to pay a late charge of 5% OF PAYMENT BUT NOT LESS THAN $10.00 AND NOT MORE THAN $100.00

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount above: ORIGINATION FEE $2,500.00

**PAYMENTS:** I agree to pay this note as follows:

☐ **Interest:** I agree to pay accrued interest _____

☐ **Principal:** I agree to pay the principal _____

☒ **Installments:** I agree to pay this note in 60 payments. The first payment will be in the amount of $ 7,500.00 and will be due AUGUST 25, 2000          A payment of $ 7,500.00 will be due ON THE 25th DAY OF EACH MONTH          thereafter. The final payment of the entire



Note #1

EXHIBIT B



Mar. 31. 2006  3:55PM Interest will be due   JULY. 25. 2005                      No. 3926   P. 3/5

**PURPOSE:** The purpose of this loan is:  BUSINESS: PAYOFF TWO (2) LOANS & CONSOLIDATE

**ADDITIONAL TERMS:**

_NOT %_

**SECURITY INTEREST:** I give you a security interest in all of the Property described below that I now own and that I may own in the future (including, but not limited to, all parts, accessories, repairs, improvements, and accessions to the Property), wherever the Property is or may be located, and all proceeds and products from the Property.

☐ **Inventory:** All inventory which I hold for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.

☐ **Equipment:** All equipment including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. All equipment described in a list or schedule which I give to you will also be included in the secured property, but such a list is not necessary for a valid security interest in my equipment.

☐ **Farm Products:** All farm products including, but not limited to:
   (a) all poultry and livestock and their young, along with their products, produce and replacements;
   (b) all crops, annual or perennial, and all products of the crops; and
   (c) all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.

☐ **Accounts, Instruments, Documents, Chattel Paper and Other Rights to Payment:** All rights I have now and that I may have in the future to the payment of money including, but not limited to:
   (a) payment for goods and other property sold or leased or for services rendered, whether or not I have earned such payment by performance; and
   (b) rights to payment arising out of all present and future debt instruments, chattel paper and loans and obligations receivable.
   The above include any rights and interests (including all liens and security interests) which I may have by law or agreement against any account debtor or obligor of mine.

☐ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, applications for patents, patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, and the right to use my name.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, or other benefits (including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance payments, diversion payments, and conservation reserve payments) in which I now have and in the future may have any rights or interest and which arise under or as a result of any preexisting, current or future Federal or state governmental program (including, but not limited to, all programs administered by the Commodity Credit Corporation and the ASCS).

☒ The secured property includes, but is not limited by, the following:
   REAL ESTATE MORTGAGE ON REAL ESTATE MORE CLEARLY DEFINED IN MORTGAGE DATED JULY 25, 2000
   IN THE PRINCIPAL AMOUNT OF $648,915.24 TO BE FILED FOR RECORD IN THE OFFICE OF JUDGE OF
   PROBATE, MONTGOMERY COUNTY, ALABAMA.

If this agreement covers timber to be cut, minerals (including oil and gas), fixtures or crops growing or to be grown, the description of the real estate is:

The Property will be used for a  ☐ personal  ☒ business  ☐ agricultural  purpose.

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.

**Caution -IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.**

☐ If checked, file this agreement on the real estate records.

Record owner (if not me)

GOFF GROUP, INC.
FKA GOFF-N.B.A., INC.
63-1078035

BY: X _____
     JOHN W. GOFF, PRESIDENT

**DISPOSITION OF FUNDS**

Deposited to Account Number        | Check Number

**SIGNATURE FOR LENDER**

UNIVERSAL NOTE AND SECURITY AGREEMENT
© 1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UNS-AL 1/28/98

(page 1 of 2)



## ADDITIONAL TERMS OF THE NOTE

**DEFINITIONS** - As used on page 1, "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** - The law of the state of Alabama will govern this agreement. Any term of this agreement which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this note or any agreement securing this note is effective unless the modification is in writing and signed by you and me. Time is of the essence in this agreement.

**PAYMENTS** - Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST** - Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal sum outstanding at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to in this note (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE** - The index will serve only as a device for setting the interest rate on this note. You do not guarantee by selecting the index, or the margin, that the interest rate on this note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers.

**POST MATURITY RATE** - For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS** - If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS** - If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**SET-OFF** - I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:

(1) any deposit account balance I have with you;

(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and

(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right to set-off.

**DEFAULT** - I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the Property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES** - If I am in default on this note you have, but are not limited to, the following remedies:

(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued unpaid charges).

(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "SET-OFF" paragraph herein.

(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.

(4) You may refuse to make advances to me or allow purchases on credit by me.

(5) You may use any remedy you have under state or federal law.

(6) You may make use of any remedy given to you in any agreement securing this note.

By selecting any one or more of these remedies you do not give up your right to use later any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to consider later the event a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES** - I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER** - I give up my rights to require you to do certain things. I will not require you to:

(1) demand payment of amounts due (presentment);

(2) obtain official certification of nonpayment (protest); or

(3) give notice that amounts due have not been paid (notice of dishonor).

To the extent permitted by law, I also waive all personal property exemptions in the property securing this loan. I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT** - I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**CREDIT INFORMATION** - I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

Back of Note

#3

*Back of Note*

## ADDITIONAL TERMS OF THE SECURITY AGREEMENT

**GENERALLY** - This agreement secures this note and any other debt I have with you, now or later. However, it will not secure other debts if you fail with respect to such other debts, to make any required disclosure about this security agreement or if you fail to give any required notice of the right of rescission. If property described in this agreement is located in another state, this agreement may also, in some circumstances, be governed by the law of the state in which the Property is located.

**OWNERSHIP AND DUTIES TOWARD PROPERTY** - I represent that I own all of the Property, or to the extent this is a purchase money security interest I will acquire ownership of the Property with the proceeds of the loan. I will defend it against any other claim. Your claim to the Property is ahead of the claims of any other creditor. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these records at any reasonable time. I will prepare any report or accounting you request, which deals with the Property.

I will keep the Property in my possession and will keep it in good repair and use it only for the purpose(s) described on page 1 of this agreement. I will not change this specified use without your express written permission. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

I will keep the Property at my address listed on page 1 of this agreement, unless we agree I may keep it at another location. If the Property is to be used in another state, I will give you a list of those states. I will not try to sell the Property unless it is inventory or I receive your written permission to do so. If I sell the Property I will have the payment made payable to the order of you and me.

You may demand immediate payment of the debt(s) if the debtor is not a natural person and without your prior written consent; (1) a beneficial interest in the debtor is sold or transferred, or (2) there is a change in either the identity or number of members of a partnership, or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation.

I will pay all taxes and charges on the Property as they become due. You have the right of reasonable access in order to inspect the Property. I will immediately inform you of any loss or damage to the Property.

If I fail to perform any of my duties under this security agreement, or any mortgage, deed of trust, lien or other security interest, you may without notice to me perform the duties or cause them to be performed. Your right to perform for me shall not create an obligation to perform and your failure to perform will not preclude you from exercising any of your other rights under the law or this security agreement.

**PURCHASE MONEY SECURITY INTEREST** - For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement: (a) payments on any nonpurchase money loan also secured by this agreement will not be deemed to apply to the Purchase Money Loan, and (b) payments on the Purchase Money Loan will be deemed to apply first to the nonpurchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items of collateral were acquired or if acquired at the same time, in the order selected by you. No security interest will be terminated by application of this formula. "Purchase Money Loan" means any loan the proceeds of which, in whole or in part, are used to acquire any collateral securing the loan and all extensions, renewals, consolidations and refinancing of such loan.

**PAYMENTS BY LENDER** - You are authorized to pay, on my behalf, charges I am or may become obligated to pay to preserve or protect the secured property (such as property insurance premiums). You may treat those payments as advances and add them to the unpaid principal under the note secured by this agreement or you may demand immediate payment of the amount advanced.

**INSURANCE** - I agree to buy insurance on the Property against the risks and for the amounts you require and to furnish you continuing proof of coverage. I will have the insurance company name you as loss payee on any such policy. You may require added security if you agree that insurance proceeds may be used to repair or replace the Property. I will buy insurance from a firm licensed to do business in the state where you are located. The firm will be reasonably acceptable to you. The insurance will last until the Property is released from this agreement. If I fail to buy or maintain the insurance (or fail to name you as loss payee) you may purchase it yourself.

**WARRANTIES AND REPRESENTATIONS** - If this agreement includes accounts, I will not settle any account for less than its full value without your written permission. I will collect all accounts until you tell me otherwise. I will keep the proceeds from all the accounts and any goods which are returned to you. I will not commingle them with any other property of mine. I will deliver them to you at your request. If you ask me to pay you the full price on any returned items or items retaken by myself, I will do so.

If this agreement covers inventory, I will not dispose of it except in my ordinary course of business at the fair market value for the Property, or at a minimum price established between you and me.

If this agreement covers farm products I will provide you, at your request, a written list of the buyers, commission merchants or selling agents to or through whom I may sell my farm products, in addition to those parties named on this written list, I authorize you to notify at your sole discretion any additional parties regarding your security interest in my farm products. I remain subject to all applicable penalties for selling my farm products in violation of my agreement with you and the Food Security Act. In this paragraph the terms farm products, buyers, commission merchants and selling agents have the meanings given to them in the Federal Food Security Act of 1985.

**REMEDIES** - I will be in default on this security agreement if I am in default on any note this agreement secures or if I fail to keep any promise contained in the terms of this agreement. If I default, you have all of the rights and remedies provided in the note and under the Uniform Commercial Code. You may require me to make the secured property available to you at a place which is reasonably convenient. You may take possession of the secured property and sell it as provided by law. The proceeds will be applied first to your expenses and then to the debt. I agree that 10 days written notice sent to my last known address by first class mail will be reasonable notice under the Uniform Commercial Code. My current address is on page 1. I agree to inform you in writing of any change of my address.

**FILING** - A carbon, photographic or other reproduction of this security agreement or the financing statement covering the Property described in this agreement may be used as a financing statement where allowed by law. Where permitted by law, you may file a financing statement which does not contain my signature, covering the Property secured by this agreement.

| Any person who signs within this box does so to give you a security interest in the Property described on page 1. This person does not promise to pay the note. "I" as used in this security agreement will include the borrower and any person who signs within this box. |
|---|
| Date _____ |
| Signed |

© 1994, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UNS-AL    6/96

(page 2 of 2)

# COR?ORATION MORTGAGE

STATE OF ALABAMA
COUNTY OF MONTGOMERY

**KNOW ALL MEN BY THESE PRESENTS**, that, whereas, Goff Group, Inc., f/k/a Goff N.B.A., Inc., is justly indebted to Community Bank & Trust - Alabama, hereinafter referred to as MORTGAGEE, in the principal sum of Six Hundred Forty Thousand Nine Hundred Fifteen and 24/100 DOLLARS ($648,915.24), as evidenced by its promissory note bearing even date herewith.

**NOW**, in order to secure the prompt payment of said note when due, the said Goff Group, Inc., f/k/a Goff N.B.A., Inc., hereinafter referred to as MORTGAGOR, for and in consideration of the premises, and the sum of Five Dollars ($5.00) to the undersigned this day in hand paid by the said Mortgagee, the receipt whereof is hereby acknowledged, does hereby GRANT, BARGAIN, SELL and CONVEY to the said Mortgagee the following described real estate lying and being situated in Montgomery County, State of Alabama, to-wit:

Lot 1-A, Block A, according to the Map of Technacenter Plat No. 2, as said Map appears of record in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 41, at Page 150.

**TO HAVE AND TO HOLD** the aforegranted premises, together with the improvements and appurtenances thereunto belonging, unto the said Mortgagee, its successors and assigns, FOREVER.

Said Mortgagor does hereby covenant with the said Mortgagee, its successors and assigns, that the Mortgagor is lawfully seized in fee of said premises; that they are free of and from all encumbrances, except as of record; and that Mortgagor will warrant and forever defend the same against the lawful claims and demands of all persons.

**THIS CONVEYANCE IS MADE UPON THE FOLLOWING CONDITIONS, NEVERTHELESS:** If Mortgagor shall well and truly pay, or cause to be paid, the said note, and each and all of them, and each and every installment thereof, and interest thereon, when due, then this conveyance shall become null and void. But should Mortgagor fail to pay said note or either or any of them or any installment thereof at maturity, then all of said indebtedness shall become due and payable at once, whereupon, the said Mortgagee, its successors, assigns, agents or attorneys, are hereby authorized and empowered to sell the said property hereby conveyed at auction for cash, at the Montgomery County Courthouse door in the City of Montgomery, Alabama, first having given notice thereof for three (3) successive weeks by publication in any newspaper then published in said City, and execute proper conveyance to the purchaser and out of the proceeds of said sale, the Mortgagee shall first pay all expenses incident thereto, together with a reasonable attorney's fee, then retain enough to pay said note and interest thereon and any sums advanced by Mortgagee for taxes, insurance or assessments, and the balance if any, pay over to the Mortgagor.

In the event of such sale, the said Mortgagee, its successors, assigns, agents or attorneys are hereby authorized and empowered to purchase the said property the same as if they were strangers to this conveyance, and the auctioneer or person making the sale is hereby empowered and directed to make and execute a deed to the purchaser in the name of the Mortgagor.

It is also agreed that in case the Mortgagee herein, its successors and assigns, sees fit to foreclose the Mortgage in a court having jurisdiction thereof, Mortgagor will pay a reasonable attorney's fee therefore, which fee shall be and constitute a part of the debt hereby secured.

Mortgagor further represents and declares to said Mortgagee that the title to said real estate is in Mortgagor's own right, and that the representations herein made as to title and encumbrances are so made with the intent and for the purpose of inducing this loan.

# EXHIBIT  C

Mortgagor further ...cially waives all exemptions which M... tgagor now or hereafter may be entitled to under the Constitution and Laws of the State of Alabama in regard to the collection of the above debt.

Mortgagor further agrees to keep said property insured against fire and windstorm in good and responsible companies acceptable to Mortgagee for not less than $250,100.00 and have each such policy payable to said Mortgagee, as its interest may appear in said property, and deliver the same to Mortgagee; and should Mortgagor fail to insure said property, then Mortgagee is hereby authorized to do so, and the premiums so paid by Mortgagee shall be and constitute a part of the debt secured hereby.

The Mortgagor herein agrees to pay all taxes and assessments, general or special, levied upon the real estate herein conveyed before the same become delinquent; should Mortgagor fail to pay any such taxes or assessments, then Mortgagee is authorized to do so, and such payments shall thereupon constitute a part of the debt secured hereby.

It is further understood that should the Mortgagor fail to pay said taxes and assessments, or insure the property, as hereinabove stipulated, the Mortgagee may do so, and thereupon declare the whole debt secured by this Mortgage to be due and payable, and proceed to foreclose at once, as hereinabove provided with respect to foreclosure of this mortgage.

**IN WITNESS WHEREOF**, the undersigned has executed this mortgage this the 25th day of July, 2000.

WITNESS:

Goff Group, Inc.,
f/k/a Goff N.B.A., Inc.

X _____
John W. Goff, President

STATE OF ALABAMA
COUNTY OF MONTGOMERY

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that John W. Goff, whose name as President of Goff Group, Inc., f/k/a Goff N.B.A., Ina., is signed to the foregoing document, and who are known to me, acknowledged before me on this day, that, being informed of the contents of said instrument, he, executed the same voluntarily on the day the same bears date.

GIVEN under my hand and official seal this 25th day of July, 2000.

(SEAL)

Notary Public
My Commission Expires: 8/20/2000

This Instrument Prepared By:
Robert B. Crumpton, Jr.
Crumpton & Associates, L.L.C.
2000 Interstate Park Drive
Montgomery, AL 36109

| | |
|---|---|
| INDEX | 5.00 |
| REC FEE | 1.00 |
| REC FEE | 5.00 |
| MRTG TAX | 973.50 |
| CASH | 984.50 |
| ITEM 4 | |
| 08-16-00 WED #0 | 1 CLERK 7463 15:41TM |

STATE OF ALA
MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON

2000 AUG 16 PM 3:45

REESE McKINNEY, JR.
JUDGE OF PROBATE

-2-

| | | |
|---|---|---|
| JOHN W. GOFF | MMUNITY BANK & TRUST / P.O. BOX 310 / UNION SPRINGS, AL. 36089 | FF GROUP, INC. / AKA GOFF-N.B.A., INC. |
| 80 TECHNACENTER DRIVE | | 80 TECHNACENTER DRIVE |
| MONTGOMERY, AL. 36117 | | MONTGOMERY, AL. 36117 |
| **GUARANTOR'S NAME AND ADDRESS** / "I" includes each guarantor above, jointly and severally. | **LENDER'S NAME AND ADDRESS** / "You" means the Lender, its successors and assigns. | **BORROWER'S NAME AND ADDRESS** / "Borrower" means each person above. |

## GUARANTY

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with borrower from time to time, I absolutely and unconditionally guarantee the full payment of the following debts (as defined herein) when due (whether at maturity or upon acceleration):

**PRESENT DEBT GUARANTY**

☒☒ I absolutely and unconditionally guarantee to you the payment and performance of the following described debt (including all renewals, extensions, refinancings and modifications) of the borrower:   LOAN #400656501 DATED JULY 25, 2000 .

**PRESENT AND FUTURE DEBT GUARANTY**

☐ I absolutely and unconditionally guarantee to you the payment and performance of each and every debt, of every type and description, that the borrower may now or at any time in the future owe you including, but not limited to, the following described debt(s): _____ .

☐ I absolutely and unconditionally guarantee to you the payment and performance of each and every debt, of every type and description, that the borrower may now or at any time in the future owe you, up to the principal amount of $ _____ plus accrued interest, attorneys' fees and collection costs referable thereto (when permitted by law), and all other amounts agreed to be paid under all agreements evidencing the debt and securing the payment of the debt. You may, without notice, apply this guaranty to such debts of the borrower as you may select from time to time.

**DEFINITIONS** - As used in this agreement, the terms "I," "we," and "my" mean all persons signing this guaranty agreement, individually and jointly, and their heirs, executors, administrators and assigns.

The term "debt" means all debts, liabilities, and obligations of the borrower (including, but not limited to, all amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, except for any obligations incurred by borrower after the date of this guaranty for which the borrower meets your standard of creditworthiness based on the borrower's own assets and income without the addition of a guaranty, or to which, although you require the addition of a guaranty, the borrower chooses someone other than me to guaranty the obligation.

**APPLICABLE LAW** - This agreement is governed by the law of the state in which you are located. Any term of this agreement that does not comply with applicable law will not be effective if that law does not expressly or impliedly permit variations by agreement. If any part of this agreement cannot be enforced according to its terms, this fact will not affect the balance of this agreement.

**REVOCATION** - I agree that this is an absolute and continuing guaranty. If this guaranty is limited to the payment of a specific debt of the borrower described above, this agreement cannot be revoked and will remain in effect until the debt is paid in full. If this guaranty covers both the borrower's present and future debts, I agree that this guaranty will remain binding on me, whether or not there are any debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence.

Notice of revocation or notice of my death or incompetence will not affect my obligations under this guaranty with respect to any debts incurred by or for which you have made a commitment to borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such debts. I agree that if any other person signing this agreement provides a notice of revocation to you, I will still be obligated under this agreement until I provide a notice of revocation to you. If any other person signing this agreement dies or is declared incompetent, such fact will not affect my obligations under this agreement.

**OBLIGATIONS INDEPENDENT** - I agree that I am obligated to pay according to the terms of this guaranty even if any other person has agreed to pay the borrower's debt. My obligation to pay according to the terms of this guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the borrower.

I will remain obligated to pay on this guaranty even if any other person who is obligated to pay the borrower's debt, including the borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law. In such situations, my obligation shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which borrower is discharged from paying or which do not otherwise accrue to borrower's indebtedness due to borrower's discharge. I will also be obligated to pay you, to the fullest extent permitted by law, any deficiency remaining after foreclosure of any mortgage or security interest securing borrower's debt, whether or not the liability of borrower or any other obligor for such deficiency is discharged by statute or judicial decision. If any payments by borrower or any are thereafter set aside, recovered, rescinded, in whole or in part, are settled by you at your discretion, or are in any way recouped or recovered from you for any reason (including, without limitation, the bankruptcy, insolvency, or reorganization of borrower or any other obligor), then I am obligated to reimburse or indemnify you for the full amount you so pay together with costs, interest, attorneys' fees and all other expenses which you incur in connection therewith. I also agree that if my liability is limited to a stated principal amount (plus other agreed charges), you may allow the borrower to incur debt in excess of the specified amount and apply to the payment of such excess any amounts you receive for payment of the debt from the borrower or any other person, any amounts resulting from any collateral, or amounts received from any other source, without affecting my obligations under this agreement.

No modification of this agreement is effective unless in writing and signed by you and me, except that you may, without notice to me and without the addition of a signed writing or my approval: (1) release any borrower or other person who may be liable for borrower's debt, (2) release or substitute any collateral, (3) fail to perfect any security interest or otherwise impair any collateral, (4) waive or impair any right you may have against any borrower or other person who may be liable for borrower's debt, (5) settle or compromise any claim against the borrower or any person who may be liable for the borrower's debt, (6) procure any additional security or persons who agree to be liable for borrower's debt, (7) delay or fail to pursue enforcement of the debt, (8) apply amounts you receive from the borrower or other persons to payment of the debt when you select, (9) make any election with respect to the debt provided by law or any agreement with any person liable for the debt, (10) exercise or fail to exercise any rights you have with respect to the debt, (11) extend new credit to the borrower, or (12) renew, extend, refinance or modify the borrower's debt on any terms agreed to by you and the borrower (including, but not limited to, changes in the interest rate or in the method, time, place or amount of payment) without affecting my obligation to pay under this guaranty.

**WAIVER** - I waive presentment, demand, protest, notice of dishonor, and notice of acceptance of this guaranty. I also waive, to the extent permitted by law, all notices, all defenses and claims that the borrower could assert, any right to require you to pursue any remedy or seek payment from any other person before seeking payment under this agreement, and all other defenses to the debt, except payment in full. You may without notice to me and without my consent, enter into agreements with the borrower from time to time for purposes of creating or continuing the borrower's debt as allowed by this guaranty. I agree that I will be liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing borrower's debt, even if borrower's obligation to pay such deficiency is discharged by law. If any payments on the debt are set aside, recovered or required to be returned in the event of the insolvency, bankruptcy or reorganization of the borrower, my obligations under this agreement will continue as if such payments had never been made.

I also waive and relinquish all present and future claims, rights, and remedies against borrower or any other obligated party arising out of the creation or my performance of this guaranty. My waiver includes, but is not limited to, the right of contribution, reimbursement, indemnification, subrogation, exoneration, and any right to participate in any claim or remedy you may have against the borrower, collateral, or other party obligated for borrower's debts, whether or not such claim, remedy, or right arises in equity, or under contract, statute or common law.

**REMEDIES** - If I fail to keep any promise contained in this guaranty or any agreement securing this agreement, you may, make this agreement and the borrower's debt immediately due and payable, you may set-off this obligation against any right I have to receive money from you (however, you may not set-off against any accounts in which my rights are only as a fiduciary or my IRA or other tax-deferred retirement account), you may use any remedy you have under state or federal law, and you may use any remedy given to you by any agreement securing this agreement. If I die, am declared incompetent, or become insolvent (either because my liabilities exceed my assets or because I am unable to pay my debts as they become due), you may make the debt immediately due and payable.

**COLLECTION COSTS** - Except when prohibited by law, I agree to pay the reasonable costs and expenses you incur to enforce and collect this agreement, including attorneys' fees and court costs.

**SECURITY** - This guaranty is ☒ unsecured  ☐ secured by _____

| | |
|---|---|
| **NOTICE TO COSIGNER**<br><br>You are being asked to guarantee the debts described above. If you are making a "Present and Future Debt Guaranty" as identified above, you are being asked to guarantee *present* as well as *future* debts of the borrower entered into with this lender. Think carefully before you do. If the borrower doesn't pay these debts, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.<br><br>You may have to pay up to the full amount of these debts if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.<br><br>The lender can collect these debts from you without first trying to collect from the borrower. The lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If these debts are in default, that fact may become part of *your* credit record. | In witness whereof, I have signed my name and affixed my seal on this 25th day of JULY , 2000 , and, by doing so, agree to the terms of this guaranty and acknowledge having read the Notice to Cosigner.<br><br>X _____ (SEAL)<br>JOHN W. GOFF<br><br>_____ (SEAL)<br><br>_____ (SEAL)<br><br>_____ (SEAL) |

© 1985 BANKERS SYSTEMS, INC., ST. CLOUD, MN (1-800-397-2341)  FORM COG  7/20/90

**EXHIBIT D**

GOFF GROUP, INC.
80 TECHANCENTER DRIVE
MONTGOMERY AL 36117

Community Bank & Trust
P O Box 310
Union Springs, AL  36089

| | |
|---|---|
| LAW. | |
| Loan Number | 400656502 |
| Date | 12/26/01 |
| Maturity Date | 12/25/06 |
| Loan Amount $ | 648915.24 |
| Renewal Of | 400656501 |

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

63-1078035

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of
SIX HUNDRED FORTY EIGHT THOUSAND NINE HUNDRED FIFTEEN AND 24/100      Dollars $ 648915.24

☒ **Single Advance:** I will receive all of this principal sum on 12/26/01. No additional advances are contemplated under this note.
☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
I will receive the amount of $ _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____
☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

INTEREST: I agree to pay interest on the outstanding principal balance from 12/26/01 at the rate of 6.250 % per year until _____
☒ **Variable Rate:** This rate may then change as stated below.
☒ **Index Rate:** The future rate will be 1.500% ABOVE the following index rate: WALL STREET JOURNAL PRIME

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
☒ **Frequency and Timing:** The rate on this note may change as often as daily
A change in the interest rate will take effect same day as prime changes
☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____
**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change. ☒ The amount of the final payment will change.
☐

ACCRUAL METHOD: Interest will be calculated on a actual/365 basis.
POST MATURITY RATE: I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than 10 days after it is due, I agree to pay a late charge of _____
5% of payment due but not less than $10.00 & not more than $100.00
☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount above: PROCESSING FEE $250.00 AND ORIGINATION FEE $420.00
PAYMENTS: I agree to pay this note as follows:
☐ **Interest:** I agree to pay accrued interest _____

☐ **Principal:** I agree to pay the principal _____

☒ **Installments:** I agree to pay this note in 60 payments. The first payment will be in the amount of $ 7500.00
and will be due January 25, 2002. A payment of $ 7500.00 will be due on the 25th
day of each month thereafter. The final payment of the entire
unpaid balance of principal and interest will be due December 25, 2006
ADDITIONAL TERMS:

Renewed 9-17-03

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):
"AS PER SECURITY AGREEMENT DATED DECEMBER 26, 2001"
(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**DISPOSITION OF FUNDS**

Deposited to Account Number _____  Check Number _____

Signature for Lender _____

PURPOSE: The purpose of this loan is
BUSINESS: RENEWAL OF CONSLIDATION LOAN & BUSI
SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.
CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.
GOFF GROUP, INC.
FKA GOFF P.B.A., INC.
X _____
JOHN W GOFF, PRESIDENT     63-1078035

**EXHIBIT  E**

**DEFINITIONS:** As used on page 1, "note" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Alabama will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this note or any agreement securing this note is effective unless the modification is in writing and signed by you and me. Time is of the essence in this agreement.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this note without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral. To the extent permitted by law, I also waive all personal property exemptions in the property securing this loan.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**CREDIT INFORMATION:** I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| / / | $ | | $ | $ | . % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |
| / / | $ | | $ | $ | % | $ | / / |

© 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-AL 2/12/96

(page 2 of 2)

GOFF GROUP, INC.
FKA GOFF N.B.A., INC.
80 TECHANCENTER DRIVE
MONTGOMERY AL 36117

Community Bank & Trust
P O Box 310
Union Springs, AL  36089

| | LAW |
|---|---|
| Loan Number | ~~93203019~~ |
| Date | 9/17/03 |
| Maturity Date | 9/25/06 |
| Loan Amount $ | 420039.36 |
| Renewal Of | 400656502 |

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of _____
FOUR HUNDRED TWENTY THOUSAND THIRTY NINE AND 36/100 _____ Dollars $ ___ 420039.36

[X] **Single Advance:** I will receive all of this principal sum on ___9/17/03___ . No additional advances are contemplated under this note.

[ ] **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
    **Conditions:** The conditions for future advances are _____

[ ] **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

[ ] **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from ___9/17/03___ at the rate of ___5.500___ %
per year until _____

[X] **Variable Rate:** This rate may then change as stated below.

    [X] **Index Rate:** The future rate will be ___1.500% ABOVE___ the following index rate: _____
    WALL STR JRN-DAILY

    [ ] **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
    [X] **Frequency and Timing:** The rate on this note may change as often as ___daily___
    A change in the interest rate will take effect ___same day as prime changes___

    [ ] **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
    _____ %. The rate may not change more than _____ % each _____

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
[ ] The amount of each scheduled payment will change.    [ ] The amount of the final payment will change.
[ ]

**ACCRUAL METHOD:** Interest will be calculated on a ___actual/365___ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
[X] on the same fixed or variable rate basis in effect before maturity (as indicated above).
[ ] at a rate equal to _____

[X] **LATE CHARGE:** If a payment is made more than ___10___ days after it is due, I agree to pay a late charge of _____
5% of payment due but not less than $10.00 & not more than $100.00

[X] **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which [X] are [ ] are not included in the principal amount
above: LOAN FEE $200.00 AND PROCESSING FEE $275.00

**PAYMENTS:** I agree to pay this note as follows:
[ ] **Interest:** I agree to pay accrued interest _____

[ ] **Principal:** I agree to pay the principal _____

[X] **Installments:** I agree to pay this note in ___36___ payments. The first payment will be in the amount of $ ___5500.00___
and will be due ___October 25, 2003___ . A payment of $ ___5500.00___ will be due on the 25th
day of each month _____ thereafter. The final payment of the entire
unpaid balance of principal and interest will be due ___September 25, 2006___

**ADDITIONAL TERMS:**

*Renewal
10-15-04
JC*

[X] **SECURITY:** This note is separately secured by (describe separate document by type and date):
"AS PER SECURITY AGREEMENT
DATED SEPTEMBER 17, 2003"
(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**PURPOSE:** The purpose of this loan is BUSINESS: RENEWAL OF CONSOLIDATION & BUSINESS LOAN

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.**
GOFF GROUP, INC. FKA GOFF N.B.A.INC

X _____
JOHN W. GOFF, PRESIDENT      63-1078035

**DISPOSITION OF FUNDS**

Deposited to Account Number _____      Check Number _____

Signature for Lender

_____

© 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-AL 3/4/2002

(page 1 of 2)

**DEFINITIONS:** As used on page 1, "☒" me___ ___he terms that apply to this loan. "I," "me" or "my" means each Bc___ ___ver who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us").
"You" or "your" means the Lender and its successors and assigns.
**APPLICABLE LAW:** The law of the state of Alabama will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this note or any agreement securing this note is effective unless the modification is in writing and signed by you and me. Time is of the essence in this agreement.
**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.
    In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.
**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).
**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start an interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.
**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.
**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.
**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.
**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.
**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.
**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.
**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.
    "Right to receive money from you" means:
    (1) any deposit account balance I have with you;
    (2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
    (3) any repurchase agreement or other nondeposit obligation.
    "Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.
    If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.
    You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RE___ ___NCE SECURITY:** If this note is secured by real estate or a residence ___ is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.
**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.
**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
    (1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
    (2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-off" paragraph herein.
    (3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
    (4) You may refuse to make advances to me or allow purchases on credit by me.
    (5) You may use any remedy you have under state or federal law.
By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.
**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.
**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
    (1) demand payment of amounts due (presentment);
    (2) obtain official certification of nonpayment (protest); or
    (3) give notice that amounts due have not been paid (notice of dishonor).
I waive any defenses I have based on suretyship or impairment of collateral. To the extent permitted by law, I also waive all personal property exemptions in the property securing this loan.
**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without any notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or fewer than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.
**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.
**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Experi$^{®}$  © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UN-AL 3/4/2002

*(page 2 of ___*

GOFF GROUP, INC.
80 TECHNACENTER DR
MONTGOMERY AL 36117-6028

Community Bank & Trust
P O Box 310
Union Springs, AL  36089

| | DGB |
|---|---|
| Loan Number | 700108011 |
| Date | 10/15/04 |
| Maturity Date | 1/18/05 |
| Loan Amount $ | 406723.99 |
| Renewal Of | 401384301 |
| | 400808205 |

63-1078035

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of
FOUR HUNDRED SIX THOUSAND SEVEN HUNDRED TWENTY THREE AND 99/100            406723.99

☒ **Single Advance:** I will receive all of this principal sum on   10/15/04   . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
   **Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
   all other conditions and expires on _____.
☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from   10/15/04   at the rate of  7.000  %
per year until  paid in full

☐ **Variable Rate:** This rate may then change as stated below.
   ☐ **Index Rate:** The future rate will be _____ the following index rate: _____
   _____
   ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
   ☐ **Frequency and Timing:** The rate on this note may change as often as _____.
      A change in the interest rate will take effect _____.
   ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
      _____ %. The rate may not change more than _____ % each _____.
   **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
   ☐ The amount of each scheduled payment will change.     ☐ The amount of the final payment will change.

**ACCRUAL METHOD:** Interest will be calculated on a    actual/365    basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
   ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
   ☐ at a rate equal to _____.

☒ **LATE CHARGE:** If a payment is made more than    10    days after it is due, I agree to pay a late charge of _____
   5% of payment, with a min. of $10.00 and max. of $100.00.

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are  ☐ are not  included in the principal amount
   above:  ** SEE ADDITIONAL TERMS FOR CHARGES INCLUDED IN THE PRINCIPAL

**PAYMENTS:** I agree to pay this note as follows:
☒ **Interest:** I agree to pay accrued interest   on the  18th day of each month beginning
   11/18/04
☒ **Principal:** I agree to pay the principal   at maturity
   on  1/18/05.

☐ **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____
   and will be due _____ . A payment of $ _____ will be due
   _____ thereafter. The final payment of the entire
   unpaid balance of principal and interest will be due _____

**ADDITIONAL TERMS:**
   ** $31.75 RECORDING FEE, $8.50 MORTGAGE RELEASE FEE, $22.00 FLOOD SEARCH,
   $150.00 LOAN FEE

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):

AS PER SECURITY AGREEMENT
   DATED 10/15/2004

This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**DISPOSITION OF FUNDS**

Deposited to Account Number _____     Check Number _____

Signature for Lender

**PURPOSE:** The purpose of this loan is  BUSINESS: RENEWAL
OF BUSINESS NOTE AND OTHER

**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING
THOSE ON PAGE 2). I have received a copy on today's date.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS
CONTRACT BEFORE YOU SIGN IT.**
GOFF GROUP, INC.

JOHN W GOFF                    PRESIDENT

UNIVERSAL NOTE

**DEFINITIONS:** As used on page 1, "☒" me___ the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Alabama will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this note or any agreement securing this note is effective unless the modification is in writing and signed by you and me. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RE___ENCE SECURITY:** If this note is secured by real estate or a residence other than personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I am, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases or credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral. To the extent permitted by law, I also waive all personal property exemptions in the property securing this loan.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign any obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

*(page 2 of*

Experi®  © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UN-AL  3/4/2002

GOFF GROUP, INC.
80 TECHNACENTER DR
MONTGOMERY AL 36117-6028

Community Bank & Trust
P O Box 310
Union Springs, AL  36089

| | |
|---|---|
| Loan Number | 401384302 |
| Date | 3/04/05 |
| Maturity Date | 3/15/08 |
| Loan Amount $ | 406873.99 |
| Renewal Of | 700108011 |

BGB

**BORROWER'S NAME AND ADDRESS**
" Includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

63-1078035

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL sum of**

FOUR HUNDRED SIX THOUSAND EIGHT HUNDRED SEVENTY THREE AND 99/100 Dollars $    406873.99

☐ **Single Advance:** I will receive all of this principal sum on __3/04/05__ . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____ I will receive the amount of $ _____ and future principal advances are contemplated.

**Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from __3/04/05__ . at the rate of __7.500__ % per year until __paid in full__ .

☐ **Variable Rate:** This rate may then change as stated below.

☐ **Index Rate:** The future rate will be _____ the following index rate: _____

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☐ **Frequency and Timing:** The rate on this note may change as often as _____ .
    A change in the interest rate will take effect _____ .

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____ .

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change.   ☐ The amount of the final payment will change.
☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a __actual/365__ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____ .

☒ **LATE CHARGE:** If a payment is made more than __10__ days after it is due, I agree to pay a late charge of _____ 5% of payment, with a min. of $10.00 and max. of $100.00.

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount above: $50.00 PROCESSING FEE AND $100.00 LOAN FEE

**PAYMENTS:** I agree to pay this note as follows:

☐ **Interest:** I agree to pay accrued interest _____

☐ **Principal:** I agree to pay the principal _____

☒ **Installments:** I agree to pay this note in __36__ payments. The first payment will be in the amount of $ __5000.00__ and will be due __April 15, 2005__ . A payment of $ __5000.00__ will be due __on the 15th day of each month__ thereafter. The final payment of the entire unpaid balance of principal and interest will be due __March 15, 2008__ .

**ADDITIONAL TERMS:**

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):

AS PER SECURITY AGREEMENT
DATED 3/4/2005

(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**DISPOSITION OF FUNDS**

Deposited to Account Number _____    Check Number _____

Signature for Lender _____

**PURPOSE:** The purpose of this loan is __BUSINESS: RENEWAL__

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.

JOHN W GOFF                 PRESIDENT

GOFF GROUP, INC.
80 TECHNACENTER DR
MONTGOMERY AL 36117-6028

Community Bank & Trust
P O Box 310
Union Springs, AL  36089

| | DGB |
|---|---|
| Loan Number | 401384302 |
| Date | 3/04/05 |
| Maturity Date | 3/15/08 |
| Loan Amount $ | 406873.99 |
| Renewal Of | 700108011 |

**BORROWER'S NAME AND ADDRESS**
'I' includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

63-1078035

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of
FOUR HUNDRED SIX THOUSAND EIGHT HUNDRED SEVENTY THREE AND 99/100 Dollars $ 406873.99

☒ **Single Advance:** I will receive all of this principal sum on  3/04/05 . No additional advances are contemplated under this note.
☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
all other conditions and expires on _____ .
☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from  3/04/05  at the rate of  7.500 %
per year until  paid in full .
☐ **Variable Rate:** This rate may then change as stated below.
    ☐ **Index Rate:** The future rate will be _____ the following index rate: _____
    _____
    _____
    ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
    ☐ **Frequency and Timing:** The rate on this note may change as often as _____ .
        A change in the interest rate will take effect _____ .
    ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
        _____ %. The rate may not change more than _____ % each _____ .
    **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
    ☐ The amount of each scheduled payment will change.      ☐ The amount of the final payment will change.
    ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a  actual/365  basis.
**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
    ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
    ☐ at a rate equal to _____ .
☒ **LATE CHARGE:** If a payment is made more than  10  days after it is due, I agree to pay a late charge of _____
    5% of payment, with a min. of $10.00 and max. of $100.00.
☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are  ☐ are not  included in the principal amount
    above: $50.00 PROCESSING FEE AND $100.00 LOAN FEE
**PAYMENTS:** I agree to pay this note as follows:
☐ **Interest:** I agree to pay accrued interest _____
    _____
☐ **Principal:** I agree to pay the principal _____
    _____
☒ **Installments:** I agree to pay this note in  36  payments. The first payment will be in the amount of $  5000.00
    and will be due  April 15, 2005 . A payment of $  5000.00  will be due  on the 15th
    day of each month  thereafter. The final payment of the entire
    unpaid balance of principal and interest will be due  March 15, 2008 .
**ADDITIONAL TERMS:**

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):
    AS PER SECURITY AGREEMENT
    DATED 3/4/2005
    (This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**PURPOSE:** The purpose of this loan is  BUSINESS: RENEWAL

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE** (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.**

JOHN W GOFF                    PRESIDENT

**DISPOSITION OF FUNDS**

Deposited to Account Number _____    Check Number _____

Signature for Lender _____

UNIVERSAL NOTE
Experⓔtⓔ © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UN-AL 3/4/2002

(page 1 of 2)

| | | |
|---|---|---|
| JOHN W. GOFF<br>80 TECHNACENTER DRIVE<br>MONTGOMERY, AL. 36117 | .MMUNITY BANK & TRUST<br>P.O. BOX 310<br>UNION SPRINGS, AL. 36089 | G GROUP, INC.<br>80 TECHNACENTER DRIVE<br>MONTGOMERY, AL. 36117 |
| **GUARANTOR'S NAME AND ADDRESS**<br>"I" includes each guarantor above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the Lender, its successors and assigns. | **BORROWER'S NAME AND ADDRESS**<br>"Borrower" means each person above. |

## GUARANTY

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with borrower from time to time, I absolutely and unconditionally guarantee the full payment of the following debts (as defined herein) when due (whether at maturity or upon acceleration):

**PRESENT DEBT GUARANTY**

☐ I absolutely and unconditionally guarantee to you the payment and performance of the following described debt (including all renewals, extensions, refinancings and modifications) of the borrower: _____ .

**PRESENT AND FUTURE DEBT GUARANTY**

☒ I absolutely and unconditionally guarantee to you the payment and performance of each and every debt, of every type and description, that the borrower may now or at any time in the future owe you including, but not limited to, the following described debt(s): __LOAN #400656502 DATED __ __DECEMBER 26, 2001 IN THE AMOUNT OF $648,915.24__ _____ .

☐ I absolutely and unconditionally guarantee to you the payment and performance of each and every debt, of every type and description, that the borrower may now or at any time in the future owe you, up to the principal amount of $ _____ plus accrued interest, attorneys' fees and collection costs referable thereto (when permitted by law), and all other amounts agreed to be paid under all agreements evidencing the debt and securing the payment of the debt. You may, without notice, apply this guaranty to such debts of the borrower as you may select from time to time.

**DEFINITIONS** - As used in this agreement, the terms "I," "we," and "my" mean all persons signing this guaranty agreement, individually and jointly, and their heirs, executors, administrators and assigns.

The term "debt" means all debts, liabilities, and obligations of the borrower (including, but not limited to, all amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, liability or obligation, overdrafts, letters of credit, guaranties, loans for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, except for any obligations incurred by borrower after the date of this guaranty for which the borrower meets your standard of creditworthiness based on the borrower's own assets and income without the addition of a guaranty, or to which, although you require the addition of a guaranty, the borrower chooses someone other than me to guaranty the obligation.

**APPLICABLE LAW** - This agreement is governed by the law of the state in which you are located. Any term of this agreement that does not comply with applicable law will not be effective if that law does not expressly or impliedly permit variations by agreement. If any part of this agreement cannot be enforced according to its terms, this fact will not affect the balance of this agreement.

**REVOCATION** - I agree that this is an absolute and continuing guaranty. If this guaranty is limited to the payment of a specific debt of the borrower described above, this agreement cannot be revoked and will remain in effect until the debt is paid in full. If this guaranty covers both the borrower's present and future debts, I agree that this guaranty will remain binding on me, whether or not there are any debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence.

Notice of revocation or notice of my death or incompetence will not affect my obligations under this guaranty with respect to any debts incurred by or for which you have made a commitment to borrower before you actually receive such notice, and all renewals, extensions, refinancings and modifications of such debts. I agree that if any other person signing this agreement provides a notice of revocation to you, I will still be obligated under this agreement until I provide a notice of revocation to you. If any other person signing this agreement dies or is declared incompetent, such fact will not affect my obligations under this agreement.

**OBLIGATIONS INDEPENDENT** - I agree that I am obligated to pay according to the terms of this guaranty even if any other person has agreed to pay the borrower's debt. My obligation to pay according to the terms of this guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the borrower.

I will remain obligated to pay on this guaranty even if any other person who is obligated to pay the borrower's debt, including the borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law. In such situations, my obligation shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which borrower is discharged from paying or which do not otherwise accrue to borrower's indebtedness due to borrower's discharge. I will also be obligated to pay you, to the fullest extent permitted by law, any deficiency remaining after foreclosure of any mortgage or security interest securing borrower's debt, whether or not the liability of borrower or any other obligor for such deficiency is discharged by statute or judicial decision. If any payments by borrower to you are thereafter set aside, recovered, rescinded, in whole or in part, are settled by you at your discretion, or are in any way recouped or recovered from you for any reason (including, without limitation, the bankruptcy, insolvency, or reorganization of borrower or any other obligor), then I am obligated to reimburse or indemnify you for the full amount you so pay together with costs, interest, attorneys' fees and all other expenses which you incur in connection therewith. I also agree that if my liability is limited to a stated principal amount (plus other agreed charges), you may allow the borrower to incur debt in excess of the specified amount and apply to the payment of such excess any amounts received for payment of the debt from the borrower or any other person, any amounts resulting from any collateral, or amounts received from any other source, without affecting my obligations under this guaranty.

No modification of this agreement is effective unless in writing and signed by you and me, except that you may, without notice to me and without the addition of a signed writing or my approval; (1) release any borrower or other person who may be liable for borrower's debt, (2) release or substitute any collateral, (3) fail to perfect any security interest or otherwise impair any collateral, (4) waive or impair any right you may have against any borrower or other person who may be liable for borrower's debt, (5) settle or compromise any claim against the borrower or any other person for any debt or for deficiency in security of persons who agree to be liable for borrower's debt, (7) delay or fail to pursue enforcement of the debt, (8) apply amounts you receive from the borrower or other persons to payment of the debt in any order you select, (9) make any election with respect to the debt provided by law or any agreement with any person liable for the debt, (10) exercise or fail to exercise any rights you have with respect to the debt, (11) extend new credit to the borrower, or (12) renew, extend, refinance or modify the borrower's debt on any terms agreed to by you and the borrower (including, but not limited to, changes in the interest rate or in the method, time, place or amount of payment) without affecting my obligation to pay under this guaranty.

**WAIVER** - I waive presentment, demand, protest, notice of dishonor, and notice of acceptance of this guaranty. I also waive, to the extent permitted by law, all notices, all defenses and claims that the borrower could assert, any right to require you to pursue any remedy or seek payment from any other person before seeking payment under this agreement, and all other defenses to the debt, except payment in full. You may without notice to me and without my consent, enter into agreements with the borrower from time to time for purposes of creating or continuing the borrower's debt as allowed by this guaranty. I agree that I will be liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any collateral securing borrower's debt (or repossession) and sale of any collateral without regard to whether borrower's obligation to pay such deficiency is discharged by law. If any payments on the debt are set aside, recovered or required to be returned in the event of the insolvency, bankruptcy or reorganization of the borrower, my obligations under this agreement will continue as if such payments had never been made.

I also waive and relinquish all present and future claims, rights, and remedies against borrower or any other obligated party arising out of the creation or my performance of this guaranty. My waiver includes, but is not limited to, the right of contribution, reimbursement, indemnification, subrogation, exoneration, and any right to participate in any claim or remedy you may have against the borrower, collateral, or other party obligated for borrower's debts, whether or not such claim, remedy, or right arises in equity, or under contract, statute or common law.

**REMEDIES** - If I fail to keep any promise contained in this agreement or any agreement securing this agreement, you may, make this agreement and the borrower's debt immediately due and payable, use my set-off of this obligation against any right I have to receive money from you (however, you may not set-off against any accounts in which my rights are only as a fiduciary or my IRA or other tax-deferred retirement account), you may use any remedy you have under state or federal law, and you may use any remedy given to you by any agreement securing this agreement. If I die, am declared incompetent, or become insolvent (either because my liabilities exceed my assets or because I am unable to pay my debts as they become due), you may make the debt immediately due and payable.

**COLLECTION COSTS** - Except where prohibited by law, I agree to pay the reasonable costs and expenses you incur to enforce and collect this agreement, including attorneys' fees and court costs.

**SECURITY** - This guaranty is ☒ unsecured ☐ secured by _____ .

| | |
|---|---|
| **NOTICE TO COSIGNER**<br><br>You are being asked to guarantee the debts described above. If you are making a "Present and Future Debt Guaranty" as identified above, you are making a guarantee present as well as future debts of the borrower entered into with this lender. Think carefully before you do. If the borrower doesn't pay these debts, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.<br><br>You may have to pay up to the full amount of these debts if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.<br><br>The lender can collect these debts from you without first trying to collect from the borrower. The lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If these debts are ever in default, that fact may become part of *your credit record*. | In witness whereof, I have signed my name and affixed my seal on this __26th__ day of __DECEMBER__ __, 2001__ , and, by doing so, agree to the terms of this guaranty and acknowledge having read the Notice to Cosigner.<br><br>X _____ (SEAL)<br>    JOHN W. GOFF<br><br>_____ (SEAL)<br><br>_____ (SEAL)<br><br>_____ (SEAL) |

© 1985 BANKERS SYSTEMS, INC., ST. CLOUD, MN (1-800-397-2341)   FORM COG   7/20/90

**EXHIBIT   F**

| JOHN W. GOFF<br>80 TECHANCENTER DRIVE<br>MONTGOMERY, AL   36117<br>GUARANTOR'S NAME AND ADDRESS<br>"I" includes each guarantor above, jointly and severally. | Community Bank & Trust<br>P O Box 310<br>Union Springs, AL   36089<br>LENDER'S NAME AND ADDRESS<br>"You" means the Lender, its successors and assigns. | GOFF GROUP, INC.<br>FKA GOFF N.B.A., INC.<br>80 TECHANCENTER DRIVE<br>MONTGOMERY, AL   36117<br>BORROWER'S NAME AND ADDRESS<br>"Borrower" means each person above. |
|---|---|---|

## GUARANTY

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with borrower from time to time, I absolutely and unconditionally guarantee the full payment of the following debts (as defined herein) when due (whether at maturity or upon acceleration):

**PRESENT DEBT GUARANTY**

[X] I absolutely and unconditionally guarantee to you the payment and performance of the following described debt (including all renewals, extensions, refinancings and modifications) of the borrower:   LOAN #400656503 DATED SEPTEMBER 17, 2003                                        .

**PRESENT AND FUTURE DEBT GUARANTY**

[ ] I absolutely and unconditionally guarantee to you the payment and performance of each and every debt, of every type and description, that the borrower may now or at any time in the future owe you including, but not limited to, the following described debt(s): _____

[ ] I absolutely and unconditionally guarantee to you the payment and performance of each and every debt, of every type and description, that the borrower may now or at any time in the future owe you, up to the principal amount of $ _____ plus accrued interest, attorneys' fees and collection costs referable thereto (when permitted by law), and all other amounts agreed to be paid under all agreements evidencing the debt and securing the payment of the debt. You may, without notice, apply this guaranty to such debts of the borrower as you may select from time to time.

**DEFINITIONS** - As used in this agreement, the terms "I," "we," and "my" mean all persons signing this guaranty agreement, individually and jointly, and their heirs, executors, administrators and assigns.

The term "debt" means all debts, liabilities, and obligations of the borrower (including, but not limited to, all amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, except for any obligations incurred by borrower after the date of this guaranty for which the borrower meets your standard of creditworthiness based on the borrower's own assets and income without the addition of a guaranty, or to which, although you require the addition of a guaranty, the borrower chooses someone other than me to guaranty the obligation.

**APPLICABLE LAW** - This agreement is governed by the law of the state in which you are located. Any term of this agreement that does not comply with applicable law will not be effective if that law does not expressly or impliedly permit variations by agreement. If any part of this agreement cannot be enforced according to its terms, this fact will not affect the balance of this agreement.

**REVOCATION** - I agree that this is an absolute and continuing guaranty. If this guaranty is limited to the payment of a specific debt of the borrower described above, this agreement cannot be revoked and will remain in effect until the debt is paid in full. If this guaranty covers both the borrower's present and future debts, I agree that this guaranty will remain binding on me, whether or not there are any debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence.

Notice of revocation or notice of my death or incompetence will not affect my obligations under this guaranty with respect to any debts incurred by or for which you have made a commitment to borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such debts. I agree that if any other person signing this agreement provides a notice of revocation to you, I will still be obligated under this agreement until I provide a notice of revocation to you. If any other person signing this agreement dies or is declared incompetent, such fact will not affect my obligations under this agreement.

**OBLIGATIONS INDEPENDENT** - I agree that I am obligated to pay according to the terms of this guaranty even if any other person has agreed to pay the borrower's debt. My obligation to pay according to the terms of this guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the borrower.

I will remain obligated to pay on this guaranty even if any other person who is obligated to pay the borrower's debt, including the borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law. In such situations, my obligation shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which borrower is discharged from paying or which do not otherwise accrue to borrower's indebtedness due to borrower's discharge. I will also be obligated to pay you, to the fullest extent permitted by law, any deficiency remaining after foreclosure of any mortgage or security interest securing borrower's debt, whether or not the liability of borrower or any other obligor for such deficiency is discharged by statute or judicial decision. If any payments by borrower to you are thereafter set aside, recovered, rescinded, in whole or in part, are settled by you at your discretion, or are in any way recouped or recovered from you for any reason (including, without limitation, the bankruptcy, insolvency, or reorganization of borrower or any other obligor), then I am obligated to reimburse or indemnify you for the full amount you so pay together with costs, interest, attorneys' fees and all other expenses which you incur in connection therewith. I also agree that if my liability is limited to a stated principal amount (plus other agreed charges), you may allow the borrower to incur debt in excess of the specified amount and apply to the payment of such excess any amounts you receive for payment of the debt from the borrower or any other person, any amounts resulting from any collateral, or amounts received from any other source, without affecting my obligations under this agreement.

No modification of this agreement is effective unless in writing and signed by you and me, except that you may, without notice to me and without the addition of a signed writing or my approval: (1) release any borrower or other person who may be liable for borrower's debt, (2) release any other collateral, (3) fail to perfect any security interest or otherwise impair any collateral, (4) waive or impair any right you may have against any borrower or other person who may be liable for borrower's debt, (5) settle or compromise any claim against the borrower or any person who may be liable for the borrower's debt, (6) procure any additional security or persons who agree to be liable for borrower's debt, (7) delay or fail to pursue enforcement of the debt, (8) apply amounts you receive from the borrower or other persons to payment of the debt in any order you select, (9) make any election with respect to the debt provided by law or any agreement with any person liable for the debt, (10) exercise or fail to exercise any rights you have with respect to the debt, (11) extend new credit to the borrower, or (12) renew, extend, refinance or modify the borrower's debt on any terms agreed to by you and the borrower (including, but not limited to, changes in the interest rate or in the method, time, place or amount of payment) without affecting my obligation to pay under this guaranty.

**WAIVER** - I waive presentment, demand, protest, notice of dishonor, and notice of acceptance of this guaranty. I also waive, to the extent permitted by law, all notices, all defenses and claims that the borrower could assert, any right to require you to pursue any remedy or seek payment from any other person before seeking payment under this agreement, and all other defenses to the debt, except payment in full. You may without notice to me and without my consent, enter into agreements with the borrower from time to time for purposes of creating or continuing the borrower's debt as allowed by this guaranty. I agree that I will be liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest without regard to whether borrower's obligation to pay such deficiency is discharged by law. If any payments on the debt are set aside, recovered or required to be returned in the event of the insolvency, bankruptcy or reorganization of the borrower, my obligations under this agreement will continue as if such payments had never been made.

I also waive and relinquish all present and future claims, rights, and remedies against borrower or any other obligated party arising out of the creation or my performance of this guaranty. My waiver includes, but is not limited to, the right of contribution, reimbursement, indemnification, subrogation, exoneration, and any right to participate in any claim or remedy you may have against the borrower, collateral, or other party obligated for borrower's debts, whether or not such claim, remedy, or right arises in equity, or under contract, statute or common law.

**REMEDIES** - If I fail to keep any promise contained in this agreement or any agreement securing this agreement, you may, make this agreement and the borrower's debt immediately due and payable, you may set-off this obligation against any right I have to receive money from you (however, you may not set-off against any accounts in which my rights are only as a fiduciary or my IRA or other tax-deferred retirement account), you may use any remedy you have under state or federal law, and you may use any remedy given to you by any agreement securing this agreement. If I die, am declared incompetent, or become insolvent (either because my liabilities exceed my assets or because I am unable to pay my debts as they become due), you may make the debt immediately due and payable.

**COLLECTION COSTS** - Except when prohibited by law, I agree to pay the reasonable costs and expenses you incur to enforce and collect this agreement, including attorneys' fees and court costs.

**SECURITY** - This guaranty is  [X] unsecured  [ ] secured by _____

| NOTICE TO COSIGNER | |
|---|---|
| **You are being asked to guarantee the debts described above. If you are making a "Present and Future Debt Guaranty" as identified above, you are being asked to guarantee _present_ as well as _future_ debts of the borrower entered into with this lender. Think carefully before you do. If the borrower doesn't pay these debts, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.**<br><br>**You may have to pay up to the full amount of these debts if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.**<br><br>**The lender can collect these debts from you without first trying to collect from the borrower. The lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If these debts are ever in default, that fact may become part of _your_ credit record.** | In witness whereof, I have signed my name and affixed my seal on this 17th day of September, 2003 , and, by doing so, agree to the terms of this guaranty and acknowledge having read the Notice to Cosigner.<br><br>X _JOHN W. GOFF_ _____ (SEAL)<br><br>X _____ (SEAL)<br><br>X _____ (SEAL)<br><br>X _____ (SEAL) |

© 1985 BANKERS SYSTEMS, INC., ST. CLOUD, MN (1-800-397-2341)  FORM COG  7/20/90

(page 1 of 1)

| JOHN W GOFF<br>80 TECHNACENTER DR<br>MONTGOMERY, AL.<br>36117-6028<br>**GUARANTOR'S NAME AND ADDRESS**<br>"I" includes each guarantor above, jointly and severally. | Community Bank & Trust<br>P O Box 310<br>Union Springs, AL  36089<br>**LENDER'S NAME AND ADDRESS**<br>"You" means the Lender, its successors and assigns. | GOFF GROUP, INC.<br>80 TECHNACENTER DR<br>MONTGOMERY AL 36117-6028<br>**BORROWER'S NAME AND ADDRESS**<br>"Borrower" means each person above. |

## GUARANTY

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with borrower from time to time, I absolutely and unconditionally guarantee the full payment of the following debts (as defined herein) when due (whether at maturity or upon acceleration):

**PRESENT DEBT GUARANTY**

☐ I absolutely and unconditionally guarantee to you the payment and performance of the following described debt (including all renewals, extensions, refinancings and modifications) of the borrower: _____

**PRESENT AND FUTURE DEBT GUARANTY**

☒ I absolutely and unconditionally guarantee to you the payment and performance of each and every debt, of every type and description, that the borrower may now or at any time in the future owe you including, but not limited to, the following described debt(s): _____

LOAN #700108011 DATED 10/14/2004 _____

☐ I absolutely and unconditionally guarantee to you the payment and performance of each and every debt, of every type and description, that the borrower may now or at any time in the future owe you, up to the principal amount of $ _____ plus accrued interest, attorneys' fees and collection costs referable thereto (when permitted by law), and all other amounts agreed to be paid under all agreements evidencing the debt and securing the payment of the debt. You may, without notice, apply this guaranty to such debts of the borrower as you may select from time to time.

**DEFINITIONS** - As used in this guaranty: The terms "I," "we," and "my" mean all persons signing this guaranty agreement, individually and jointly, and their heirs, executors, administrators and assigns.

The term "debt" means all debts, liabilities, and obligations of the borrower (including, but not limited to, all amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, except for any obligations incurred by borrower after the date of this guaranty for which the borrower meets your standard of creditworthiness based on the borrower's own assets and income without the addition of a guaranty, or to which, although you require the addition of a guaranty, the borrower chooses someone other than me to guaranty the obligation.

**APPLICABLE LAW** - This agreement is governed by the law of the state in which you are located. Any term of this agreement that does not comply with applicable law will not be effective if that law does not expressly or impliedly permit variations by agreement. If any part of this agreement cannot be enforced according to its terms, this fact will not affect the balance of this agreement.

**REVOCATION** - I agree that this is an absolute and continuing guaranty. If this guaranty is limited to the payment of a specific debt of the borrower described above, this agreement cannot be revoked and will remain in effect until the debt is paid in full. If this guaranty covers both the borrower's present and future debts, I agree that this guaranty will remain binding on me, whether or not there are any debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence.

Notice of revocation or notice of my death or incompetence will not affect my obligations under this guaranty with respect to any debts incurred by or for which you have made a commitment to borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such debts. I agree that if any other person signing this agreement provides a notice of revocation to you, I will still be obligated under this agreement until I provide a notice of revocation to you. If any other person signing this agreement dies or is declared incompetent, that fact will not affect my obligations under this agreement.

**OBLIGATIONS INDEPENDENT** - I agree that I am obligated to pay according to the terms of this guaranty even if any other person has agreed to pay the borrower's debt. My obligation to pay according to the terms of this guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the borrower.

I will remain obligated to pay on this guaranty even if any other person who is obligated to pay the borrower's debt, including the borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law. In such situations, my obligation shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which borrower is discharged from paying or which do not otherwise accrue to borrower's indebtedness due to borrower's discharge. I will also be obligated to pay you, to the fullest extent permitted by law, any deficiency remaining after foreclosure of any mortgage or security interest securing borrower's debt, whether or not the liability of borrower or any other obligor for such deficiency is discharged by statute or judicial decision. If any payments by borrower to you are thereafter set aside, recovered, rescinded, in whole or in part, are settled by you at your discretion, or are in any way recouped or recovered from you for any reason (including, without limitation, the bankruptcy, insolvency, or reorganization of borrower or any other obligor), then I am obligated to reimburse or indemnify you for the full amount you so pay together with costs, interest, attorneys' fees and all other expenses which you incur in connection therewith. I also agree that if my liability is limited to a stated principal amount (plus other agreed charges), you may allow the borrower to incur debt in excess of the specified amount and apply to the payment of such excess any amounts you receive for payment of the debt from the borrower or any other person, amounts resulting from any collateral, or amounts received from any other source, without affecting my obligations under this agreement.

No modification of this agreement is effective unless in writing and signed by you and me, except that you may, without notice to me and without the addition of a signed writing or my approval: (1) release any borrower or other person who may be liable for borrower's debt, (2) release or substitute any collateral, (3) fail to perfect any security interest or otherwise impair any collateral, (4) waive or impair any right you may have against any borrower or other person who may be liable for borrower's debt, (5) settle or compromise any claim against the borrower or any person who may be liable for the borrower's debt, (6) procure any additional security of persons who agree to be liable for borrower's debt, (7) delay or fail to pursue enforcement of the debt, (8) apply amounts you receive from the borrower or other persons to payment of the debt in any order you select, (9) make any election with respect to the debt provided by law or any agreement with any person liable for the debt, (10) exercise or fail to exercise any rights you have with respect to the debt, (11) extend new credit to the borrower, or (12) renew, extend, refinance or modify the borrower's debt on any terms agreed to by you and the borrower (including, but not limited to, changes in the interest rate or in the method, time, place or amount of payment) without affecting my obligation to pay under this guaranty.

**WAIVER** - I waive presentment, demand, protest, notice of dishonor, and notice of acceptance of this guaranty. I also waive, to the extent permitted by law, all notices, all defenses and claims that the borrower could assert, any right to require you to pursue any remedy or seek payment from any other person before seeking payment under this agreement, and all other defenses to the debt, except payment in full. You may without notice to me and without my consent, enter into agreements with borrower from time to time for purposes of creating or continuing the borrower's debt as allowed by this guaranty. I agree that I will be liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure (or repossession) and sale of any collateral without regard to whether borrower's obligation to pay such deficiency is discharged by law. If any payments on the debt are set aside, recovered or required to be returned in the event of the insolvency, bankruptcy or reorganization of the borrower, my obligations under this agreement will continue as if such payments had never been made.

I also waive and relinquish all present and future claims, rights, and remedies against borrower or any other obligated party arising out of the creation or my performance of this guaranty. My waiver includes, but is not limited to, the right of contribution, reimbursement, indemnification, subrogation, exoneration, and any right to participate in any claim or remedy you may have against the borrower, collateral, or other party obligated for borrower's debts, whether or not such claim, remedy, or right arises in equity, or under contract, statute or common law.

**REMEDIES** - If I fail to keep any promise contained in this agreement or any agreement securing this agreement, you may, make this agreement and the borrower's debt immediately due and payable, you may set-off this obligation against any right I have to receive money from you (however, you may not set-off against any accounts in which my rights are only as a fiduciary or my IRA or other tax-deferred retirement account), you may use any remedy you have under state or federal law, and you may use any remedy given to you by any agreement securing this agreement. If I die, am declared incompetent, or become insolvent (either because my liabilities exceed my assets or because I am unable to pay my debts as they become due), you may make the debt immediately due and payable.

**COLLECTION COSTS** - Except when prohibited by law, I agree to pay the reasonable costs and expenses you incur to enforce and collect this agreement, including attorneys' fees and court costs.

**SECURITY** - This guaranty is ☒ unsecured ☐ secured by _____

| **NOTICE TO COSIGNER** | In witness whereof, I have signed my name and affixed my seal on this 15th day |
|---|---|

<table>
<tr>
<td width="48%">

**NOTICE TO COSIGNER**

You are being asked to guarantee the debts described above. If you are making a "Present and Future Debt Guaranty" as identified above, you are being asked to guarantee *present* as well as *future* debts of the borrower entered into with this lender. Think carefully before you do. If the borrower doesn't pay these debts, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of these debts if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The lender can collect these debts from you without first trying to collect from the borrower. The lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If these debts are ever in default, that fact may become part of *your* credit record.
</td>
<td width="52%">
of __October, 2004__ , and, by doing so, agree to<br>
the terms of this guaranty and acknowledge having read the Notice to Cosigner.<br><br>
_____ (SEAL)<br>
JOHN W GOFF<br><br>
_____ (SEAL)<br><br>
_____ (SEAL)<br><br>
_____ (SEAL)<br><br>
(page 1 of 1)
</td>
</tr>
</table>

© 1985 BANKERS SYSTEMS, INC., ST. CLOUD, MN (1-800-397-2341) FORM COG 7/20/90

| JOHN W. GOFF<br>180 TECHNACENTER DR<br>MONTGOMERY,     AL    36117<br><br>**GUARANTOR'S NAME AND ADDRESS**<br>"I" includes each guarantor above, jointly and severally. | Community Bank & Trust<br>P O Box 310<br>Union Springs, AL  36089<br><br>**LENDER'S NAME AND ADDRESS**<br>"You" means the Lender, its successors and assigns. | GOFF GROUP, INC.<br>80 TECHNACENTER DR<br>MONTGOMERY AL 36117-6028<br><br>**BORROWER'S NAME AND ADDRESS**<br>"Borrower" means each person above. |
|---|---|---|

## GUARANTY

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with borrower from time to time, I absolutely and unconditionally guarantee the full payment of the following debts (as defined herein) when due (whether at maturity or upon acceleration):

**PRESENT DEBT GUARANTY**

☒ I absolutely and unconditionally guarantee to you the payment and performance of the following described debt (including all renewals, extensions, refinancings and modifications) of the borrower:  LOAN #401384302  DATED3/4/2005 .

**PRESENT AND FUTURE DEBT GUARANTY**

☐ I absolutely and unconditionally guarantee to you the payment and performance of each and every debt, of every type and description, that the borrower may now or at any time in the future owe you including, but not limited to, the following described debt(s): _____

☐ I absolutely and unconditionally guarantee to you the payment and performance of each and every debt, of every type and description, that the borrower may now or at any time in the future owe you, up to the principal amount of $ _____ plus accrued interest, attorneys' fees and collection costs referable thereto (when permitted by law), and all other amounts agreed to be paid under all agreements evidencing the debt and securing the payment of the debt. You may, without notice, apply this guaranty to such debts of the borrower as you may select from time to time.

**DEFINITIONS** - As used in this agreement, the terms "I," "we," and "my" mean all persons signing this guaranty agreement, individually and jointly, and their heirs, executors, administrators and assigns.

The term "debt" means all debts, liabilities, and obligations of the borrower (including, but not limited to, all amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, except for any obligations incurred by borrower after the date of this guaranty for which the borrower meets your standard of creditworthiness based on the borrower's own assets and income without the addition of a guaranty, or to which, although you require the addition of a guaranty, the borrower chooses someone other than me to guaranty the obligation.

**APPLICABLE LAW** - This agreement is governed by the law of the state in which you are located. Any term of this agreement that does not comply with applicable law will not be effective if that law does not expressly or impliedly permit variations by agreement. If any part of this agreement cannot be enforced according to its terms, this fact will not affect the balance of this agreement.

**REVOCATION** - I agree that this is an absolute and continuing guaranty. If this guaranty is limited to the payment of a specific debt of the borrower described above, this agreement cannot be revoked and will remain in effect until the debt is paid in full. If this guaranty covers both the borrower's present and future debts, I agree that this guaranty will remain binding on me, whether or not there are any debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence.

Notice of revocation or notice of my death or incompetence will not affect my obligations under this guaranty with respect to any debts incurred by or for which you have made a commitment to borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such debts. I agree that if any other person signing this agreement provides a notice of revocation to you, I will still be obligated under this agreement until I provide a notice of revocation to you. If any other person signing this agreement dies or is declared incompetent, such fact will not affect my obligations under this agreement.

**OBLIGATIONS INDEPENDENT** - I agree that I am obligated to pay according to the terms of this guaranty even if any other person has agreed to pay the borrower's debt. My obligation to pay according to the terms of this guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the borrower.

I will remain obligated to pay on this guaranty even if any other person who is obligated to pay the borrower's debt, including the borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law. In such situations, my obligation shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which borrower is discharged from paying or which do not otherwise accrue to borrower's indebtedness due to borrower's discharge. I will also be obligated to pay you, to the fullest extent permitted by law, any deficiency remaining after foreclosure of any mortgage or security interest securing borrower's debt, whether or not the liability of borrower or any other obligor for such deficiency is discharged by statute or judicial decision. If any payments by borrower to you are thereafter set aside, recovered, rescinded, in whole or in part, are settled by you at your discretion, or are in any way recouped or recovered from you for any reason (including, without limitation, the bankruptcy, insolvency, or reorganization of borrower or any other obligor), then I am obligated to reimburse or indemnify you for the full amount you so pay together with costs, interest, attorneys' fees and all other expenses which you incur in connection therewith. I also agree that if my liability is limited to a stated principal amount (plus other agreed charges), you may allow the borrower to incur debt in excess of the specified amount and apply to the payment of such excess any amounts you receive for payment of the debt from the borrower or any other person, any amounts resulting from any collateral, or amounts received from any other source, without affecting my obligations under this agreement.

No modification of this agreement is effective unless in writing and signed by you and me, except that you may, without notice to me and without the addition of a signed writing or my approval: (1) release any borrower or other person who may be liable for borrower's debt, (2) release or substitute any collateral, (3) fail to perfect any security interest or otherwise impair any collateral, (4) waive or impair any right you may have against any borrower or other person who may be liable for borrower's debt, (5) settle or compromise any claim against the borrower or any person who may be liable for the borrower's debt, (6) procure any additional security or persons who agree to be liable for borrower's debt, (7) delay or fail to pursue enforcement of the debt, (8) apply amounts you receive from the borrower or other persons to payment of the debt in any order you select, (9) make any election with respect to the debt provided by law or any agreement with any person liable for the debt, (10) exercise or fail to exercise any rights you have with respect to the debt, (11) extend new credit to the borrower, or (12) renew, extend, refinance or modify the borrower's debt on any terms agreed to by you and the borrower (including, but not limited to, changes in the interest rate or in the method, time, place or amount of payment) without affecting my obligation to pay under this guaranty.

**WAIVER** - I waive presentment, demand, protest, notice of dishonor, and notice of acceptance of this guaranty. I also waive, to the extent permitted by law, all notices, all defenses and claims that the borrower could assert, any right to require you to pursue any remedy or seek payment from any other person before seeking payment under this agreement, and all other defenses to the debt, except payment in full. You may without notice to me and without my consent, enter into agreements with the borrower from time to time for purposes of creating or continuing the borrower's debt as allowed by this guaranty. I agree that I will be liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure (or repossession) and sale of any collateral without regard to whether borrower's obligation to pay such deficiency is discharged by law. If any payments on the debt are set aside, recovered or required to be returned in the event of the insolvency, bankruptcy or reorganization of the borrower, my obligations under this agreement will continue as if such payments had never been made.

I also waive and relinquish all present and future claims, rights, and remedies against borrower or any other obligated party arising out of the creation or my performance of this guaranty. My waiver includes, but is not limited to, the right of contribution, reimbursement, indemnification, subrogation, exoneration, and any right to participate in any claim or remedy you may have against the borrower, collateral, or other party obligated for borrower's debts, whether or not such claim, remedy, or right arises in equity, or under contract, statute or common law.

**REMEDIES** - If I fail to keep any promise contained in this agreement or any agreement securing this agreement, you may make this agreement and the borrower's debt immediately due and payable, you may set-off this obligation against any right I have to receive money from you (however, you may not use any collateral or accounts in which my rights are only as a fiduciary or my IRA or other tax-deferred retirement account), you may use any remedy you have under state or federal law, and you may use any remedy given to you by any agreement securing this agreement. If I die, am declared incompetent, or become insolvent (either because my liabilities exceed my assets or because I am unable to pay my debts as they become due), you may make the debt immediately due and payable.

**COLLECTION COSTS** - Except when prohibited by law, I agree to pay the reasonable costs and expenses you incur to enforce and collect this agreement, including attorneys' fees and court costs.

**SECURITY** - This guaranty is ☒ unsecured ☐ secured by _____

| NOTICE TO COSIGNER | |
|---|---|
| You are being asked to guarantee the debts described above. If you are making a "Present and Future Debt Guaranty" as identified above, you are being asked to guarantee present as well as future debts of the borrower entered into with this lender. Think carefully before you do. If the borrower doesn't pay these debts, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.<br>    You may have to pay up to the full amount of these debts if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.<br>    The lender can collect these debts from you without first trying to collect from the borrower. The lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If these debts are ever in default, that fact may become part of your credit record. | In witness whereof, I have signed my name and affixed my seal on this  4th day<br>of        March, 2005        , and, by doing so, agree to<br>the terms of this guaranty and acknowledge having read the Notice to Cosigner.<br><br><br>_____ (SEAL)<br><br>_____ (SEAL)<br><br>_____ (SEAL)<br><br>_____ (SEAL) |

© 1985 BANKERS SYSTEMS, INC., ST. CLOUD, MN (1-800-397-2341)  FORM COG  7/20/90                                                  *(page 1 of 1)*

RLPY 03284 PAGE 0673

| | | |
|---|---|---|
| STATE OF ALABAMA | ) | **NOTE/MORTGAGE ASSIGNMENT** |
| MONTGOMERY COUNTY | ) | |

KNOW ALL MEN BY THESE PRESENTS:

THAT **COMMUNITY BANK & TRUST**, (hereinafter referred to as "Assignor") for and in consideration of the sum of Four Hundred Twenty Thousand Two Hundred Forty and 42/100 Dollars ($420,240.42) to it in hand paid by **PHOENIX-DURANGO, LLC**, (hereinafter referred to as "Assignee") the receipt of which is hereby acknowledged, does hereby TRANSFER, SET OVER AND ASSIGN unto the said Assignee, that certain Note and Mortgage in the original amount of Six Hundred Forty-Eight Thousand Nine Hundred Fifteen and 24/100 Dollars ($648,915.24), dated the 25th day of July, 2000, executed by Goff Group, Inc., (borrower) and said Mortgage is recorded in the Judge of Probate Office of Montgomery County, State of Alabama, in Real Property Book 2142, Page 232-233; and,

The said Assignor does hereby REMISE, RELEASE AND QUIT-CLAIM unto the said Assignee all of its right, title and interest in said Note and Mortgage.
**THIS ASSIGNMENT IS WITHOUT RECOURSE.**

SIGNED THIS 14th day of March, 2006.

ASSIGNOR

COMMUNITY BANK & TRUST

BY: _____
Its President

| | |
|---|---|
| STATE OF ALABAMA | ) |
| BULLOCK COUNTY | ) |

I, the undersigned Notary Public in and for said State and County, hereby certify that Dave G. Bryant, as President of Community Bank & Trust, whose signature is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of this instrument, he did, with full authority, execute the same voluntarily on the day the same bears date.

GIVEN under my hand and seal this day 14th day of March, 2006.

(SEAL)                                    _Paula Kay Wooten_
                                          Notary Public
                                          My Commission Expires: _4-18-09_

STATE OF ALA.MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT WAS FILED ON
RLPY 03284 PG 0673 2006 Mar 22 03:26PM
REESE MCKINNEY JR.
JUDGE OF PROBATE

| | |
|---|---|
| INDEX | $5.00 |
| REC FEE | $2.50 |
| CERT | $1.00 |
| CHECK TOTAL | $8.50 |
| 17827 | Clerk: NANCY 03:27PM |

EXHIBIT  G

STATE OF ALABAMA                    )

MONTGOMERY COUNTY              )


### AMENDED ASSIGNMENT OF NOTES, MORTGAGE, ADVANCES, SECURITY AGREEMENTS, AND GUARANTIES


KNOW ALL MEN BY THESE PRESENTS:

THAT **COMMUNITY BANK & TRUST** (hereinafter referred to as "Assignor"), for and in consideration of the sum of Four Hundred Twenty Thousand Two Hundred Forty and 42/100 Dollars ($420,240.42) to it in hand paid by **PHOENIX-DURANGO, LLC** (hereinafter referred to as "Assignee"), the receipt of which is hereby acknowledged, does hereby TRANSFER, SET OVER, and ASSIGN unto the said Assignee, that certain Note and Mortgage in the original amount of Six Hundred Forty-Eight Thousand Nine Hundred Fifteen and 24/100 Dollars ($648,915.24), dated the 25th day of July, 2000, executed by Goff Group, Inc. ("borrower"), and said Mortgage is recorded in the Office of the Judge of Probate of Montgomery County, State of Alabama, in Real Property Book 2142, pages 232-233; Assignor further TRANSFERS, SETS OVER, and ASSIGNS to Assignee all renewals of said Assigned Note, including specifically, but not limited to, renewal note with Loan #400656502, executed by Goff Group, Inc., dated December 26, 2001, in the principal amount of Six Hundred Forty-Eight Thousand Nine Hundred Fifteen and 24/100 Dollars ($648,915.24); renewal note with Loan #401384301, executed by Goff Group, Inc., dated September 17, 2003, in the principal amount of Four Hundred Twenty Thousand Thirty-Nine and 36/100 Dollars ($420,039.36); renewal note with Loan #700108011, executed by Goff Group, Inc., dated October 15, 2004, in the principal amount of Four Hundred Six Thousand Seven Hundred Twenty-Three and 99/100 Dollars ($406,723.99); and renewal note with Loan #401384302, executed by Goff Group, Inc., and John W. Goff, dated March 4, 2005, in the principal amount of Four Hundred Six Thousand Eight Hundred Seventy-Three and 99/100 Dollars ($406,873.99), and all other fees and charges due under said notes. Assignor further TRANSFERS, SETS OVER, and ASSIGNS to Assignee all rights to receive or collect any and all subsequent advances made by Assignor to the Maker of the Note, Goff Group, Inc., including specifically, but not limited to, an advance of Forty-Three Thousand Two Hundred One and 64/100 Dollars ($43,201.64) made to Goff Group, Inc., on December 26, 2001, and an advance of Fifteen Thousand Four Hundred Thirty and 29/100 Dollars ($15,430.29) made to Goff Group, Inc., on October 15, 2004.   Assignor further TRANSFERS, SETS OVER, and ASSIGNS to Assignee any and all rights of Assignor under any security agreement given by the maker or makers of any such Assigned Note to secure said note, and any and all rights under any personal guaranty of any such Assigned Note given to Assignor by John W. Goff.


1 of 2

The said Assignor does hereby REMISE, RELEASE, and QUITCLAIM unto the said Assignee all of its right, title, and interest in said notes, mortgage, advances, security agreements, and personal guaranties.

THIS ASSIGNMENT IS WITHOUT RECOURSE.

Signed this   24TH day of May, 2006.

ASSIGNOR<br>
COMMUNITY BANK & TRUST

By: _____
Its President

STATE OF ALABAMA)
 BULLOCK      COUNTY)

        I,  the undersigned Notary Public in and for said County in said State, hereby certify that    DAVE G BRYANT                        , as President of Community Bank & Trust, whose signature is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he did, with full authority, executed the same voluntarily on the day the same bears date.

        Given under my hand and seal on this 24th  day of ____MAY_____, 2006.

(SEAL)

_____
Notary Public
My Commission Expires:____8/14/2008_____

2 of 2